# NOT YET SCHEDULED FOR ORAL ARGUMENT

## Nos. 25-5266, 25-5267

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
*Plaintiff-Appellee*,
v.
OFFICE OF MANAGEMENT AND BUDGET, *et al.*,
*Defendants-Appellants.*

———————————

PROTECT DEMOCRACY PROJECT,
*Plaintiff-Appellee*,
v.
U.S. OFFICE OF MANAGEMENT AND BUDGET, *et al.*,
*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**EMERGENCY MOTION FOR IMMEDIATE ADMINISTRATIVE STAY
AND FOR STAY PENDING APPEAL**

———————————

BRETT A. SHUAMTE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

COURTNEY L. DIXON
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

## INTRODUCTION

In March, the Director of the Office of Management and Budget (OMB) informed Congress that OMB would no longer comply with a recent statute purporting to require OMB to make publicly available—automatically and within two business days—certain communications between OMB and agencies regarding the apportionment of funds. The Director explained that the communications included "sensitive, predecisional, and deliberative information"; that a requirement to disclose such information has "a chilling effect on the deliberations within the Executive Branch"; and that the requirements "have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending." App.87. The Director reiterated, however, that he was "committed to working with" Congress "to provide information on apportionments" to Congress "that may be of interest." *Id.*

Plaintiffs—two nonprofit groups—brought this suit seeking to compel OMB to resume publishing the covered information. Nearly four months later, the district court has entered judgments requiring defendants to publicly disclose the relevant information—and despite the irreversible

nature of the ordered disclosure, has administratively stayed its order for only three days, until **Thursday, July 24, at 10:00 AM.** In light of that exigency, we request an administrative stay by **Thursday, July 24, at 10:00 AM**.[1]

In entering relief, the district court overlooked the fundamental Article III problem with plaintiffs' suit. Although the statute in question purports to require OMB to disclose the information publicly, the statute does not give plaintiffs any right to the information or any cause of action to obtain it. Plaintiffs thus advance a generalized grievance of the sort that the Supreme Court has held is insufficient to meet Article III's requirements.

And on the merits, the district court gave short shrift to the determinations made by the Director regarding the ways in which the disclosure requirement impermissibly hampered OMB's ability to effectively carry out the authority delegated to OMB by the President—and to the explanation in the record provided by a high-ranking and long-serving career official at OMB expanding on those conclusions. Dismissing these determinations as mere "policy disagreement[s]," App.45, the court failed to

---

[1] The government filed motions to stay the district court's judgments pending appeal. *See* App.91; App.97. We will inform this Court promptly when the district court acts on those motions. Plaintiffs oppose a stay.

appreciate the ways in which the statute intrudes upon the Executive Branch's constitutional prerogatives, risks the disclosure of sensitive information, and undermines OMB's ability to effectively administer appropriations laws. Because the district court's judgments require the Executive Branch to imminently and irreversibly disclose the covered information notwithstanding the intolerable risk that such disclosure will improperly reveal sensitive and deliberative information—and particularly given plaintiffs' inability to identify any immediate need for the covered information—the judgments should be stayed pending appeal.

## STATEMENT

1. In general, after Congress appropriates funds, those funds must be "apportioned" before they may be obligated and expended. *See* 31 U.S.C. § 1512. For funds appropriated to Executive Branch agencies, Congress has charged the President with responsibility for apportionment. *See* 31 U.S.C. § 1513(b). The President has delegated this authority to the Director of OMB, a component of the Executive Office of the President that assists the President in preparing the budget and overseeing agencies, *see* 31 U.S.C. §§ 501-503. *See also* App.66-67.

An apportionment is, essentially, a communication between OMB (exercising delegated Presidential authority) and an agency that divides appropriated funds "as the [apportioning] official considers appropriate" among different time periods, different projects, or both. *See* 31 U.S.C. § 1512(b). The goal of an apportionment is to ensure that funds that are available for a specific time period are expended at a rate that does not result in a deficiency or the need for a supplemental appropriation, and to ensure that funds that are available for an indefinite period are used in the "most effective and economical" way. *Id.* § 1512(a). Congress has generally prohibited federal officials from authorizing any expenditures that exceed an apportionment, *see id.* § 1517; violators are subject to personnel actions and potential criminal penalties, *id.* §§ 1518-1519.

In apportioning funds, OMB is required to "exercis[e] significant discretion and judgment regarding the budgetary resources a program requires, including when those resources will be needed and for what purpose." App.67. OMB communicates its decisions to agencies "through Excel sheets that include designated funds" for particular time periods or activities; these decisions reflect a "snapshot" of "OMB's best judgment in the moment about how an agency should use its funds." App.68. Along with

the apportionments, OMB "routinely also includes" in its apportionment decisions "footnotes" that "give an agency additional information or instructions beyond the dollar amounts provided." App.68-69. These footnotes will often "provide additional restrictions on the use of funds, or will condition the availability of funds on further action by the agency, or on other future circumstances." *Id.* And the footnotes may disclose sensitive information that informs the relevant apportionment, including "OMB's current policy deliberations, assumptions about program needs, and even future economic assumptions." App.69; *see also* App.72 (explaining that an apportionment may "indicate predecisional details," such as "the timing for an infrastructure project" or "the recipient of foreign aid").

In addition, OMB's apportionments and footnotes reflect part of an iterative dialogue between an agency and OMB. For example, footnotes "can disclose ongoing negotiations between an agency and OMB" and can "assist [OMB] in gathering information from agencies." App.69; *see also* App.71-72 (describing two recent apportionments that included footnotes indicating that "additional engagement was necessary with the agencies before the funding could be provided for the purposes in question"). Even after OMB makes an initial apportionment, "OMB's judgment about" various

5

considerations may change, necessitating a revision of the apportionment. App.69; *see also* App.70-71 (Apportionments "are part of an iterative, internal Executive branch decision-making process that involves ongoing conversations and instructions to the agencies to ensure that apportionments are updated to reflect current realities and future estimates."). Consistent with the nature of apportionments as flexible moment-in-time determinations, Congress has directed the apportioning official to review each apportionment "at least 4 times a year" to determine whether adjustments are necessary. 31 U.S.C. § 1512(d).

2. In 2022, Congress enacted a statute purporting to require OMB to implement "an automated system to post each document apportioning an appropriation," "including any associated footnotes," publicly "not later than 2 business days after the date of approval of such apportionment." Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, div. E, tit. II, § 204(b), 136 Stat. 49, 257. Congress also provided that each publicly posted apportionment shall "include a written explanation by the official approving each such apportionment stating the rationale for any footnotes for apportioned amounts." *Id.* § 204(c), 136 Stat. at 257. And until OMB implemented the public system, Congress provided that OMB "shall provide

to the Committees on Appropriations and the Budget of the House of Representatives and the Senate" the same documents on the same timeframe. *Id.* § 204(a), 136 Stat. at 256-57. Congress later extended to all future fiscal years the requirement to post each apportionment document publicly. Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, div. E, tit. II, § 204, 136 Stat. 4459, 4667 (2022).

After the enactment of the 2022 Act, OMB "began operating a publicly available automated reporting system" in accordance with that statute. App.69. OMB realized, however, that the disclosure "requirements made OMB's administration of apportionments more difficult," because they caused OMB to omit from apportionments sensitive information that would otherwise "assist OMB and agencies in guiding allocations of resources throughout the funding process." App.69-70. For example, OMB previously apportioned Energy Department funds for a particular loan guarantee program in a way "that included identifying references" for "individual loan borrowers" associated with "provisional financial commitments subject to ongoing review and potential re-apportionment." App.70. After the reporting requirement, OMB determined to alter the details included in its apportionments "to protect sensitive information about who would receive

7

Government funding in advance of public announcements." *Id.* In this and other instances, OMB had therefore been forced "to choose between compromising confidentiality" and using the "full scope of its apportionment authority." App.72.

In March 2025, the OMB Director informed Congress that OMB would "no longer operate and maintain the publicly available automated system to which apportionments are posted." App.87. The Director explained that OMB had "determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information" and that such "disclosures have a chilling effect on the deliberations within the Executive Branch." *Id.*; *see also id.* ("Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending.").

3. Plaintiffs Citizens for Responsibility and Ethics in Washington (CREW) and Protect Democracy Project brought these two suits. *See* App.17-19. As relevant here, each plaintiff primarily claimed that OMB's removal of the public information and its failure to update the system violated the requirements of the 2022 and 2023 Acts; CREW also claimed

that OMB's actions violated a provision of the Paperwork Reduction Act requiring each agency to "ensure that the public has timely and equitable access to the agency's public information," 44 U.S.C. § 3506(d)(1)—that is, to the information that the agency "discloses, disseminates, or makes available to the public," *id.* § 3502(12). *See* App.55-65.

The district court granted summary judgment to plaintiffs in relevant part. At the outset, the court concluded that plaintiffs had Article III standing and rejected the government's arguments that plaintiffs advanced an impermissible generalized grievance. Although the court did not dispute that any member of the public might seek to enforce the same disclosure obligation, the court concluded that "the mere fact that all members of the public have the same injury does not render the claim an impermissible generalized grievance." App.36 (quotation omitted). And the court stated that "each Plaintiff has articulated how their injuries are particularized," because each had stated how it would use the apportionment information. *Id.* Similarly, the court considered it irrelevant that the 2022 and 2023 Acts contain no private right of action to enforce the disclosure obligation. App.37-38 (citing cases). Finally, the court concluded that Protect Democracy had articulated "economic injuries" because it had invested in an online database

to track apportionment information, and that database "is now of considerably less value." App.41 (quotation omitted).

Turning to the merits, the district court rejected the government's arguments that the 2022 and 2023 Acts violate Article II of the Constitution by impairing the Executive Branch's ability to effectively carry out its constitutional responsibility to take care that the laws are faithfully executed and by requiring the disclosure of privileged information. The court did not meaningfully dispute that the 2022 and 2023 Acts may impair OMB's ability to effectively carry out apportionments. *See* App.44-45. But the court concluded that these concerns reflected "a policy disagreement" without "a constitutional foundation." App.45. In addition, the court concluded that the apportionment information subject to disclosure was neither predecisional nor deliberative, as would be required to support an assertion of the deliberative process privilege. App.49-51.

The district court thus granted plaintiffs' motions for summary judgment in relevant part, declared that OMB's actions violated the relevant statutes, vacated OMB's actions, required defendants to restore apportionment information to the publicly accessible database, and

prohibited defendants from removing or ceasing to post that information. App.53-61; *see also* App.1-5.

## ARGUMENT

A stay pending appeal is warranted. The government is likely to succeed on the merits of its appeal, the government will face irreparable injury absent a stay, and the balance of equities and public interest support a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

### A.    Plaintiffs Lack Standing

Plaintiffs seek to enforce a statutory obligation to make apportionment information publicly available. But Congress has not provided plaintiffs themselves with any particularized right to the information in question; instead, Congress has purported to create a general obligation to which the Executive Branch must adhere rather than creating rights in individual private parties like plaintiffs. Plaintiffs' suit thus impermissibly advances a generalized grievance.

1. As the Supreme Court has explained, to satisfy Article III, a plaintiff must identify a particularized injury—as contrasted with a "generalized grievance" that is "undifferentiated and common to all members of the public." *United States v. Richardson*, 418 U.S. 166, 176-77 (1974) (quotation

omitted). Thus, in *Richardson*, the plaintiff sought to enforce a provision of the Appropriations Clause requiring that "a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time." *Id.* at 168 (quoting Art. I, § 9, cl. 7). The plaintiff contended that the Central Intelligence Agency was violating this provision by failing to provide adequate public disclosures, and that a statute authorizing those limited disclosures was unconstitutional. *See id.* at 168-69. The Supreme Court held that the plaintiff lacked standing. Although the plaintiff contended that his inability to obtain the information impaired his efforts to "follow the actions of Congress [and] the Executive" and to "properly fulfill his obligations as a member of the electorate in voting for candidates," the Court concluded that the plaintiff's suit reflected "the kind of a generalized grievance" that does not satisfy Article III's requirements. *Id.* at 176-77.

Thus, the Supreme Court has made clear that the asserted violation of a constitutional obligation to publicly disclose information does not, standing alone, generate a particularized injury allowing any plaintiff who wishes to obtain or use that information to sue. The asserted violation of such an obligation imposed through statute can no more give rise to a particularized injury than would the violation of the constitutional obligation at issue in

*Richardson. Cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021)

(making clear that "Article III standing requires a concrete injury even in

the context of a statutory violation" (quotation omitted)).

Instead, to generate the requisite particularized injury, a plaintiff must

identify not merely a statute that imposes a general obligation on the

defendant but instead a statute that creates a particular right in the plaintiff.

*Cf. Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2229 (2025)

(describing the difference between statutes that "create individual rights"

and those that simply "provide a benefit or protect an interest"). In the

similar context of determining whether a Spending Clause statute creates

enforceable individual rights, the Supreme Court has recently explained that

courts should focus on whether "the law in question clearly and

unambiguously uses rights-creating terms" and whether it "display[s] an

unmistakable focus on individuals like the plaintiff." *Id.* (alterations and

quotations omitted).

Nothing in the 2022 Act, which was extended by the 2023 Act, evinces

any desire by Congress to create any private, enforceable rights. For one,

the relevant section contains no rights-creating language, providing only that

OMB "shall complete implementation" of the relevant system "to post each

document apportioning an appropriation"—not that any party has a specific "right" to receive that information. 136 Stat. at 257. Nor does any relevant part of the statute focus on private parties at all; instead, to the extent the Act evinces a concern with any particular recipient of the information, it is concerned with Congress. Thus, the statute provides that OMB shall provide apportionment decisions directly to Congress until it implements the automated system, and it provides that the Executive Branch "shall make available classified documentation referenced in any apportionment" to certain congresspersons at their request. *See* 136 Stat. at 256-57. Nor does the statute provide any mechanism for any private party to seek information that it believes ought to be made available, or to bring suit over any failure to provide such information.

Thus, in every relevant respect, the 2022 and 2023 Acts are like the constitutional provision at issue in *Richardson*: they reflect an obligation on the Executive Branch to make information available, but they do not provide plaintiffs with a right to that information. And without such a particularized right, plaintiffs cannot—like the plaintiff in *Richardson*—bring suit. Nor, despite the district court's suggestions otherwise, can plaintiffs possibly remove this barrier to standing by asserting that they use the information (to

14

which they have no right) in particular ways or derive specific economic benefits from it. In this respect, they are no different from the plaintiff in *Richardson*, who also detailed the ways in which he would have used the information in question. 418 U.S. at 176.

2. In response, the district court primarily relied on the Supreme Court's and this Court's informational standing cases, which have held that a plaintiff may demonstrate a concrete informational injury where the plaintiff shows that "it has been deprived of information that, on its interpretation, a statute requires the government" to "disclose to it" and that "it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." App.27 (quotation omitted). And the court emphasized that many members of the public may have the same informational injury without that injury becoming a generalized grievance. *See* App.36.

But in so concluding that plaintiffs had asserted a particularized injury, the district court incorrectly skipped over the relevant question: whether plaintiffs could demonstrate any personal right to receive the apportionment information. Although this Court and the Supreme Court have found standing on informational injury theories in circumstances where many

plaintiffs might share in the relevant right, those cases have often arisen in the context of statutes that more strongly reflect the creation of individual informational rights. In FOIA cases, for example, this Court has found a plaintiff "has suffered a particularized injury" where the plaintiff "has requested and been denied information Congress gave him a right to receive." *Prisology, Inc. v. Federal Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017); *see id.* (explaining that FOIA "requires an agency to make nonexempt records" "'available to any person' upon that person's request" (quoting 5 U.S.C. § 552(a)(3)). By contrast, a FOIA plaintiff who has not made that particularized request and received that denial may not properly seek to enforce FOIA's obligation to make certain records publicly available, because such a statutory violation does not give rise to "a particularized injury." *Id.*

Similarly, when concluding that plaintiffs had informational standing to seek compliance with the Federal Advisory Committee Act's disclosure requirements, the Supreme Court emphasized that—as in FOIA cases—the plaintiff had "specifically requested, and been refused," the relevant information, which gave rise to "a sufficiently distinct injury to provide standing to sue" (even if the Court did not analyze whether the statute spoke,

16

like FOIA does, in rights-creating terms). *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). And in *Federal Election Commission v. Akins*, 524 U.S. 11, 19 (1998), the relevant statute permitted aggrieved parties to pursue administrative and judicial remedies for violations of the statute. Thus, although the Supreme Court recognized that the plaintiff's informational injury was "widely shared," the Court emphasized that that fact did "not deprive Congress of constitutional power to authorize its vindication in the federal courts." *Id.* at 24-25. Finally, although the district court identified a handful of this Court's precedents that found standing on an informational injury theory in circumstances where the statute did not clearly confer such an individual right to the information, *see, e.g.*, App.37-38, those cases did not discuss the generalized grievance limitation and thus did not grapple with the particular issue raised in this case, *see Center for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 685-86 (D.C. Cir. 2023); *Environmental Def. Fund v. EPA*, 922 F.3d 446, 452 (D.C. Cir. 2019); *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

### B.    The 2022 and 2023 Acts Are Unconstitutional

1. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the laws be faithfully executed.'"

*Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. CONST. art. II, § 1, cl. 1; *id.*, § 3). "Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Id.* at 203-04. To that end, the President has authority to exercise "'general administrative control of those executing the laws,' throughout the Executive Branch of government, of which he is the head." *Building & Const. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (quotation omitted).

Given these realities, to effectively fulfill the President's Article II responsibilities, the President and his subordinates must be able to communicate with each other fully and frankly—and certain documents and information in the Executive Branch's control must remain confidential. Thus, "[s]ince the beginnings of our nation, executive officials have claimed a variety of privileges to resist disclosure of information the confidentiality of which they felt was crucial to fulfillment of the unique role and responsibilities of the executive branch of our government." *In re Sealed Case*, 121 F.3d 729, 736 (D.C. Cir. 1997). The existence of such an "Article II right to confidential communications"—including not only communications involving the President but also extending to "discussions between his senior

advisers"—has been recognized by this Court as critical to the President's ability to carry out his Article II responsibilities. *Association of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 909-10 (D.C. Cir. 1993).

The 2022 and 2023 Acts impermissibly intrude on the Executive Branch's Article II authorities by purporting to require the Executive Branch to publicly disclose—automatically and within two business days— sensitive information contained in apportionments. As the record reflects, when OMB exercises the President's delegated apportionment authority, it undertakes a complex, deliberative process laden with policy considerations. App.68-69. And as part of the iterative apportionment process, OMB often includes sensitive or deliberative information in the footnotes within the apportionments, revealing "OMB's current policy deliberations" and underlying assumptions; seeking to "gathe[r] information from agencies"; reflecting OMB's concerns about its inability to fully "understand how the agency intends" to spend funds; and reflecting sensitive, "predecisional" information regarding, for example, "apportionments for funding intended to assist an industry," "details regarding the timing for" certain projects, or the intended recipients of specific funds. App.69-72. As the long-time "senior-

most career official responsible for supporting the OMB Director in developing all aspects of the President's Budget" explained in district court, App.66, OMB believes that these sorts of details are "key information" to include in apportionments to ensure that OMB is able to effectively administer its delegated apportionment authority, App.69-70.

The 2022 and 2023 Act's disclosure provisions—which purport to require disclosure not merely of the apportionment numbers but also of the footnotes, and which afford OMB only two business days to make those disclosures—thereby put OMB to the untenable choice of either publicly revealing sensitive information or omitting such information from its apportionments, undermining its ability to effectively execute the law. The record reflects—with specific examples—circumstances where OMB was required "to change its process to protect sensitive information" or was "reluctant to include" a footnote with deliberative information, "which has impeded OMB's ability to provide direction to and receive information from agencies." App.70. And the record reflects more broadly that the OMB Director has determined that the required disclosure of apportionment information and footnotes has "a chilling effect on the deliberations within the Executive Branch," has "already adversely impacted the candor

contained in OMB's communications with agencies," and has "undermined OMB's effectiveness in supervising agency spending." App.87. These are precisely the sorts of harms to the Executive Branch's ability to carry out its Article II responsibilities that the constitutionally grounded privileges are intended to guard against.

2. In response, the district court did not meaningfully engage with the government's explanation of the Article II concerns occasioned by the disclosure requirement. At the outset, the court concluded that OMB's explanation of the ways in which the requirements impaired the agency's ability to effectively carry out its responsibilities reflected merely "a policy disagreement" without "a constitutional foundation." App.45. But the court misunderstood the nature of the relevant objection, caricaturing it (for example) as simply a preference for the longer FOIA response deadlines or "the accommodation process for congressional requests for information." *Id.* But the Executive Branch's objection is not simply that it would find different mechanisms "preferable," *id.*; it is instead, that the automatic two-day disclosure required by the statute does not purport to provide OMB any opportunity to redact sensitive information or provide a meaningful time to review apportionments for such information and thereby intolerably risks its

disclosure and chills OMB's communications in the process. In misunderstanding that and the Executive Branch's other objections to the burdens imposed by the 2022 and 2023 Acts, the court gave short shrift to the commonsense and well-established principle that the constitution is implicated when one branch "impair[s] another in the performance of its constitutional duties," as is happening here. *Clinton v. Jones*, 520 U.S. 681, 701 (1997) (quotation omitted); *see also Association of Am. Physicians & Surgeons*, 997 F.2d at 909 (explaining the Article II problems that arise when the "President's performance" of his constitutional responsibilities is "made more difficult").

No more supported was the district court's rejection of the government's contention that the information at issue here fell within the deliberative process privilege. For one, regardless whether specific apportionment information fits within the four corners of that privilege, there can be no meaningful dispute that OMB's communications with agencies during the apportionment process can include sensitive and deliberative information, and the relevant point is that disclosure of the information would impermissibly chill agency officials' ability to communicate frankly and impair their ability to effectively carry out

delegated Presidential authority. That is what generates the constitutional problem, regardless of whether the deliberative process privilege strictly applies.

And in any event, the court misunderstood the relevant legal principles in concluding that the apportionment information and footnotes contain no predecisional, deliberative information. Although the court believed that apportionments are "legally binding" and thus may not be predecisional, the primary legal effects of apportionments are internal, not external: they generally constrain an agency's ability to obligate funds but create no rights or obligations that attach to private parties. Instead, as the government explained, only the later obligation of funds creates any right to receive funds. *See* App.67-68.

Moreover, as this Court has recognized, information generated contemporaneously with, or even after, one final agency decision "may still be predecisional and deliberative with respect to other, nonfinal agency policies." *Judicial Watch, Inc. v. FDA*, 449 F.3D 141, 151 (D.C. Cir. 2006). Apportionments reflects a snapshot in time that OMB may alter at any moment. And because apportionments are iterative—indeed, by statute, must be repeatedly re-examined—OMB's notes and directions to an agency

23

that accompany one apportionment may well be predecisional with respect to future re-apportionment decisions. And the district court failed to analyze any of the specific examples of such deliberative materials described in OMB's declaration. *See* App.70-72.[2]

The statute's categorical requirements and associated timelines make these problems particularly stark. As explained, the statute purports to require OMB to establish an automated system to disclose all information contained in apportionments and footnotes (except for classified information), without purporting to give OMB any authority to redact particularly sensitive or deliberative information even on a case-by-case basis. And even if OMB were permitted to redact such information, the record reflects that the requirement that the information be disclosed within 48 hours of any apportionment does not provide the agency with anywhere near sufficient time to review apportionments to ensure that such material is not disclosed.

---

[2] Nor does the district court's analysis of the Paperwork Reduction Act, App.52-53, advance the ball. That statute requires only that an agency make "public information"—that is, information "that an agency discloses, disseminates, or makes available to the public"—available in a "timely and equitable" manner. 44 U.S.C. §§ 3502(12), 3506(d)(1). The statute thus governs only the manner in which an agency must make information available; it has nothing to say about which information the agency must make available in the first place.

The statute thus intolerably risks requiring the disclosure of undoubtedly sensitive or privileged information, and the district court's injunctions have now incorporated those statutory requirements on pain of contempt. App.1-5. Thus, at the least, this Court should stay the provisions of the district court's injunctions requiring that OMB publish apportionments automatically and that it do so within two business days, in order to ensure that OMB retains the ability to effectively redact sensitive information on a case-by-case basis.

### C.     A Stay and an Immediate Administrative Stay Are Warranted

Once the government complies with the district court's orders to disclose apportionments, the proverbial cat will have been let "out of the bag, without any effective way of recapturing it if the district court's directive [is] ultimately found to be erroneous." *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quotation omitted). For that reason, stays pending appeal are "routine[]" in the analogous FOIA context. *People for the Am. Way Found. v. Department of Education*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007); *see, e.g.*, *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1308-1309 (1989) (Marshall, J., in chambers) (staying FOIA disclosure order pending certiorari, noting that the government would be irreparably injured absent a

stay because "disclosure would moot" the relevant part of the challenged decision).

A stay is particularly warranted here because the district court's judgments interfere with OMB's ability to exercise its delegated apportionment authority in ways that most effectively carry out the Executive Branch's constitutional responsibilities. The judgments mandate that OMB disclose sensitive or privileged information, interfering with the ability of the President and his subordinates to effectively carry out their responsibilities and inflicting a severe separation-of-powers harm on the Executive Branch. And the possibility of having to disclose that information impermissibly chills OMB and relevant agencies from the frank and candid discussions required to effectively and properly apportion funds.

By contrast, plaintiffs have not established that they would suffer any serious harm if the district court's judgments were stayed. As explained, plaintiffs have not even established standing to bring this suit, because the 2022 and 2023 Acts do not provide them specifically with any right to receive the information that they seek. Without such an underlying individualized right, plaintiffs cannot demonstrate any serious harm. And because plaintiffs themselves lack standing, the Executive Branch is separately harmed by the

district court's intrusion into what is essentially "an interbranch controversy about calibrating the legislative and executive powers." *Raines v. Byrd*, 521 U.S. 811, 833 (1997) (Souter, J., concurring). Regardless, if plaintiffs ultimately prevail, they will receive all of the apportionment decisions that they seek; there is no compelling reason that they require that information immediately rather than after the appellate process runs its course.

## CONCLUSION

For the foregoing reasons, the Court should grant an immediate administrative stay of the district court's orders and a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
 *Assistant Attorney General*

ERIC D. MCARTHUR
 *Deputy Assistant Attorney General*

COURTNEY L. DIXON

 */s/ Sean R. Janda*
SEAN R. JANDA
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7260*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, D.C. 20530*
 *(202) 514-3388*
 *sean.r.janda@usdoj.gov*

July 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5183 words.  The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point CenturyExpd BT typeface.

*/s/ Sean R. Janda*
Sean R. Janda

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Sean R. Janda*
SEAN R. JANDA

# APPENDIX

# TABLE OF CONTENTS

**<u>Page</u>**

District Court Order (July 21, 2025),
    *CREW* Dkt. No. 32 ............................................................................ App.1

District Court Order (July 21, 2025),
    *Protect Democracy* Dkt. No. 33 ......................................................... App.4

Memorandum Opinion (July 21, 2025),
    *CREW* Dkt. No. 33 ............................................................................ App.6

Declaration of Kelly Kinneen (Apr. 30, 2025),
    *CREW* Dkt. No. 18-1 ........................................................................ App.66

Motion for Stay Pending Appeal (July 22, 2025),
    *CREW* Dkt. No. 35 .......................................................................... App.91

Motion for Stay Pending Appeal (July 22, 2025),
    *Protect Democracy* Dkt. No. 36 ....................................................... App.97

Docket Sheet, *Citizens for Responsibility and Ethics in Washington v.*
    *Office of Management and Budge*, No. 1:25-cv-1051 (D.D.C.) .. App.103

Docket Sheet, *Protect Democracy Project v. U.S. Office of*
    *Management and Budget*, No. 1:25-cv-1111 (D.D.C.) ............... App.109

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>　　　　　Defendants. | Civil Action No. 25-1051 (EGS) |

<u>ORDER</u>

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 9, is **GRANTED IN PART** as to its Administrative Procedure Act ("APA") claims that the Defendants' removal of the Public Apportionment Database violates the Consolidated Appropriations Act, 2022, the Consolidated Appropriations Act, 2023 (collectively the "2022 and 2023 Acts"), and the Paperwork Reduction Act's ("PRA") dissemination of information requirement, and **DENIED IN PART** as to its APA claim that Defendants' conduct violated the PRA's notice requirement; and it is further

**ORDERED** that Plaintiff's Motion for a Preliminary Injunction, ECF No. 9, is **DENIED** as moot; and it is further

1

**App.1**

**DECLARED** that Defendants' removal of the Public Apportionments Database and public access to apportionment information violates the 2022 and 2023 Acts and the PRA; and it is further

**ORDERED** that Defendants' action removing the Public Apportionments Database and public access to apportionment information as required by the 2022 and 2023 Acts is **VACATED and SET ASIDE**; and it is further

**ORDERED** that Defendants shall restore the Public Apportionments Database and make publicly available the apportionment information required to be disclosed by the 2022 and 2023 Acts, including the apportionment information from the time the database was taken offline on or about March 24, 2025, through the time the database is restored; and it is further

**ORDERED** that Defendants are **PERMANENTLY ENJOINED** from removing the Public Apportionments Database or otherwise ceasing to post apportionment information on a publicly available website in the time and manner required by the 2022 and 2023 Acts without statutory authorization; and it is further

**ORDERED** that Count One of Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITHOUT PREJUDICE** as prudentially moot; and it is further

**ORDERED** that an administrative stay is entered in this case until 10:00 am on July 24, 2025. This Order will automatically

go into effect, unless further stayed by this Court or an

appellate court, on July 24, 2025 at 10:01 am.

This is a final appealable Order. *See* Fed. R. App. P. 4(a).

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **July 21, 2025**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PROTECT DEMOCRACY PROJECT, | |
| Plaintiff, | |
| v. | Civil Action No. 25-1111 (EGS) |
| U.S. OFFICE OF MANAGEMENT AND BUDGET, et al., | |
| Defendants. | |

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 18, is **GRANTED** on its Administrative Procedure Act claim that Defendants' removal of the Public Apportionments Database violates the Consolidated Appropriations Act, 2022 and the Consolidated Appropriations Act, 2023 (collectively the "2022 and 2023 Acts"); and it is further

**ORDERED** that Plaintiff's Motion for a Preliminary Injunction, ECF No. 18, is **DENIED** as moot; and it is further

**DECLARED** that Defendants' removal of the Public Apportionments Database and public access to apportionment information violates the 2022 and 2023 Acts; and it is further

**ORDERED** that Defendants' action removing the Public Apportionments Database and public access to apportionment

information as required by the 2022 and 2023 Acts is **VACATED and SET ASIDE**; and it is further

**ORDERED** that Defendants shall restore the Public Apportionments Database and make publicly available the apportionment information required to be disclosed by the 2022 and 2023 Acts, including the apportionment information from the time the database was taken offline on or about March 24, 2025, through the time the database is restored; and it is further

**ORDERED** that Defendants are **PERMANENTLY ENJOINED** from removing the Public Apportionments Database or otherwise ceasing to post apportionment information on a publicly available website in the time and manner required by the 2022 and 2023 Acts without statutory authorization; and it is further

**ORDERED** that Counts Two through Six of Plaintiff's Complaint, ECF No. 1, are **DISMISSED WITHOUT PREJUDICE** as prudentially moot; and it is further

**ORDERED** that an administrative stay is entered in this case until 10:00 am on July 24, 2025. This Order will automatically go into effect, unless further stayed by this Court or an appellate court, on July 24, 2025 at 10:01 am.

This is a final appealable Order. *See* Fed. R. App. P. 4(a).

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **July 21, 2025**

2

**App.5**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>        Plaintiff,<br><br>    v.<br><br>OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>        Defendants. | Civil Action No. 25-1051 (EGS) |

| | |
|---|---|
| PROTECT DEMOCRACY PROJECT,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. OFFICE OF MANAGEMENT AND BUDGET, et al.,<br><br>        Defendants. | Civil Action No. 25-1111 (EGS) |

<u>**MEMORANDUM OPINION**</u>

    Under the United States Constitution, it is the job of Congress to decide how American taxpayer dollars are spent, including how many dollars to spend and on what priorities to spend them. Once Congress authorizes funding through an appropriations bill, and the President signs the bill into law, constitutional responsibility shifts to the Executive Branch to allocate the funds according to congressional instructions. The

decisions about how to allocate funds are called "apportionments," and they are used to ensure that the Executive Branch does not spend more or less than Congress appropriated. Defendants in this lawsuit are the Executive Branch officials responsible for apportioning congressionally approved spending.

To facilitate congressional oversight of the apportionment decisions of the Executive Branch and provide the public with insight into the decisions, in 2022, Congress passed, and the President signed into law, a statute requiring the Executive Branch to publish its apportionment decisions on a publicly available online database within two days of the decision. Thereafter, the Executive Branch created a public database (the "Public Apportionments Database") and complied with this law until late March 2025 when, without notice, it took the database offline. Defendants argue that this public disclosure law is an unconstitutional encroachment on the Executive Branch's decision-making authority. Relying on an extravagant and unsupported theory of presidential power, Defendants claim that their apportionment decisions—which are legally binding and result in the actual spending of public funds—cannot be publicly disclosed because they are not final decisions about how to administer the spending of public funds.

However, the law is clear: Congress has sweeping authority to require public disclosure of how the Executive Branch is

apportioning the funds appropriated by Congress. Under the law, the decision of the Executive Branch must be made public within two days of the decision. And if Defendants need to make a new decision, that new decision must also be made public within two days. Plaintiffs in this lawsuit monitor these decisions, and they have the right to report on and re-publish this information. As explained in this Memorandum Opinion, there is nothing unconstitutional about Congress requiring the Executive Branch to inform the public of how it is apportioning the public's money. Defendants are therefore required to stop violating the law!

Plaintiffs Citizens for Responsibility and Ethics in Washington ("CREW") and Protect Democracy Project ("Protect Democracy") filed these lawsuits against Defendants Office of Management and Budget ("OMB") and Director Russell Vought ("Director Vought") (collectively, "Defendants") to challenge Defendants' removal of the Public Apportionments Database. CREW's two-Count Complaint alleges, among other things, that Defendants' actions violate the Administrative Procedure Act ("APA") and the Paperwork Reduction Act ("PRA"). Compl., Civil Action No. 25-1051 ("CREW Compl."), ECF No. 1 ¶¶ 26-34.[1] Protect

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

**App.8**

Democracy's six-Count Complaint alleges, among other things, that Defendants' actions violate the APA. Compl., Civil Action No. 25-1111 ("Protect Democracy Compl."), ECF No. 1 ¶¶ 44—77.

Pending before the Court are each Plaintiff's Motion for a Preliminary Injunction and/or Partial Summary Judgment.[2] *See* Mot. for Prelim. Inj. & Partial Summ. J. ("CREW Mot."), ECF No. 9 in 25-cv-1051; Mot. for Prelim. Inj. or in the Alternative Partial Summ. J. ("Protect Democracy Mot."), ECF No. 18 in 25-cv-1111. At oral argument, the parties agreed that there are no genuine issues of material fact that would preclude the Court from considering the merits of their claims. CREW Hr'g Tr., ECF No. 24 at 46:11-12, 97:7-22. Accordingly, Plaintiffs requested that the Court forego consideration of their requests for a preliminary injunction and address their requests for partial summary judgment.[3] *Id.* at 46:16-19. Both Plaintiffs represented that if the Court enters partial summary judgment in their favor and issues the requested injunction, there would be no need for

---

[2] CREW seeks partial summary judgment on its APA claim that Defendants' actions are unlawful and contrary to law. Hr'g Tr., ECF No. 24 in 25-cv-1051 (May 9, 2025) ("CREW Hr'g Tr.") at 45:20-25. CREW also seeks summary judgment on its PRA claims. Protect Democracy seeks partial summary judgment on Count One of its Complaint. *Id.* at 44:20-21.
[3] Defendants note that were the Court to address the merits, "we would want to make sure that the Court's order is consistent with the relief requested and does not go beyond the partial motion for summary judgment." CREW Hr'g Tr., ECF No. 24 at 95:6-8.

4

**App.9**

the Court to address the remaining claims in their respective
Complaints. *Id.* at 116:24-117:6, 120:10-15. The Court agrees
that there are no genuine issues of material fact that would
preclude ruling on Plaintiffs' motions for partial summary
judgment at this juncture. Accordingly, the Court will forego
the preliminary injunction analysis and address the merits of
Plaintiffs' motions for partial summary judgment.

Upon careful consideration of the motions, responses and
replies thereto, the parties' oral arguments, and the entire
record herein, the Court **GRANTS IN PART** CREW's Motion for
Partial Summary Judgment as to its claims that the Defendants'
removal of the Public Apportionments Database violates the 2022
and 2023 Acts and violates the PRA's dissemination of
information requirement, and **DENIES IN PART** CREW's Motion for
Partial Summary Judgment as to its PRA notice claim. The Court
**GRANTS** Protect Democracy's Motion for Partial Summary Judgment
on its claim that Defendants' removal of the Public
Apportionments Database violates the 2022 and 2023 Acts. The
Court **DENIES AS MOOT** Plaintiffs' Motions for a Preliminary
Injunction.

## I.   Background

### A. Overview of Apportionment Process

The Appropriations Clause of the United States Constitution
grants Congress the exclusive power to appropriate funds. *See*

U.S. CONST. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]"). Congress's "power of the purse" is an important check on separation of powers, ensuring that the Executive does not have "unbounded power." *U.S. House of Representatives v. Burwell*, 130 F. Supp. 3d 53, 76 (D.D.C. 2015) (citing *U.S. Dep't of Navy v. Fed. Lab. Relations Auth.*, 665 F.3d 1339, 1347 (2012)). "Under the Appropriations Clause, an appropriation is simply a law that authorizes expenditures from a specified source of public money for designated purposes." *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 424 (2024).

To protect and enforce its power under the Appropriations Clause, Congress has enacted a number of "fiscal control" statutes. *See* Sean M. Stiff, CONG. RSCH. SERVS., R46417, CONGRESS'S POWER OVER APPROPRIATIONS: CONSTITUTIONAL & STATUTORY PROVISIONS (2020). Relevant here are the Anti-Deficiency Act and the Impoundment Control Act ("ICA"). The Anti-Deficiency Act "prevents federal officers from 'mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation.'" *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 197 (2012) (alteration in original) (quoting 31 U.S.C. § 1341(a)(1)(A)). Additionally, once Congress appropriates funds, the Anti-Deficiency Act requires the President to apportion the funds. 31 U.S.C. § 1513(b)(1). The President has delegated this authority

**App.11**

to OMB. *See* Exec. Order No. 6,166 (June 10, 1933), as amended by Exec. Order No. 12,608, 52 Fed. Reg. 34617 (Sept. 9, 1987).

An apportionment is "an OMB-approved plan to use budgetary resources." OMB, Circular A-11 § 120.1. Apportionments are employed to "prevent federal officials from obligating or expending funds at a rate that would prematurely exhaust the funds." Taylor N. Riccard, et al., Cong. Rsch. Serv., RS21665, Office of Management and Budget (OMB): An Overview (updated June 2023). Accordingly, apportionments typically "release one part of an agency's appropriation . . . followed by one or more subsequent apportionments releasing the remainder of that appropriation." Decl. of Samuel Bagenstos ("CREW-Bagenstos Decl."), Ex. 3, ECF No. 9-4 in 25-cv-1051 ¶ 14.

In 1974, the ICA made it clear that the Executive Branch cannot use its apportionment authority to withhold congressionally appropriated funds from agencies or programs that do not comport with the Executive's plans or policies. *See* 31 U.S.C. § 1512(c) (establishing the only instances in which a reserve of funds may be created). *See generally* 2 GAO, Principles of Federal Appropriations Law (3d ed. 2006). The ICA requires the President to notify both Houses of Congress whenever he determines that appropriated funds will be withheld. 2 U.S.C. § 683.

### 1. The 2022 and 2023 Appropriations Acts

Prior to 2022, the ability of Congress to identify whether the Executive Branch was withholding or misusing appropriated funds was limited. It often relied on complaints by whistleblowers or an agency's noncompliance with an apportionment. *See* Eloise Pasachoff, *Modernizing the Power of the Purse Statutes*, 92 Geo. Wash. L. Rev. 359, 372 (2024). In response to growing concerns about the potential abuse of the apportionment process and misuse of apportioned funds,[4] Members of the House of Representatives proposed a series of reforms to strengthen government oversight and accountability. These efforts included the Protecting Our Democracy Act ("PODA"), a portion of which would have required OMB to post apportionment data for the public. *See* H.R. 5314, 117th Cong. § 2 (2021). Congress ultimately included the disclosure provision from PODA

---

[4] In 2020 the United States Government Accountability Office ("GAO") determined that "OMB withheld from obligation approximately $214 million appropriated to [the Department of Defense] for security assistance to Ukraine." GAO, *Withholding of Ukraine Security Assistance*: Decision File B-331564 (Jan. 16, 2020), https://www.gao.gov/assets/b-331564.pdf. The GAO concluded that the withholding of funds violated the ICA. *Id.* at 2. These actions were the basis for the first Impeachment of President Trump during his first term in office and came to the attention of Members of Congress by means of an August 2019 whistleblower complaint. *See e.g.*, Library of Congress Research Guides, Donald J. Trump, https://guides.loc.gov/federal-impeachment/donald-trump (last visited July 9, 2025).

**App.13**

in the Consolidated Appropriations Act, 2022 ("2022 Act") in

March 2022. Specifically, the 2022 Act required OMB to

> implement[] [] an automated system to post
> each document apportioning an appropriation .
> . . including any associated footnotes, in a
> format that qualifies each such document as an
> Open Government Data Asset (as defined in
> section 3502 of title 44, United States Code),
> not later than 2 business days after the date
> of approval of such apportionment[.]

Pub. L. No. 117-103, div. E, tit. II, § 204(b), 136 Stat. 257

(codified at 31 U.S.C. § 1513 note).[5] In accordance with this

requirement, in July 2022, OMB created the Public Apportionments

Database, located at https://apportionment-public.max.gov, a

publicly available website. *See* OMB Circular No. A-11 § 120.4.

In December 2022, Congress made the posting requirement in

the 2022 Act permanent as part of the Consolidated

Appropriations Act, 2023 ("2023 Act"). *See* Pub. L. No. 117-328,

div. E, tit. II, § 204(1), 136 Stat. 4459, 4667 (Dec. 29, 2022)

(codified at 31 U.S.C. § 1513 note). The 2023 Act provided:

> In fiscal year 2023 and each fiscal year
> thereafter . . . [OMB] shall operate and
> maintain the automated system required to be
> implemented by [the 2022 Act] . . . and shall
> continue to post each document apportioning an
> appropriation, pursuant to section 1513(b) of
> title 31, United Sates Code, including any
> associated footnotes[.]

---

[5] "Footnotes appear as textual descriptions on specific tabs in
the apportionment file, and typically provide additional
information or direction associated with one or more lines on
the request." OMB Circular No. A-11 § 120.34. As such, the
footnotes are part of the apportionment. *Id.*

*Id.*

### B. OMB's Removal of the Public Apportionments Database

From July 2022 until its removal, OMB operated and maintained the Public Apportionments Database. *See* OMB Circular No. A-11 § 120.4 ("OMB is required to post all approved apportionment documents on a public website. Those apportionments can be found here: https://apportionment-public.max.gov/.").

On or about March 24, 2025, Defendants removed the Public Apportionments Database from the publicly available website. *See* Decl. of Christina L. Wentworth ("CREW-Wentworth Decl."), Ex. 2, ECF No. 9-3 in 25-cv-1051 ¶ 23. When accessed now, the website displays a message indicating "Page Not Found." *See id.*; MAX Homepage, https://apportionment-public.max.gov (last visited July 16, 2025). On the same day, Members of Congress, including Democratic leaders on the Senate and House Appropriations Committees, issued press releases calling attention to the issue. *See* CREW Mot., ECF No. 9 at 16 (citing Press Release, Rosa DeLauro & Patty Murray, *What Are They Hiding? DeLauro, Murray Demand OMB Promptly Restore Access to Website Detailing Federal Spending Allocations, As Federal Law Requires*, DEMOCRATS APPROPRIATIONS COMMITTEE (Mar. 24, 2025), https://democrats-appropriations.house.gov/news/press-releases/what-are-they-hidingdelauro-murray-demand-omb-promptly-restore-access-website;

Press Release, *Boyle Demands White House Comply with the Law, Restore Public Access to Budget Data*, House Committee on the Budget (Mar. 24, 2025)).

Five days later, on March 29, 2025, Director Vought sent a letter to Republican and Democratic leadership of the Senate and House Appropriations Committee, some of whom had raised concerns about the database's removal, informing them that OMB "will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023." *See* Decl. of Kelly Kinneen, Ex. C, Letters from Russell Vought to Committee on Appropriations (Mar. 29, 2025), ECF No. 18-1 in 25-cv-1051 at 22 ("OMB Letter"). The letter further stated:

> OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.
>
> Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public

> disclosure of which may pose a danger to
> national security and foreign policy.

*Id.*

### C. The Plaintiffs and Their Interest in the Information

#### 1. CREW

CREW is "a non-partisan, non-profit government watchdog organization based in Washington, D.C." CREW-Wentworth Decl., Ex. 2, ECF No. 9-3 ¶ 4. CREW's mission is to

> protect[] the rights of citizens to be
> informed about the activities of government
> officials and agencies; monitor[] and inform[]
> the public about key government activities,
> including the executive branch's use of
> appropriated funds; ensur[e] transparency,
> ethics, and integrity in government; and
> empower[] citizens to have an influential
> voice in government decisions and in the
> government's decision-making process.

*Id.* Relying on government records and data made available by Freedom of Information Act ("FOIA") requests or other statutes requiring public disclosure, CREW is able to "create public-facing reports, draft administrative complaints and requests for investigation, and craft targeted FOIA requests[,]" all of which CREW makes available to the public via its website. *Id.* ¶ 5.

CREW "uses a combination of research, litigation, and advocacy" to advance its mission of "protecting the rights of citizens to be informed about the activities of government officials and agencies," including how appropriated funds are used. *Id.* ¶¶ 4-5. To that end, CREW relies on the information

uploaded to the Public Apportionments Database "to monitor apportionments for potential withholdings." *Id.* ¶¶ 9, 26, 27. CREW reports its findings on its publicly available website and utilizes the information to submit FOIA requests for further investigation. *Id.* ¶¶ 19-21. Without access to the apportionment information on the database, CREW is unable to ensure "[p]rompt public awareness of any use of the apportionment process to withhold funds[,]" or alert Congress or the GAO of improper withholdings, which are critical to CREW's mission. *Id.* ¶¶ 12, 14.

### 2. Protect Democracy Project

Protect Democracy is a "nonpartisan, nonprofit organization dedicated to preventing American democracy from declining into a more authoritarian form of government." Protect Democracy Mot., ECF No. 18 at 11. The organization works to "educat[e] the public about democratic norms and conduct[] research, analysis, and technology developments to promote fact-based debate[,]" including Congress's power of the purse. *Id.* After the creation of the Public Apportionments Database, Protect Democracy's work also included training congressional staff on how to utilize the database. *Id.* at 12.

Given "shortcomings" with OMB's database, Protect Democracy launched OpenOMB.org ("OpenOMB") in October 2024. *Id.* "OpenOMB aims to make oversight of OMB's apportionments easier for

Congress, the press, and the public by providing easier access to apportionment files." *Id.* Protect Democracy asserts that OpenOMB's search is more "user-friendly" because it "allows users to search for information in and across apportionments." *Id.* To feed its site, Protect Democracy pulled data from the Public Apportionments Database every day. *Id.* OpenOMB's users include "Congress, litigants, journalists, public policy organizations, academics, libraries, budget experts, and the Wikipedia community." Decl. of William P. Ford ("Protect Democracy-Ford Decl."), Ex. 1, ECF No. 18-4 in 25-cv-1111 ¶ 11. OpenOMB received 41,000 page views between its launch on October 2, 2024, and the removal of the Public Apportionments Database on March 24, 2025. *Id.* ¶ 12. At the time the Public Apportionments Database was removed, Protect Democracy was developing a "notification feature" set to launch on OpenOMB. *Id.* ¶¶ 16-17. Without the apportionment data previously provided on the Public Apportionments Database, Protect Democracy is unable to make apportionments available via OpenOMB, thus "Protect Democracy can no longer provide updated information about apportionments to Congress, the press, and the public . . . or otherwise use the site to monitor . . . for potential violations of law." *Id.* ¶ 19.

**D. Procedural History**

CREW and Protect Democracy initiated actions against
Defendants on April 8, 2025, and April 14, 2025, respectively,
challenging Defendants' removal of the Public Apportionments
Database. *See* CREW Compl., ECF No. 1; Protect Democracy Compl.,
ECF No. 1. On April 18, 2025, CREW filed a Motion for
Preliminary Injunction and Partial Summary Judgment, requesting
that the Court schedule a hearing. *See* CREW Mot., ECF No. 9. On
April 21, 2025, the Court entered a briefing schedule and set a
preliminary injunction hearing for May 9, 2025. Minute Order
(Apr. 21, 2025).

On April 22, 2025, Protect Democracy filed a Motion for
Expedited Summary Judgment, or in the Alternative a Preliminary
Injunction or a Writ of Mandamus. *See* Pl.'s Mot. for Expedited
Summ. J., or in the Alternative a Preliminary Inj. or Writ of
Mandamus, ECF No. 13 in 25-cv-1111. The next day, the Court
entered a briefing schedule. Minute Order (Apr. 23, 2025). On
April 25, 2025, Protect Democracy filed an Unopposed Motion to
Coordinate Preliminary Injunction Proceedings. *See* Mot. to
Coordinate, ECF No. 16 in 25-cv-1111. Protect Democracy
indicated that it "would withdraw its current motion for
expedited summary judgment and instead file a preliminary
injunction motion seeking identical relief as the pending motion
in *CREW*, limited to the same [APA] claim that both [Plaintiffs]

advanced in their motions." *Id.* at 1. The Court granted the
Motion to Coordinate, and on April 27, 2025, Protect Democracy
filed a Motion for a Preliminary Injunction or in the
Alternative Partial Summary Judgment. *See* Protect Democracy
Mot., ECF No. 18 in 25-cv-1111.

Defendants filed their oppositions to CREW and Protect
Democracy's motions on April 30 and May 2, 2025, respectively.
*See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. & Partial Summ.
J. ("CREW-Opp'n"), ECF No. 18 in 25-cv-1051; Defs.' Opp'n to
Pl.'s Mot. for Prelim. Inj. & Partial Summ. J. ("Protect
Dmocracy-Opp'n"), ECF No. 19 in 25-cv-1111. CREW and Protect
Democracy filed reply briefs on May 4 and May 5, 2025,
respectively. *See* Reply Mem. of Law in Support of Pl.'s Mot. for
Prelim. Inj. & Partial Summ. J., ECF No. 21 in 25-cv-1051 ("CREW
Reply"); Pl.'s Reply in Support of its Mot. for Prelim. Inj. or
in the Alternative Partial Summ. J., ECF No. 20 in 25-cv-1111
("Protect Democracy Reply"). Later the same day, Defendants
filed a sur-reply in each case. *See* Defs.' Sur-Reply to Pl.'s
Mot. for Preliminary Inj. & Partial Summ. J ("CREW-Sur-reply"),
ECF No. 22 in 25-cv-1051; Defs.' Sur-Reply to Pl.'s Mot. for
Preliminary Inj. & Partial Summ. J ("Protect Democracy-Sur-
reply"), ECF No. 21 in 25-cv-1111.

On May 9, 2025, the Court held a hearing on CREW and
Protect Democracy's Motions. Thereafter, on June 2, 2025, the

Court directed Plaintiffs to file supplemental briefing
addressing the type of relief sought if the Court were to forego
a preliminary injunction analysis and rule on their motions for
partial summary judgment. *See* Minute Order in 25-cv-1051 (June
2, 2025); Minute Order in 25-cv-1111 (June 2, 2025). Plaintiffs
each filed a supplemental memorandum addressing the issue of
relief on June 9, 2025. *See* Pl.'s Suppl. Br. in Resp. to Court's
Min. Order ("CREW Suppl."), ECF No. 28 in 25-cv-1051; Protect
Democracy's Suppl. Br. ("Protect Democracy Suppl."), ECF No. 28
in 25-cv-1111. Defendants filed their responses in each case on
June 16, 2025, *see* Defs.' Resp. to Pl.'s Suppl. Br. ("Defs.'
Suppl.—CREW"), ECF No. 29 in 25-cv-1051; Defs.' Resp. to Pl.'s
Suppl. Br. ("Defs.' Suppl.—Protect Democracy"), ECF No. 29 in
25-cv-1111; and Plaintiffs filed their replies on June 18, 2015,
*see* Pl.'s Reply to Defs.' Resp. to Pl.'s Suppl. Br. ("CREW
Suppl. Reply"), ECF No. 30 in 25-cv-1051; Protect Democracy's
Reply in Support of Suppl. Br. ("Protect Democracy Suppl.
Reply"), ECF No. 31 in 25-cv-1111. The motions are now ripe for
the Court's adjudication.

## II. Legal Standard

### A. Administrative Procedure Act

The APA provides that "[a] person suffering legal wrong
because of agency action, or adversely affected or aggrieved by
agency action within the meaning of a relevant statute, is

entitled to judicial review thereof." 5 U.S.C. § 702. The Act
requires courts to "hold unlawful and set aside agency action,
findings, and conclusions found to be . . . arbitrary,
capricious, an abuse of discretion, or otherwise not in
accordance with law[,]" or "in excess of [the agency's]
statutory jurisdiction, authority, or limitations, or short of a
statutory right[.]" *Id.* § 706(2)(A), (C).

### B. Paperwork Reduction Act

The PRA was enacted in 1980 to "ensure the greatest
possible public benefit from and maximize the utility of
information created, collected, maintained, used, shared and
disseminated by or for the Federal Government," 44 U.S.C. §
3501(2); and "provide for the dissemination of public
information on a timely basis, on equitable terms, and in a
manner that promotes the utility of the information to the
public[.]" *Id.* § 3501(7). Relevant here, the PRA requires each
agency to "ensure that the public has timely and equitable
access to the agency's public information[.]" *Id.* § 3506(d)(1).
"Public information" is defined as "any information regardless
of form or format, that an agency discloses, disseminates, or
makes available to the public[.]" *Id.* § 3502(12). Further, the
Act requires that the agency "provide adequate notice when
initiating, substantially modifying, or terminating significant
information dissemination products[.]" *Id.* § 3506(d)(3).

### C. Summary Judgment

Federal Rule of Civil Procedure 56 governs motions for summary judgment, which are granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In APA cases, however, "the summary judgment standard functions slightly differently, because the reviewing court generally . . . reviews the agency's decision as an appellate court addressing issues of law." *Ashtari v. Pompeo*, 496 F. Supp. 3d 462, 467 (D.D.C. 2020) (alteration in original) (quoting *Pol'y & Rsch, LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018)). "[T]he district judge sits as an appellate tribunal[,] [and] [t]he 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (footnote omitted) (citing *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

## III. Analysis

Defendants argue that Plaintiffs are not entitled to partial summary judgment for two reasons: (1) Plaintiffs lack standing to challenge the removal of the database; and (2) the 2022 and 2023 Acts are an unconstitutional infringement on Executive power and privilege. *See* CREW-Opp'n, ECF No. 18 at 18-

30.[6] Defendants also argue that CREW lacks standing for its PRA

claim, CREW-Opp'n, ECF No. 18 at 23; and that on the merits,

there was no violation of the PRA because: (1) "the

apportionment documents are interim, deliberative documents that

are exempt from public disclosure," and (2) "any failure to

provide advance notice [] was harmless error because the letter

notifying Congress was sent a short time afterward," *id.* at 30-

31.

**A. Standing**

"Article III of the Constitution limits the jurisdiction of

federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony*

*List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const.

art. III, § 2). "'One element of the case-or-controversy

requirement' is that plaintiffs 'must establish that they have

standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997));

*see Lujan v. Nat'l Wildlife Fed'n*, 504 U.S. 555, 560 (1990)

(calling standing "the irreducible constitutional minimum"); *see*

*also Jibril v. Mayorkas*, No. 19-cv-2457, 2023 WL 2240271, at *4

(D.D.C. Feb. 27, 2023) ("One way a court might lack subject-

matter jurisdiction is if a plaintiff lacks Article III

_____

[6] Unless otherwise noted, Defendants' arguments in response to
CREW and Protect Democracy's motions are substantially
identical. For clarity, the Court only cites to one of the
Defendants' oppositions.

standing." (citing *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987))). The law of Article III standing "is built on separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper*, 568 U.S. at 408.

To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 573 U.S. at 157-58 (alteration in original) (quoting *Lujan*, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). Courts have recognized that plaintiffs can establish standing based on an informational injury. *See Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011).

Under Supreme Court precedent, organizations may have standing "to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982). "In doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Food & Drug Admin. v.*

21
**App.26**

*All. for Hippocratic Med.*, 602 U.S. 367, 369 (2024) (citing
*Havens Realty Corp.*, 455 U.S. at 378-79).

### 1. Informational Standing

"The law is settled that a denial of access to information
qualifies as an injury in fact where a statute (on the
claimants' reading) requires that the information be publicly
disclosed and there is no reason to doubt their claim that the
information would help them." *Campaign Legal Ctr. v. FEC*, 31
F.4th 781, 783 (D.C. Cir. 2022) (quoting *Campaign Legal Ctr. &
Democracy 21 v. FEC*, 952 F.3d 352, 356 (D.C. Cir. 2020)). To
demonstrate an actionable informational injury, a plaintiff must
show: "(1) it has been deprived of information that, on its
interpretation, a statute requires the government or a third
party to disclose to it, and (2) it suffers, by being denied
access to that information, the type of harm Congress sought to
prevent by requiring disclosure." *Friends of Animals v. Jewell*,
828 F.3d 989, 992 (D.C. Cir. 2016) (citing FEC v. Akins, 524
U.S. 11, 21-22 (1998)); *see Elec. Priv. Info. Ctr. v.
Presidential Advisory Comm'n on Election Integrity*, 878 F.3d
371, 378 (D.C. Cir. 2017).

"The scope of the second part of the inquiry may depend on
the nature of the statutory disclosure provision at issue."
*Jewell*, 828 F.3d at 992. "In some instances, a plaintiff suffers
the type of harm Congress sought to remedy when it simply

's[eeks] and [is] denied specific agency records.'" *Id.*
(alteration in original) (quoting *Pub. Citizen v. U.S. Dep't of
Just.*, 491 U.S. 440, 449–50 (1989)). "In others, a plaintiff may
need to allege that nondisclosure has caused it to suffer the
kind of harm from which Congress, in mandating disclosure,
sought to protect individuals or organizations like it." *Id.*
(citing *compare Akins*, 524 U.S. at 21–23, *and Shays v. FEC*, 528
F.3d 914, 923 (D.C. Cir. 2008), *with Nader v. FEC*, 725 F.3d 226,
230 (D.C. Cir. 2013)).

"[T]he fact that a number of people could be similarly
injured does not render the claim an impermissible generalized
grievance[.]" *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety
Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007). And "[t]he fact
that other citizens or groups of citizens" are also deprived of
the information a plaintiff seeks "does not lessen [a
plaintiff's] asserted injury, any more than the fact that
numerous citizens might request the same information under the
Freedom of Information Act entails that those who have been
denied access do not possess a sufficient basis to sue." *Pub.
Citizen*, 491 U.S. at 449–50. Even if the statute "entitles the
public generally to the disclosure of" the information, "that
does not mean that the informational injury . . . is not
particular to Plaintiff." *Elec. Priv. Info. Ctr. v. Presidential*

*Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017).

CREW and Protect Democracy argue that they have suffered "quintessential informational injuries" as a result of OMB's removal of the Public Apportionments Database. *See* CREW Reply, ECF No. 21 at 7; Protect Democracy Reply, ECF No. 20 at 7-11. Defendants respond that CREW and Protect Democracy fail to meet either prong of this test as to the 2022 and 2023 Acts, and that CREW fails to satisfy either prong as to the PRA. CREW-Opp'n, ECF No. 18 at 22-23, Protect-Democracy-Opp'n, ECF No. 19 at 19-23.

### a. Plaintiffs Have Been Deprived of Information That, on their Interpretation, a Statute Requires Defendants to Disclose to Them

The 2022 and 2023 Acts plainly require OMB to make apportionment decisions publicly available within two business days of the approval of such apportionment and in a format that qualifies as an Open Government Data Asset. *See* 31 U.S.C. § 1513 note. The PRA plainly requires the public dissemination of an "agency's public information." 44 U.S.C. § 3506(d).

Defendants argue that Plaintiffs do not satisfy this prong for two reasons. First, CREW's reliance on the FOIA cases it cites is misplaced because CREW does not allege that it requested apportionment documents and was denied the documents. CREW-Opp'n ECF No. 18 at 21. This is a non-sequitur; the

informational standing precedents do not require a plaintiff to have specifically requested the information. *See supra*.

Second, Defendants argue that neither the 2022 nor the 2023 Acts, nor the PRA as to CREW, require disclosure of information specifically to CREW or Protect Democracy; rather they "require the government's disclosure of information to the public at large." CREW-Opp'n, ECF No. 18 at 22; Protect Democracy-Opp'n, ECF No. 19 at 22. However, Defendants cite no authority for the proposition that Plaintiffs must show that the laws require the information to be disclosed specifically to them. *See* CREW-Opp'n, ECF No. 18 at 22. And as Plaintiffs point out, the caselaw indicates that individualized entitlement to disclosure is not required. *See* CREW Reply, ECF No. 21 at 9-10 (citing *Campaign Legal Ctr.*, 31 F.4th at 790 (finding organization had informational standing because FECA requires that certain campaign finance information be made public); *Env't Def. Fund v. EPA*, 922 F.3d 446, 452 (D.C. Cir. 2019) (plaintiff claimed that the statute at issue required disclosure to it and the public at large)); *see also* Protect Democracy Reply, ECF No. 20 at 8-9 (collecting cases). For these reasons, the Court concludes that Plaintiffs satisfy the first prong: the 2022 and 2023 Acts, and the PRA as to CREW, require the information to be disclosed to them as part of the public at large, and Defendants' removal of the Public Apportionments Database and failure to make public

this information deprives Plaintiffs of the information. *See e.g., Akins*, 524 U.S. at 20-25 (emphasizing that an "inability to obtain information" that Congress required to make public constitutes an injury in fact for Article III); *Jewell*, 828 F.3d at 992 ("[T]he existence and scope of an injury for informational standing purposes is defined by Congress: a plaintiff seeking to demonstrate that it has informational standing, generally 'need not allege any *additional* harm beyond the one Congress identified.'" (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 342 (2016))).

> **b. Plaintiffs Have Suffered, By Being Denied Access to the Information, the Type of Harm Congress Sought to Prevent by Requiring Disclosure**

Defendants acknowledge that the type of harm Congress sought to prevent in the 2022 and 2023 Acts by requiring disclosure of apportionments was the lack of transparency to the public at large and to Congress about the Executive Branch's apportionment decisions. Citing the legislative history of the 2022 and 2023 Acts, Defendants state that "[t]he 2022 and 2023 Acts are intended to provide the public with insights into government spending and to enable Congress to oversee the Executive Branch's apportionment of appropriated funds." CREW-Opp'n, ECF No. 18 at 22 (citing Financial Services and General Government Appropriations for 2023: Hearings Before the Subcomm.

on Fin. Servs. & Gen. Gov't of the H. Comm. on Appropriations, 117th Cong., pt. 5, at 125 (2022) (The 2023 Act "will provide the public with insight into billions of dollars of federal spending, while ensuring this committee, and Congress, can perform its oversight work and ensure the executive branch is faithfully implementing appropriations law.")); *see also* Protect Democracy Mot., ECF No. 18 at 9–10 ("In a division-by-division summary of the [2022 Act], Representative Rosa DeLauro (then-Chairwoman of the House Appropriations Committee)" stated that the 2022 Act would make "apportionments of appropriations publicly available in a timely manner." (quoting Ex. 7, H.R. 2471, Funding for the People: Division-by-Division Summary of Appropriations Provisions, House Committee on Appropriations, ECF No. 18-10 in 25-cv-1111 at 19)). However, this purpose, Defendants claim, is distinct from CREW and Protect Democracy's interests in acting as "middlemen" or "government watchdogs." CREW-Opp'n, ECF No. 18 at 22; Protect Democracy-Opp'n, ECF No. 19 at 23.

With regard to CREW, Defendants argue that "CREW asserts an interest in using the database to play a watchdog function, as part of its [nonprofit] business plan." CREW Opp'n, ECF No. 18 at 23. "That is an interest that is distinct from providing the public with the apportionment materials directly, without any middleman, as Congress did in the 2023 Act, and of course it is also distinct from Congress's own interest in oversight." *Id.*

The Court concludes that Defendants' argument is devoid of merit. CREW has a statutory entitlement to the information, as does the public at large. Congress did not place restrictions on what the public can do with the information. That CREW, as a member of the public, disseminates the information as part of its advocacy work is not contrary to the type of harm Congress sought to prevent by requiring disclosure. Rather it is in furtherance of the purpose for which Congress enacted the 2022 and 2023 Acts. Furthermore, the harm to CREW exists independent of harm to Congress in not having access to the information.

With regard to Protect Democracy, Defendants similarly argue that "the injury Protect Democracy seeks to vindicate is the injury to its own proprietary interest in OpenOMB. That is an interest that is distinct from providing the public with the apportionment materials directly, without any middleman, as Congress did in the 2023 Act, and of course it is also distinct from Congress's own interest in oversight." Protect Democracy-Opp'n, ECF No. 19 at 23. Again, the Court concludes that Defendants' arguments are meritless. Protect Democracy uses the information to provide further transparency to the public—and to Congress—by means of the OpenOMB website. As with CREW, the use Protect Democracy makes of the information is not contrary to the type of harm Congress sought to prevent by requiring disclosure, but in furtherance of Congress's purpose. And again,

**App.33**

the harm to Protect Democracy exists independent of harm to Congress in not having access to the information.

In summary, CREW and Protect Democracy's use of the apportionment information fits squarely within Congress's goal of providing increased transparency into the Executive Branch's apportionment decisions. *Compare Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 686 (D.C. Cir. 2023) (finding plaintiff organization suffered type of harm Congress intended to prevent with the Sunshine Act where withheld meeting notices caused plaintiff to miss meetings it would have otherwise attended), *with EPIC*, 878 F.3d at 378 (concluding plaintiff organization failed to meet the second prong of the informational injury test where the underlying provision was "directed at individual privacy, which [was] not at stake for [the plaintiff]"). For all these reasons, the Court concludes that Plaintiffs are suffering the type of harm that Congress sought to prevent by requiring disclosure of the apportionment information.[7]

---

[7] To the extent the second prong requires Plaintiffs to establish that "there is no reason to doubt their claim that the information would help them," *Campaign Legal Ctr.*, 31 F.4th at 783 (quotation and citation omitted); there is no reason to doubt CREW's claim that the information would help it in its public education, legislative policy, and litigation work. *See* CREW Reply, ECF No. 21 at 10. Nor is there reason to doubt Protect Democracy's claim that the information would help it in its educational, research, and analytical work. Protect Democracy Mot., ECF No. 18 at 12.

With respect to CREW's dissemination of information claim pursuant to the PRA, Defendants argue that "the alleged harm to CREW's business model is not the type of harm Congress sought to prevent when enacting the PRA." CREW-Opp'n, ECF No. 18 at 23. The Court rejects this argument for the reasons explained above. With regard to CREW's notice claim pursuant to the PRA, Defendants argue that CREW "has not demonstrated any concrete harm stemming from Defendant's alleged non-compliance with the PRA's notice requirements." *Id*. CREW failed to respond to this argument. *See generally* CREW Reply, ECF No. 21. Accordingly, the Court considers it conceded. *Cf. Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries,* 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). CREW has therefore failed to satisfy its burden of establishing standing as to its PRA notice claim.

### c. Plaintiffs Have Established Particularized Injuries

Defendants argue that Plaintiffs lack standing because their grievance is common to members of the public, thus they do not have a particularized injury sufficient for Article III standing. CREW-Opp'n, ECF No. 18 at 9; Protect Democracy Opp'n,

ECF No. 19 at 9; CREW-Sur-Reply, ECF No. 22 at 2. In support,
Defendants cite *United States v. Richardson*, 418 U.S. 175
(1977), where the Supreme Court held that a taxpayer lacked
standing to challenge an alleged "failure of the Congress to
require the Executive to supply a more detailed report of the
expenditures of [an] agency." *Id.* at 175.

The Court concludes that Defendants' reliance on *Richardson*
is misplaced. First, the mere fact that all members of the
public have the same injury "does not render the claim an
impermissible generalized grievance." *Pub. Citizen, Inc.* 489
F.3d at 1292; *see also Pub. Citizen*, 491 U.S. at 449-50; *EPIC*,
266 F. Supp. 3d at 311. Second, each Plaintiff has articulated
how their injuries are particularized. *See* CREW Hr'g Tr., ECF
No. 24 at 19:5-18 (explaining that CREW's particularized injury
is that by being deprived of the information it "cannot
effectively do its work in monitoring and disseminating to the
public any issues about potential misuses of government
spending"); *id.* at 17:16-24 (explaining that Protect Democracy's
particularized injury is that by being deprived of the
apportionment information, it can no longer populate the OpenOMB
website it spent ten months building to make that information
more searchable and user-friendly as part of Protect Democracy's
core mission to protect the American government from becoming
authoritarian). Accordingly, the Court rejects Defendants'

argument: Plaintiffs have established that they have a
particularized injury sufficient for Article III standing.

### d. Informational Standing Does Not Require the Underlying Statute to Provide for a Private Right of Action

Defendants argue that this case is distinguishable from
other informational standing cases because, unlike here, the
underlying statutes in those cases included an explicit private
right of action or had "hallmarks" indicating that Congress
meant to confer informational standing to potential plaintiffs.
*See* CREW-Sur-reply, ECF No. 221 at 3; CREW Hr'g Tr., ECF No. 24
at 57:1-14, 60:7-63:10. Thus, Defendants contend, to the extent
that the Acts require public disclosure of apportionment
information, it is merely "ancillary" and "does not rise to the
level of evincing a level of intent to establish a forum in
federal courts to allow private individuals . . . to demonstrate
Article III standing sufficient under the [D.C.] [C]ircuit's
informational standing test . . . ." CREW Hr'g Tr., ECF No. 24
at 111:8-18.

The Court concludes that the lack of an express private
right of action in the 2022 and 2023 Acts is not fatal to
Plaintiffs' claim that they have informational standing.
Defendants have failed to point to any authority suggesting that
the Court of Appeals for the District of Columbia ("D.C.
Circuit") requires a public disclosure statute to include a

private right of action for a plaintiff to establish
informational standing. Rather, courts have concluded that
plaintiffs have informational standing where, as here, the
underlying statute did not include a private right of action.
*See Pub. Citizen*, 491 U.S. at 449-50 (the Federal Advisory
Committee Act ("FACA")); *Ctr. for Biological Diversity*, 77 F.4th
at 686 (the Sunshine Act); *Env't Def. Fund v. EPA*, 922 F.3d 446
(D.C. Cir. 2019) (Toxic Substance Control Act). Moreover, courts
examining whether plaintiffs had informational standing in
Federal Election Campaign Act ("FECA") cases—where there is an
express private right of action—focused on whether the statute
conferred a right to information, not a right to sue. *See, e.g.*,
*Campaign Legal Ctr.*, 31 F.4th at 790 (concluding plaintiffs
suffered an informational injury where FECA required disclosure
of specific campaign finance data); *Ctr. for Resp. & Ethics in
Wash. V. Fed. Election Comm'n*, No. 22-cv-3281, 2023 WL 6141887,
at *5-6 (D.D.C. Sept. 20, 2023) (emphasizing that "FECA creates
an informational right").

    Further, Defendants' claim that the disclosure requirement
is "ancillary" because it was a rider in a large appropriations
bill, *see* CREW Hr'g Tr., ECF No. 24 at 66:5-12; is wholly
without merit. Defendants cite no authority where a court has
ever held a law to be less forceful because it was passed as
part of a larger piece of appropriations legislation. The

requirement is the law, now codified as part of the Anti-
Deficiency Act. *See* 31 U.S.C. § 1513 note.

### e. Plaintiffs Do Not Have an Adequate Alternative Source for Obtaining the Information

Finally, Defendants argue that Plaintiffs have alternative
sources for obtaining the apportionment information such as
submitting FOIA requests, or consulting other government
databases and government reports that contain information about
the Executive's spending decisions. *See* CREW-Opp'n, ECF No. 18
at 33. The Court agrees with Plaintiffs that these are not
adequate alternatives. Although it is true that "a plaintiff
cannot establish injury based on information that is already
available 'from a difference source,' disclosure of which would
only result in duplicative reporting,'" *Campaign Legal Ctr.*, 31
F.4th at 790 (quoting *Wertheimer v. FEC*, 268 F.3d 1070, 1075
(D.C. Cir. 2001)); none of Defendants' proposed alternatives
provide Plaintiffs with timely information on each apportionment
decision in the Open Government Data Asset format required.

Nor would any of Defendants' proposed alternatives provide
the information in the required format within a two-day time
frame. For example, the SF 133 Report on Budget Execution and
Budgetary Resources is a quarterly report, *see* OMB Circular A-11
§ 130.1; and the Financial Report of the United States
government is a PDF document that is issued annually, *see* Dept.

of the Treasury, Financial Report of the U.S. Government,
https://www.fiscal.treasury.gov/reports-statements/financial-
report/current-report.html (last visited May 14, 2025).

Although Defendants point to the statutory deadlines in
FOIA, they fail to acknowledge that those deadlines are rarely,
if ever met, and that it can take months and even years for a
party to actually receive documents. Furthermore, to obtain this
information via FOIA requests, Plaintiffs would need to make
never-ending, recurring FOIA requests, and the information would
be provided in PDF-format documents. Also, given Defendants'
argument that the apportionment information is predecisional and
deliberative, they would likely invoke exemptions that would
result in litigation, further delaying Plaintiffs' access to the
information. In sum, Congress was well aware of the alternative
sources of information when it enacted the disclosure
requirements in the 2022 and 2023 Acts but chose to require the
establishment of the Public Apportionments Database, thereby
indicating that Congress did not view the alternatives as
adequate.

### 2. Protect Democracy is Also Suffering Economic Injuries

Protect Democracy also argues that it is suffering economic
injuries because the removal of the apportionment information
has diminished the value of its investments in the OpenOMB

**App.40**

database. Protect Democracy Reply, ECF No. 20 at 11-13.
Defendants respond that Protect Democracy "cannot base an
informational injury on its decision to establish a business
around [c]ongressional oversight." Protect Democracy-Surreply,
ECF No. 21 at 4. However, Protect Democracy contends that this
is an organizational injury, not an informational injury, that
"impacts [its] ability to carry out its core mission" and "is a
direct economic injury based on time and money already spent."
CREW Hr'g Tr., ECF No. 24 at 10:8-15. Protect Democracy explains
that "OpenOMB is now of considerably less value because it
cannot serve its core function of making it easier to track
OMB's apportionments." Ex. A, Supp. Decl. of William P. Ford
("Protect Democracy-Ford Supp. Decl.), ECF No. 20-1 in 25-cv-
1111 ¶ 2(a). "OpenOMB is now only an archive of apportionments
from a fixed period of time" in the past, *id.*; rather than
serving the purpose for which Protect Democracy invested
substantial money and resources in it—to "make oversight of
OMB's apportionments easier for Congress, the press, and the
public" on an ongoing basis, *see AboutOpenOMB*, OPENOMB,
https://OpenOMB.org/about (last visited May 27, 2025). The Court
concludes that the diminution of the value of the investment in
OpenOMB is a cognizable economic injury. *See Village of
Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262
(1977) (finding cognizable economic injury where a nonprofit

corporation "expended thousands of dollars" on certain plans,
which would be "worthless" unless the request at issue in the
case was granted).

### 3. Plaintiffs Have Established the Requisite Causal Connection and Redressability

Defendants do not contest causal connection or
redressability, both of which are easily met here. Plaintiffs'
injuries are traceable to Defendants' removal of the Public
Apportionments Database, and a favorable ruling will resolve
Plaintiffs' injuries by reinstating their access to the
apportionment data. For all these reasons, the Court concludes
that Plaintiffs have established that they have Article III
standing, with the exception of CREW as to its notice claim
under the PRA.

### B. The 2022 and 2023 Acts Do Not Unconstitutionally Infringe Upon Executive Power

"The Constitution sought to divide the delegated powers of
the new federal government into three defined categories,
legislative, executive and judicial, to assure, as nearly as
possible, that each Branch of government would confine itself
to its assigned responsibility." *Immigr. & Naturalization Serv.
v. Chadha*, 462 U.S. 919, 951 (1983). The Constitution vests in
Congress the exclusive power to appropriate funds, *see* U.S. CONST.
art. I, § 9, cl. 7; and in the Executive the exclusive power to
"take Care that the Laws be faithfully executed," U.S. CONST. art.

II, Sec. 3. Pursuant to its appropriations power, "Congress has plenary power to exact any reporting and accounting it considers appropriate in the public interest." *Richardson*, 418 U.S. at 178 n.11. The President's constitutional obligation "does not permit [him] to refrain from executing laws duly enacted by the Congress as those laws are construed by the judiciary." *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 604 (D.C. Cir. 1974).

Defendants do not dispute that they are not complying with the 2022 and 2023 Acts: they removed the Public Apportionments Database from the OMB website on or around March 24, 2025, and now argue to the Court that the relevant provisions of the Acts are unconstitutional. At oral argument, Defendants clarified that their argument is that the 2022 and 2023 Acts are unconstitutional on the following grounds: (1) they impair the ability of the Executive Branch to take care that the laws are faithfully executed and impermissibly interfere with the Executive Branch's role; and (2) they require the disclosure of information that is subject to executive privilege. CREW Hr'g Tr., ECF No. 24 at 78:16-79:3.

1. **The 2022 and 2023 Acts Do Not Impair the Ability of the Executive Branch to Take Care That the Laws are Faithfully Executed nor Do They Impermissibly Interfere in the Executive Branch's Role**

Defendants claim that requiring the disclosure of the apportionment information "impair[s]" the Executive's performance of its duties and interferes with its role for several reasons. First, they argue that it amounts to Congress having an active role in the execution of the appropriations laws. CREW-Opp'n, ECF No. 18 at 24. The Court rejects this argument. As explained in greater detail below, the 2022 and 2023 Acts require the public disclosure of OMB's final apportionment decisions; they do not amount to congressional involvement in the administration of the appropriation.

Defendants further argue that requiring the disclosure of the apportionment information has a "chilling effect on OMB's decision-making" in that the 2022 and 2023 Acts require them to: (1) "omi[t] [] key details regarding the agency action it seeks prior to making funds available for disbursement"; (2) "remove[] sensitive information from apportionment documents [resulting in] imped[ing] OMB's ability to most efficiently provide direction to and receive information from agencies"; and (3) "omit important context that could reveal information about the Executive Branch's internal planning and strategy." *Id.* at 28 (citations and quotations omitted); *see also* CREW Hr'g Tr., ECF

No. 24 at 75:7-15. Defendants further argue that the requirement to publish the information within two business days "impermissibly burdens the administration of the apportionment process" and that as a result of the expedited timeline, they are "often forced to omit key policy information from apportionments." CREW-Opp'n, ECF No. 18 at 28-29. Defendants point to the FOIA process and the accommodation process for congressional requests for information and subpoenas as being preferable to the two-day timeline required by the 2022 and 2023 Acts. *Id.* at 29.

The Court concludes that Defendants' objections are a policy disagreement with the 2022 and 2023 Acts without a constitutional foundation. After the 2022 Act was signed into law in March 2022, the Biden Administration complied with it and the 2023 Act: OMB's then-General Counsel, who "participated in setting up the automated apportionment posting system required by the statute" and "advised OMB's budget staff on compliance with the statute" avers that in his experience, "compliance with the apportionment transparency law was straightforward, did not interfere with the President's constitutional or statutory responsibilities or OMB's supervision of the Executive Branch, and was fully consistent with effective and efficient governance." CREW-Bagenstos Decl., ECF No. 9-4 ¶ 7. At bottom, Defendants are complaining about the extra work the 2022 and

2023 Acts require. This is a management issue; not a constitutional one.

Defendants claim—without citing any authority—that congressional "[o]versight generally is something that Congress engages in to inform future legislation" and that the automatic publication requirement in the 2022 and 2023 Acts is "miles away from the traditional oversight request or generic reporting requirement." CREW Hr'g Tr., ECF No. 24 at 87:9-12, 88:1-2. This argument is without merit: "Congress has plenary power to exact any reporting and accounting it considers appropriate in the public interest." *Richardson*, 418 U.S. at 178 n.11. Here, Congress has determined that OMB's apportionment decisions should be publicly available so that, among other things, it and the public can see whether they are consistent with congressional appropriations. As such, the 2022 and 2023 Acts aid Congress's exercise of its undisputed oversight role. The Acts do not dictate how OMB should apportion funds, nor do they establish a congressional management role in the administration of apportionments. The Acts merely require that the final apportionment decisions be made publicly available to provide transparency to Congress and the public.

For all these reasons, the Court rejects Defendants' arguments that the 2022 and 2023 Acts impair the ability of the Executive Branch to take care that the laws are faithfully

executed or impermissibly interfere in the Executive Branch's role.

> **2. The Deliberative Process Privilege as a Form of Executive Privilege Does Not Apply to the Information at Issue, and the Apportionment Documents are not Deliberative, Predecisional Documents**

"The most frequent form of executive privilege raised in the judicial arena is the deliberative process privilege; it allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.C. Cir. 1997)). "Although this privilege is most commonly encountered in [FOIA] litigation, it originated as a common law privilege." *Id.* (citing *Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988)). "Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative." *Id.* (citing *Army Times Publ'n Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1070 (D.C. Cir. 1993)). "The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need." *Id.*

Another form of executive privilege is the presidential communications privilege, a privilege that was "definitively established as a necessary derivation from the President's constitutional status in a separation of powers regime" arising out of the "Watergate-related lawsuits seeking access to President Nixon's tapes as well as other materials." *Id.* at 739-40.

Defendants assert that the 2022 and 2023 Acts require the disclosure of predecisional, deliberative information. CREW-Opp'n, ECF No. 18 at 28. At oral argument, Defendants argued that this makes the 2022 and 2023 Acts unconstitutional because the deliberative process privilege is a form of executive privilege, which, because it is "grounded and rooted in the separation of powers," cannot be abrogated by Congress. CREW Hr'g Tr., ECF No. 24 at 76:12-16. Consequently, according to Defendants, the 2022 and 2023 Acts are unconstitutional because they require the disclosure of privileged information. *Id.* at 78:16-18. Defendants hinted at this argument in their briefing materials by asserting that "[t]he deliberative process privilege—the most common executive privilege—is a privilege grounded in the separations of powers." CREW-Opp'n, ECF No. 18 at 26. However, the D.C. Circuit case they cite as supporting this assertion nowhere mentions the deliberative process privilege as being grounded in separation of powers. *See*

*generally Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49
(D.C. Cir. 2021). Rather, D.C. Circuit authority is clear that
the deliberative process privilege is primarily a common law
privilege. *See In re Sealed Case*, 121 F.3d at 737. Defendants'
support at oral argument for their remarkable proposition is
*United States v. Nixon*, 418 U.S. 683 (1974), a case which
involved presidential privilege (and which they failed to cite
in their briefing materials). *See* CREW Hr'g Tr., ECF No. 24 at
120:25-121:2. There is no evidence in the record remotely
supporting the notion that the apportionment documents are
presidential communications or are in any way subject to the
presidential communications privilege. Accordingly, the Court
rejects this constitutional claim.

Aside from their constitutional argument, Defendants argue
that the apportionment information cannot be disclosed because
it is deliberative, predecisional information. The Court also
rejects this argument. The information on the Public
Apportionments Database is neither predecisional nor
deliberative because apportionments, including footnotes, are
final "OMB-approved plan[s]" that are "legally binding." OMB
Circular No. A-11 § 120.1; *see id*. § 20.3 (stating that an
"[a]pportionment is a plan, approved by OMB, to spend
resources"). Defendants cite no precedent supporting the
proposition that a legally binding document is predecisional and

deliberative. Nor do they cite any prior instance in which OMB has claimed that an apportionment document is privileged. That Defendants' current position has never been previously claimed by OMB is consistent with Mr. Bagenstos's testimony:

> [Director Vought's] assertion [that 'apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change'] fundamentally misunderstands both the nature of apportionments and what it means to be 'predecisional.' Apportionments are not part of the give and take that precedes a binding legal decision; they are the binding legal decisions themselves.

CREW-Bagenstos Decl., ECF No. 9-4 ¶¶ 10-11 (quoting OMB Letter at 22); *see also* OMB Circular A-11 § 120.1.

Defendants also argue that in the Anti-Deficiency Act, "Congress afforded the President authority to apportion funds as he 'considers appropriate,'" and that apportionments are an iterative process subject to change. CREW-Opp'n, ECF No. 18 at 25 (quoting 15 U.S.C. § 1512(b)(2)). Consequently, according to Defendants, the interim apportionment decisions are privileged. The Court rejects this argument for the same reason as discussed above—even if an apportionment is later changed, this does not alter the legally binding nature of the apportionment once it is made.

Similarly, Defendants' argument that OMB remains free to change apportionments does not make the information predecisional and deliberative. No matter how many times an apportionment changes, each generated apportionment is "legally binding," creating administrative and criminal consequences under the Anti-Deficiency Act. *See* OMB Circular A-11 §§ 120.1, 145.1. A review of examples of apportionment decisions confirms that the documents are not deliberative. *See* OMB Circular A-11, Ex. 4, ECF No. 18-7 in 25-cv-1111 at 37-58. Nothing within the apportionment decision shows OMB officials' discussions or thoughts about any policy considerations regarding how to apportion appropriated funds. *Id.* Finally, there is ample authority in support of the proposition that because an agency can change its decision, this does not make the decision any less final. *See e.g., U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 271 (2021) (emphasizing that document is a "final" decision outside the scope of the deliberative process privilege if it has "real operative effect" leading to "direct and appreciable legal consequences"); *Nat'l Env't Dev. Ass'ns Clean Air Project v. EPA*, 752 F.3d 999, 1006 (D.C. Cir. 2014) ("An agency action may be final even if the agency's position is 'subject to change' in the future."). For all these reasons, the information at issue is neither predecisional nor deliberative.

By removing the Public Apportionments Database, Defendants have acted contrary to the 2022 and 2023 Acts. For the reasons explained above, the applicable provisions of the 2022 and 2023 Acts are not unconstitutional. Accordingly, the Court will grant Plaintiffs' Motions for Partial Summary Judgment as to their respective APA claims.

### C. CREW is Entitled to Summary Judgment on its Dissemination of Public Information Claim Under the PRA

The Court also concludes that CREW is entitled to summary judgment on its dissemination of public information claim under the PRA. Defendants' removal of the Public Apportionments Database violates the PRA's requirement to provide the public with timely access to the information. *See* 44 U.S.C. § 3506(d)(1). As CREW points out, "Defendants do not dispute that the apportionment information in the database is 'public information' within the meaning of the [PRA], and they do not dispute that the information's removal deprives the public of timely access, as required by that statute." CREW Reply, ECF No. 21 at 17. Defendants' only argument in response is that "the apportionment documents are interim, deliberate documents that are exempt from public disclosure." CREW-Opp'n, ECF No. 18 at 31. However, for the reasons explained above, the Court rejects this argument. Accordingly, the Court will grant CREW's Motion

for Partial Summary Judgment as to its dissemination of public information claim under the PRA.

### D. Remedies

Given the Court's conclusion that Defendants' removal of the Public Apportionments Database is contrary to law, the Court turns to the question of remedies. CREW and Protect Democracy request that the Court: (1) vacate and set aside Defendants' actions; (2) declare Defendants' actions unlawful; and (3) enter a permanent injunction prohibiting Defendants from removing the Public Apportionments Database in the future. *See* CREW Suppl., ECF No. 28 at 2; Protect Democracy Suppl., ECF No. 28 at 3.

#### 1. Declaratory Relief

Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Whether to issue declaratory relief "always rests within the sound discretion of the court." *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980). There are many factors relevant to whether declaratory relief is necessary, but "[i]n the D.C. Circuit, two criteria are ordinarily relied upon: 1) whether the judgment will serve a useful purpose in clarifying the legal relations at issue, or 2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving

rise to the proceeding." *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016) (citing *Vance*, 627 F.2d at 364 n.76).

Defendants argue that Plaintiffs are not entitled to declaratory relief because the apportionment documents are predecisional and deliberative, but they fail to address whether a declaratory judgment would be improper if the Court rules in Plaintiffs' favor. *See* Defs.' Suppl.—CREW, ECF No. 29 at 2; Defs.' Suppl.—Protect Democracy, ECF No. 29 at 2. The Court rejected Defendants' predecisional and deliberative arguments above and concludes that it will exercise its discretion to award declaratory relief. Declaratory relief clarifies for the parties—and the public—that Defendants' knowing violation of the disclosure requirement in the 2022 and 2023 Acts is not legally justified by Executive powers or privileges. Importantly, a declaration provides authority on the central question in this litigation and guidance on what Defendants must do to comply with the law.

### 2. Vacating and Setting Aside Unlawful Conduct

Plaintiffs also request that the Court vacate and set aside Defendants' unlawful action by ordering Defendants to "restor[e] the database and mak[e] the apportionment information publicly available." CREW Suppl., ECF No. 28 at 3; Protect Democracy Suppl., ECF No. 28 at 3-4. Defendants assert that vacatur is not

available here, but provide no argument in support of the
assertion based on the case they cite. *See* Defs.' Suppl.—CREW,
ECF No. 29 at 5 (citing *United States v. Texas*, 599 U.S. 670,
692-93 (2023) (Gorsuch, J. concurring)); Defs.' Suppl.—Protect
Democracy, ECF No. 29 at 5 (citing *Texas*, 599 U.S. at 692-93
(Gorsuch, J. concurring)).

Title 5 U.S.C. § 706(2)(A) directs courts to "hold unlawful
and set aside agency action" that is "not in accordance with
law[.]" 5 U.S.C. § 706(2)(A). "[T]o 'set aside' a rule is to
vacate it." *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890
(D.C. Cir. 2024) (quoting *Corner Post, Inc. v. Bd. of Governors*,
603 U.S. 799, 830 (2024) (Kavanaugh, J. concurring)). Thus,
"[w]hen an agency's action is unlawful, 'vacatur is the normal
remedy.'" *Id.* (quoting *Allina Health Servs. v. Sebelius*, 746
F.3d 1102, 1110 (D.C. Cir. 2014)). The D.C. Circuit has held
that remand without vacatur is proper "if an agency's error is
'curable.'" *Id.* (citing *U.S. Sugar Corp. v. EPA*, 844 F.3d 268,
270 (D.C. Cir. 2016)) (emphasizing that remand without vacatur
is an "exceptional remedy"). "Because an agency can't 'cure' the
fact that it lacks authority to take a certain action," *id.*; the
Court concludes that vacatur is proper here. As discussed above,
Defendants' removal of the Public Apportionments Database
clearly violates the 2022 and 2023 Acts, and Defendants have no
legal basis for failing to comply with the Acts. Accordingly,

the Court will vacate and set aside Defendants unlawful action
pursuant to the APA.

### 3. Permanent Injunction

Finally, Plaintiffs request that the Court permanently
enjoin Defendants from removing the Public Apportionments
Database and the apportionment information required to be
disclosed by the 2022 and 2023 Acts without statutory
authorization. *See* CREW Suppl., ECF No. 28 at 3-5; Protect
Democracy Suppl., ECF No. 28 at 4-5.

A court may issue a permanent injunction where, in addition
to establishing that it is entitled to prevail on the merits, a
plaintiff demonstrates:

> (1) that it has suffered an irreparable
> injury; (2) that remedies available at law,
> such as monetary damages, are inadequate to
> compensate for that injury; (3) that,
> considering the balance of hardships between
> the plaintiff and defendant, a remedy in
> equity is warranted; and (4) that the public
> interest would not be disserved by a permanent
> injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In
determining whether a permanent injunction is a proper remedy,
courts in this district have considered the first two factors
together. *See, e.g.*, *Grundmann v. Trump*, No. 25-cv-425, 2025 WL
782665, at *13 (D.D.C. Mar. 12, 2025); *Wilcox v. Trump*, No. 25-
cv-334, 2025 WL 720914, at *15 n.20 (D.D.C. Mar. 6, 2025);
*Ridgely v. Lew*, 55 F. Supp. 3d 89, 97 (D.D.C. 2014). And because

**App.56**

the government is the defendant, "factors (3) and (4) merge." *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Defendants argue that Plaintiffs cannot meet the requirements for a permanent injunction because: (1) they have failed to establish irreparable harm; and (2) the balance of hardships in factors three and four tip in favor of the government "because any injunctive relief in this case would require unconstitutional infringement upon Executive power." Defs.' Suppl.—CREW, ECF No. 29 at 3-4; Defs.' Suppl.-Protect Democracy, ECF No. 29 at 4.

### a. Irreparable Harm and Inadequate Remedy at Law

Examining the first two factors together, the Court concludes that CREW and Protect Democracy have suffered irreparable harms that cannot be fully repaired absent an injunction.

To establish an irreparable injury, a plaintiff must show that the injury is "both certain and great" and "actual and not theoretical." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). An organization satisfies the "irreparable harm" prong "if the actions taken by [the

defendant] have 'perceptibly impaired' the [organization's] programs." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (alteration in original) (internal quotation marks omitted) (quoting *Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994)). "If so, the organization must then also show that the defendant's actions 'directly conflict with the organization's mission.'" *Id.* (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996)).

The Court concludes that CREW and Protect Democracy's inability to continue their work monitoring and reporting on the Executive Branch's use of congressionally appropriated funds due to Defendants' removal of the Public Apportionments Database is an irreparable injury. Defendants argue that CREW has failed to demonstrate that the apportionment information "is indispensable to its core mission and that impaired access prevents it from fulfilling its organizational goals." Defs.' Suppl.—CREW, ECF No. 29 at 3-4. The Court disagrees. Without the database, CREW is unable to evaluate ongoing concerns regarding ICA violations or provide the public with insight into how the Executive is spending funds. *See* Wentworth Decl., ECF No. 9-3 ¶¶ 6-10. As to Protect Democracy, in addition to the harm to its organization's mission of "monitoring and reporting on the Executive Branch's compliance with Congress's directives and making that

information more accessible to the public," Protect Democracy Mot., ECF No. 18 at 23; Protect Democracy's asserted economic loss stemming from the inability to maintain OpenOMB constitutes an irreparable injury.

When Defendants removed the Public Apportionments Database, they deprived CREW and Protect Democracy of information to which they are statutorily entitled, and which they relied on to monitor government funding, respond to possible legal violations, and provide transparency to the public. *See* Wentworth Decl., ECF No. 9-3 ¶¶ 14-16; Ford Decl., ECF No. 18-4 ¶¶ 19-22. The irreparable nature of these injuries is further supported by the fact that there are ongoing, imminent concerns of potential Executive Branch withholding or overspending. *See, e.g.*, GAO, *Institute of Museum and Library Services– Applicability of the Impoundment Control Act to Reduction of Agency Functions*: Decision File B-337375 (June 16, 2025), https://www.gao.gov/assets/880/878908.pdf. CREW and Protect Democracy cannot continue their efforts because they no longer have timely access to apportionment information as required by the 2022 and 2023 Acts.

Furthermore, the Court concludes, and Defendants do not dispute, that remedies at law are inadequate to compensate for these injuries. Monetary damages would not provide Plaintiffs with the apportionment information, nor would it allow

Plaintiffs to fulfill their missions of educating the public and Congress about how the Executive Branch is allocating congressionally appropriated funds. Not only does a permanent injunction ensure that Plaintiffs regain access to the Public Apportionments Database, but it also prohibits Defendants from removing the database or failing to comply with the 2022 and 2023 Acts in any other way in the future.

### b. Public Interest and Balance of Hardships

Finally, the Court concludes that the public interest and balance of hardships weigh in favor of issuing a permanent injunction. Relying on its constitutional arguments that the 2022 and 2023 Acts infringe upon the Executive power, Defendants argue that these factors weigh against injunctive relief. *See* Defs.' Suppl.—CREW, ECF No. 29 at 4; Defs.' Suppl.—Protect Democracy, ECF No. 29 at 4.

The Court has already considered and rejected Defendants' arguments that the 2022 and 2023 Acts are unconstitutional. As explained above, Defendants' removal of the Public Apportionments Database violates the law and, contrary to Defendants' argument, their conduct is not justified by Executive power or privilege. Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir.

**App.60**

2013)). Moreover, OMB complied with the disclosure requirements for nearly three years before it removed the Public Apportionments Database, further diminishing any argument that complying with the disclosure requirement is overly cumbersome or places an impossible burden on Defendants.

A permanent injunction requiring Defendants to maintain the Public Apportionments Database as required by law directly serves the "substantial public interest in having government agencies abide by the federal laws that govern their existence and operations." *Newby*, 838 F.3d at 12 (internal quotation marks omitted) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). This interest is also directly advanced by enforcing the disclosure requirements in the 2022 and 2023 Acts. As Congress intended when enacting the disclosure requirements, the Public Apportionments Database provides the public and their elected representatives with timely insight on how the Executive Branch is allocating taxpayer dollars. *See* GAO, Impoundment Control Act of 1974: Review of the President's Special Message of June 3, 2025, B-337581 (June 17, 2025), https://www.gao.gov/assets/880/878941.pdf ("Restoring [the Public Apportionments Database] and providing timely access to the apportionment information we request would enhance [Congress's] oversight and [the GAO's efficiency in supporting Congress."). The Public Apportionments Database provides the

public with information about whether the Executive Branch is abiding by the laws governing the allocation of public funds, thereby enabling the public to hold the Executive Branch accountable if there is a misuse of appropriated funds.

For all these reasons, the balance of hardships and the public interest favor granting a permanent injunction.

### E. Plaintiffs' Remaining Claims

While Plaintiffs' Complaints include additional challenges to Defendants' removal of the Public Apportionments Database, *see* CREW Compl., ECF No. 1 ¶¶ 26-29; Protect Democracy Compl., ECF No. 1 ¶¶ 51-77; Plaintiffs agree that the Court's decision here—granting each form of requested relief—provides Plaintiffs with complete relief. *See* CREW Suppl., ECF No. 28 at 5-6; Protect Democracy Suppl., ECF No. 28 at 8. Accordingly, the Court exercises its discretion to dismiss without prejudice the remainder of CREW and Protect Democracy's claims as prudentially moot. *See City of New York v. Baker*, 878 F.2d 507, 509 (D.C. Cir. 1989) (explaining that "prudential mootness" "does not concern a court's power to grant relief, but rather its exercise of discretion in the use of that power"); *Ctr. for Biological Diversity v. Regan*, 729 F. Supp. 3d 37, 52 (D.D.C. 2024) ("The practice [of not deciding more than it must] permits courts to avoid the pointless . . . task of deciding a broad array of legal and factual issues . . . that, in the parlance of

mootness, will 'make [no] difference to the legal interests of
the parties[.]'" (quoting *Air Line Pilots Ass'n v. UAL Corp.*,
897 F.2d 1394, 1396 (7th Cir. 1990))).

### F. Stay Pending Appeal

In the event the Court awarded Plaintiffs' requested
relief, as it has done here, Defendants' supplemental briefing
requests a stay of any permanent injunction pending appeal. *See*
Defs.' Suppl.—CREW, ECF No. 29 at 5. Defendants' request is
premature because at the time it was made, the Court had not yet
ruled on Plaintiffs' motions. Accordingly, the Court **DENIES**
without prejudice Defendants' request for a stay pending appeal.
If, after considering the Court's Memorandum Opinion and Order,
Defendants decide to renew this request, they may make a request
consistent with Federal Rule of Appellate Procedure 8.

In the alternative, Defendants request that the Court issue
a fourteen-day administrative stay "to allow for the Solicitor
General to determine whether to appeal and seek a stay pending
appeal." Defs.' Suppl.-CREW, ECF No. 29 at 6. A court may issue
a brief "administrative stay" to "buy the court time to
deliberate when issues are not easy to evaluate in haste." *Nat'l
Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13, 16–17 (D.D.C.
2025) (quoting *United States v. Texas*, 144 S. Ct. 797, 798
(2024) (Barrett, J. concurring) (internal quotation marks
omitted)). "While administrative stays are more common in

appellate courts, district courts have recognized their applicability in cases seeking emergency relief under the APA." *Id.* (citing Order, *Texas v. Dep't of Homeland Sec.*, No. 24-cv-306, at *2 (E.D. Tex. Aug. 26, 2024)) (noting that the authority for an administrative stay stems from the All Writs Act and the court's authority to manage its docket). Neither CREW nor Protect Democracy oppose a brief administrative stay. *See* CREW Suppl. Reply, ECF No. 30 at 4; Protect Democracy Suppl. Reply, ECF No. 31 at 5.

To allow Defendants time to review the Court's Memorandum Opinion and Order, and to allow the parties to properly brief any forthcoming, procedurally proper motion for a stay pending appeal, the Court administratively stays the permanent injunction for three days, until 10:00 am on July 24, 2025.

**IV.   Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART** CREW's Motion for Partial Summary Judgment as to its APA claims that the Defendants' removal of the Public Apportionments Database violates the 2022 and 2023 Acts and the PRA's dissemination of information requirement, and **DENIES IN PART** CREW's Motion for Partial Summary Judgment as to its APA claim that Defendants' conduct violated the PRA's notice requirement, ECF No. 9 in 25-cv-1051. The Court **GRANTS** Protect Democracy's Motion for Partial Summary Judgment on its APA claim that Defendants' removal of

**App.64**

the Public Apportionments Database violates the 2022 and 2023 Acts, ECF No. 18 in 25-cv-1111. The Court **DENIES AS MOOT** Plaintiffs' Motions for a Preliminary Injunction, ECF No. 9 in 25-cv-1051 and ECF No. 18 in 25-cv-1111. The Court **DISMISSES WITHOUT PREJUDICE** Count One of CREW's Complaint as prudentially moot. The Court **DISMISSES WITHOUT PREJUDICE** Counts Two through Six of Protect Democracy's Complaint as prudentially moot.

The Court **DENIES WITHOUT PREJUDICE** Defendants' request for a stay pending appeal and enters an administrative stay through 10:00 am on July 24, 2025.

Separate, appropriate Orders for each case accompany this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **July 21, 2025**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> *v.* <br><br> OFFICE OF MANAGEMENT AND BUDGET *et al.,* <br><br> Defendant. | Case No. 1:25-cv-01051-EGS |

## DECLARATION OF KELLY KINNEEN

I, Kelly Kinneen, make the following declaration based upon my personal knowledge, upon information provided in my official capacity, and upon conclusions I reached based on that knowledge or information:

1. I am the Assistant Director for Budget of the Office of Management and Budget (OMB) in the Executive Office of the President, in Washington, D.C. I have served in this position since 2017, and have worked at OMB since 2006.

2. I am the senior-most career official responsible for supporting the OMB Director in developing all aspects of the President's Budget. Additionally, I advise OMB leadership and Federal agencies on matters of execution relating to OMB's apportionment authority, 31 U.S.C. § 1512 et seq.

3. In this declaration, I summarize OMB's apportionment authority and describe the nature of the interagency process by which appropriated funds are made available to agencies.

4. At the start of the fiscal year, and after appropriations bills are passed, pursuant to 31 U.S.C. §§ 1512-13, the President must "apportion" the budget authority to the relevant Federal agencies before each agency may obligate its funds. The President has delegated this apportionment authority to the OMB Director. Executive Order (E.O.)

1

**App.66**

6166, as amended by E.O. 12608.

5.    An apportionment is an OMB-approved plan to use budgetary resources. 31 U.S.C. 1513(b). OMB apportions funds to Executive Branch agencies by time periods, specific activities or projects, or a combination thereof. 31 U.S.C. § 1512(b)(1); OMB Circular A-11 § 120.1. If funds are apportioned by time period, OMB refers to that as a "category A" apportionment. If funds are apportioned by project or activity, OMB refers to that as a "category B" apportionment. If funds are apportioned by both time and purpose, that is referred to as a "category AB" apportionment.

6.    Funds are to be apportioned "as the [apportioning] official considers appropriate." 31 U.S.C. § 1512(b)(2). Apportionments involve exercising significant discretion and judgment regarding the budgetary resources a program requires, including when those resources will be needed and for what purpose.  Circular A-11 makes clear that officials cannot exceed apportionments. Apportionments, being an exercise of delegated authority from the President, are legally binding upon the Executive Branch officials. The apportionment, however, does not bind OMB, which remains free to change it whenever it so chooses, as Circular A-11 also makes clear. Circular A-11, an Executive Branch guidance document, merely confirms that agencies must follow instructions from the President, acting through OMB.

7.    With narrow exceptions, OMB must apportion appropriated funds before an agency may obligate those funds during each fiscal year. The Government Accountability Office (GAO) defines an obligation as "[a] definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty on the part of the United States that could mature into a legal liability by virtue of actions on the part of the other party beyond the control of the United States."

**App.67**

U.S. Gov't Accountability Office, A Glossary of Terms Used in the Federal Budget Process, GAO-05-734SP, at 70 (2005), available at https://www.gao.gov/assets/gao-05-734sp.pdf. An agency enters an obligation where, for example, it places an order, signs a contract, awards a grant, purchases a service, or takes other actions that require the government to make payments to the public or from one government account to another. OMB Circular A-11 § 20.5(a).

8.  An "expenditure" or "outlay" occurs when an agency makes a payment to liquidate an obligation. OMB Circular A-11 § 20.6.

9.  Obligations and expenditures that exceed an apportionment are a violation of, and are subject to reporting under, the Antideficiency Act. 31 U.S.C. 1517(a)(1), (b). An apportionment authorizes an agency, but does not require it, to make an obligation of funds. An apportionment does not in any way entitle an outside party to funds. Rather, apportionments are internal directives from OMB, exercising the President's delegated authority, to agencies.

10.  OMB communicates apportionment decisions to agencies through Excel sheets that include designated funds for times, periods, projects, or activities. Apportionments reflect a snapshot of time of OMB's best judgment in the moment about how an agency should use its funds during the period when those funds are legally available for obligation. This time period could be one quarter, one fiscal year, many fiscal years, or indefinite. Because apportionments are forward-looking, they are required by statute to be periodically reviewed and often are updated (or "reapportioned") to reflect changes in circumstances or policy goals. 31 U.S.C. 1512(a).

11.  OMB routinely also includes informational or legally binding footnotes on apportionments. Footnotes give an agency additional information or instructions beyond

**App.68**

the dollar amounts provided for a time period, project, or activity. Frequently, footnotes will provide additional restrictions on the use of funds, or will condition the availability of funds on further action by the agency, or on other future circumstances. Footnotes can disclose ongoing negotiations between an agency and OMB. An iterative approach to footnotes can assist in gathering information from agencies that are less inclined to provide information to OMB for oversight. They may reflect OMB's current policy deliberations, assumptions about program needs, and even future economic assumptions. As circumstances change, OMB's judgment about such considerations may also change, necessitating a reapportionment.

12.    If, for example, funds for several agency programs are each given a category B apportionment that lists a particular dollar amounts for each program, that reflects the Administration's current view on what those programs may need in the future. But if a significant economic, foreign, or other policy shift occurs, the funds apportioned for those programs may need to change. One program might then have its apportionment reduced, while another program's apportionment would be increased. As long as the agency has not expended the funds for a program, those funds can be reapportioned for other purposes, within the scope of the appropriation.

13.    In 2022, OMB began operating a publicly available automated apportionment reporting system in accordance with section 204 of division E of the Consolidated Appropriations Act, 2022 (Public Law 117-103). The system included each document apportioning an appropriation beginning in fiscal year 2022, including any associated footnotes (in a format that qualified each such document as an Open Government Data Asset) and a written explanation stating the rationale of any footnotes for apportioned amounts. The reporting requirements made OMB's administration of apportionments more difficult.

OMB believed it was prudent to promulgate apportionment documents omitting key information that would assist OMB and agencies in guiding allocations of resources throughout the funding process.

14. To provide a more specific example, OMB has, in the past, apportioned the Department of Energy's funds for the Title 17 loan guarantee program as category B in manner that included estimated credit subsidy amounts for the loans obligated by the agency during that fiscal year. The category B descriptions included identifying references for the individual loan borrowers, and the category B apportionments reflected provisional financial commitments subject to ongoing review and potential re-apportionment. Following the requirement to publish apportionments, OMB had to change its process to protect sensitive information about who would receive Government funding in advance of public announcements, and only included such information after the funds had been obligated and a public announcement had been made. An example of such an apportionment is attached as Exhibit A.

15. In another example, OMB apportioned funds with a footnote that detailed OMB's preliminary understanding of an agency's financial controls, indicating ongoing analysis subject to future verification. Following the publication requirement, OMB was reluctant to include such a footnote due to the deliberative nature of the facts surrounding the apportionment, which has impeded OMB's ability to most efficiently provide direction to and receive information from agencies. The apportionment itself can be part of a larger deliberative process and viewing these as stand-alone documents without additional context could reveal information about the Executive Branch's internal planning and strategy.

16. Apportionments are not fixed in place once signed. They are part of an iterative, internal Executive branch decision-making process that involves ongoing conversations and instructions to the agencies to ensure that apportionments are updated to reflect current

USCA Case #25-5266    Document #2126848    Filed: 07/23/2025    Page 104 of 148

realities and future estimates. Apportionments are an internal Executive branch fiscal control mechanism designed to ensure that funds are being spent in accordance with the law and policy. By their nature, they are estimates of the amounts of budgetary resources that OMB anticipates that programs will likely require in the future. But they must and do change throughout the fiscal year. It is only when the agency, not OMB, takes actions to obligate or expend the funds that any entity outside the Executive branch, is affected. After appropriations Acts are enacted, apportionment of these appropriated funds is one of the first steps in the process before a program or activity can be carried out – it is not the last. Following an apportionment, OMB continues to monitor agency funding, and works with agencies to determine the best use of appropriated funds. It may advise agencies regarding the President's priorities for the use of the funds or on sensitive matters touching on national security or foreign policy.

17.  For example, a recent apportionment for the Department of the Interior included a footnote that stated, "Of the amounts apportioned, funding for the Bureau of Reclamation's proposed 'Sustainable Water for Agriculture Program' may be obligated ten days after the Bureau of Reclamation provides a report to OMB on how it will coordinate with USDA on implementation of such program to avoid duplication of programs.  [Rationale: An agency spend plan or other documentation is necessary to better understand how the agency intends to obligate some or all of the apportioned funds.]" In another case, an apportionment for the Department of Homeland Security included a footnote that provided, "…these funds are apportioned with the understanding that DHS will submit written reports to OMB on ongoing projects within 10 business days of the close of each quarter, detailing the: DHS component(s) supported; project purpose; desired project outcome; project timeline; number of AI Corps members

**App.71**

working on the project; and data on outcome measures (e.g., number of work hours saved; number/value of contracts reduced). [Rationale: OMB requests additional information on programmatic spending for some or all of the apportioned funds.]" These apportionments demonstrate the iterative nature of OMB's apportionment decisions because additional engagement was necessary with the agencies before the funding could be provided for the purposes in question. These apportionments are included as Exhibit B. Apportionments and footnotes may contain deliberative information that, while not classified, could nevertheless reveal sensitive information about national security, foreign affairs, the industrial base, critical infrastructure, and the like. An apportionment may indicate predecisional details regarding the timing for an infrastructure project, or may indicate the recipient of foreign aid. Apportionments and footnotes can also contain predecisional information that can move markets or create financial disruption, such as apportionments for funding intended to assist an industry.

18.    The requirement in the Consolidated Appropriations Act, 2022, to disclose OMB's apportionments within 48 hours of signing, and to provide a rationale for any footnotes, caused OMB to have to amend the manner in which it apportioned funds that has implications for OMB's ability to use the full scope of its apportionment authority. Even if the OMB apportioning "official considers [it] appropriate" under 31 U.S.C. § 1512(b)(2) to apportion funds with legally binding specific instructions in a Category B apportionment line or a footnote, following the requirement to publish those instructions may mean that in fact, the OMB apportioning official cannot apportion in the manner deemed appropriate. In some instances, it has forced OMB to choose between compromising confidentiality and using its apportionment authority as Congress intended.

**App.72**

17.    On March 29, 2025, OMB Director Russell Vought informed the House and Senate

Committees on Appropriations that OMB would no longer operate and maintain the

automated apportionment system. Those letters are attached as Exhibit C.

CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct. Executed in Washington, D.C., on

the 30th day of April, 2025.

Kelly Kinneen

**App.73**

# EXHIBIT A

SF 132 APPORTIONMENT SCHEDULE

FY 2024 Apportionment
Funds provided by PL 117-169

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of Energy** | | |
| | | **Bureau: Energy Programs** | | |
| | | **Account: Title 17 Innovative Technology Loan Guarantee Program** | | |
| | | **TAFS: 089-2022-2026-0208** | | |
| IterNo | 9 | Last Approved Apportionment: 2024-07-05 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| | | **Budgetary resources** | | |
| 1000 | MA | Mandatory Actual - Unobligated balance brought forward, Oct 1 - Direct | 327,210,687 | |
| 1000 | MA4 | Mandatory Actual - Unobligated balance brought forward, Oct 1 - Other | 8,222,314,951 | B4 |
| 1010 | | Unob Bal: Transferred to other accounts | -17,200,000 | B5 |
| 1021 | | Unob Bal: Recov of prior year unpaid obligations | 121,240 | |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 1,878,760 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **8,534,325,638** | B2 |
| | | **Application of budgetary resources** | | |
| | | **Category B Projects** | | |
| 6011 | | IRA - Administrative Expenses - Section 50141 (sec. 1703 of EPA) | 82,632,915 | |
| 6012 | | IRA - Administrative Expenses - Section 50144 (sec. 1706 of EPA) | 246,577,772 | |
| 6015 | | Subsidy on Loan 1412 - LongPath Development Company LLC | 10,519,255 | |
| 6016 | | Subsidy on Loan EIR0007 - Holtec Palisades LLC | 18,056,245 | |
| 6017 | | Subsidy on Loan 1365 - Plug Power Energy Loan Borrower LLC | 29,178,402 | |
| 6018 | | Subsidy on Loan 1448 - Bioforge Marshall LLC | 2,063,376 | |
| 6019 | | Subsidy on Loan EIR0029 - Clean Flexible Energy LLC | 74,327,590 | |
| 6020 | | Subsidy on Loan EIR0017 | 43,250,951 | |
| | | **Category C, Apportioned for future fiscal years** | | |
| 6170 | | Apportioned in FY 2025 | 8,027,719,132 | |
| **6190** | | **Total budgetary resources available** | **8,534,325,638** | |

Submitted _____ Date _____

**App.75**

SF 132 APPORTIONMENT SCHEDULE

FY 2024 Apportionment
Funds provided by PL 117-169

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | See Approval_Info sheet for OMB approval information | | |

FY 2024 Apportionment
OMB Footnotes

## Footnotes for Apportioned Amounts

## Footnotes for Budgetary Resources

**B2**  Pursuant to the authority in OMB Circular A-11 section 120.21 one or more lines on the apportionment (including lines above line 1920) may have been rounded up and as such those rounded lines will not match the actuals reported on the SF-133. DOE will ensure that its funds control system will only allot actuals.

**B4**  $ 7,200,000.00 Shifting to Admin for OIG 0.2% transfer
$ 10,000,000.00 Shifting to Admin for OIG 0.2% transfer
$3,465,114,950.26 Subsidy for Section 50141
$4,740,000,000.00 Subsidy for Section 50144
$ 0.74 Rounding
-----------------------
$8,222,314,951.00

**B5**  Reflects appropriation transfer of two-tenths of one percent to the Office of the Inspector General from unobligated balances of amounts made available under sections 50141 and 50144 of Public Law 117-169, in accordance with Public Law 118-42, Division D, Sec. 307(b), as follows:
-$ 7,200,000 Section 50141
-$10,000,000 Section 50144
-----------------
$ 17,200,000

End of File

**OMB Approved this apportionment request using
the web-based apportionment system**



| | |
|---|---|
| **Mark Affixed By:** | Kelly Colyar |
| | Acting Deputy Associate Director for Energy, Science and Water Programs |
| **Signed On:** | 2024-09-10 03:51 PM |
| **File Name:** | FY24_DOE_089-2226-0208_09ReApp_v1_Updated.xlsx |
| **Sent By:** | John Dick |
| **Sent On:** | 2024-09-10 04:20 PM |
| **TAF(s) Included:** | 089-2022-2026-0208 (Title 17 Innovative Technology Loan Guarantee Program) |

# EXHIBIT B

SF 132 APPORTIONMENT SCHEDULE

FY 2025 Apportionment
Funds Provided by N\A - Carryover

| Line No | Line Split | Line Description | OMB Action |
|---|---|---|---|
| | | **Department of the Interior** | |
| | | **Bureau: Bureau of Reclamation** | |
| | | **Account: Water and Related Resources** | |
| | | **TAFS: 014-2022-2026-0680** | |
| IterNo | 2 | Last Approved Apportionment: 2024-09-06 | |
| RptCat | NO | Reporting Categories | |
| AdjAut | YES | Adjustment Authority provided | |
| | | **Budgetary resources** | |
| 1000 | E43 | Estimated - Estimated - Unob Bal: Brought forward, October 1 - Supplemental - Direct (Mand) Inflation Reduction Act, 2022, P. L. 117-169 | 2,957,265,248 |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 800,000 |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **2,958,065,248** |
| | | **Application of budgetary resources** | |
| | | **Category B Projects** | |
| 6011 | | All Projects | 800,000 |
| 6012 | | SEC. 50233 Drought Mitigation in the Reclamation States | 2,944,778,679 |
| 6013 | | Sec 80004 Emergency Drought Relief for Tribes | 12,486,569 |
| **6190** | | **Total budgetary resources available** | **2,958,065,248** |

Submitted _____     Date _____

See Approval_Info sheet for OMB approval information

FY 2025 Apportionment
OMB Footnotes

### Footnotes for Apportioned Amounts

**A1**  To the extent authorized by law, this estimated amount is apportioned for the current fiscal year. This estimated amount may be increased or decreased without further action by OMB if the actual indefinite appropriations; actual reimbursements earned, including reimbursements and offsetting collections from non-Federal/Federal sources; actual recoveries of prior year obligations; and actual contributions from non-Federal/Federal sources differ from the estimate. If the actual unobligated balance (excluding reimbursable funding) differs by more than 20 percent from the estimate in this apportionment, the agency must request a reapportionment of the account. Transfers of funds authorized by law (except for Section 102 transfers and transfers from the Wildfire Suppression Operations Reserve fund), to or from any of the accounts listed, may be processed without further action by OMB. Any of these funds that are not needed for this purpose may be used for current year obligations without further action by OMB. [Rationale: Footnote signifies that this TAFS has received or may receive an automatic apportionment.]

**A5**  Of the amounts apportioned, funding for the Bureau of Reclamation's proposed "Sustainable Water for Agriculture Program" may be obligated ten days after the Bureau of Reclamation provides a report to OMB on how it will coordinate with USDA on implementation of such program to avoid duplication of programs. [Rationale: An agency spend plan or other documentation is necessary to better understand how the agency intends to obligate some or all of the apportioned funds.]

### Footnotes for Budgetary Resources

End of File

**OMB Approved this apportionment request using
the web-based apportionment system**



| **Mark Affixed By:** | John Pasquantino |
|---|---|
| | Deputy Associate Director for Energy, Science and Water Programs |

**Signed On:**     2025-01-16 12:30 PM
**File Name:**     FY2025_DOI_BURREC_TAFS014-2022-2026-0680_IterNo_2_2025-01-15_16.29pm_Updated OMB Edit.xlsx
**Sent By:**     Sherron White
**Sent On:**     2025-01-17 09:55 AM

**TAF(s) Included:**     014-2022-2026-0680 (Water and Related Resources)

SF 132 APPORTIONMENT SCHEDULE

FY 2025 Apportionment
Funds Provided by Public Law N/A

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---------|-----------|-----------------|-----------|--------------|
| | | **Department of Homeland Security** | | |
| | | **Bureau: Management Directorate** | | |
| | | **Account: Operations and Support, MD** | | |
| | | **Treasury Account: Operations and Support** | | |
| | | **TAFS: 070-2025-2025-0112** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| | | **Budgetary resources** | | |
| 1100 | | BA: Disc: Appropriation | 1,722,204,000 | |
| 1134 | | BA: Disc: Appropriations precluded from obligation | -1,340,046,932 | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | 390,428,577 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **772,585,645** | |
| | | **Application of budgetary resources** | | |
| 6001 | | Category A -- 1st quarter | 379,935,384 | |
| 6002 | | Category A -- 2nd quarter | | |
| 6003 | | Category A -- 3rd quarter | | |
| 6004 | | Category A -- 4th quarter | | |
| | | **Category B Projects** | | |
| 6011 | | General Reimbursable Authority | 390,428,577 | |
| 6012 | | AI Corps | 2,221,684 | |
| **6190** | | **Total budgetary resources available** | **772,585,645** | A2 |

Submitted: Ann M.Tipton, Ph.D., PMCEd, CDFM
Budget Director, Office of the Chief Financial Officer
Date:10.28.2024

**App.83**

FY 2025 Apportionment
OMB Footnotes

### Footnotes for Apportioned Amounts

**A2**  Of the amounts apportioned, only the amount on line 6012 may be obligated in support of DHS's Artificial Intelligence (AI) Corps or any successor entity, including for no more than 50 positions. Further, these funds are apportioned with the understanding that DHS will submit written reports to OMB on ongoing projects within 10 business days of the close of each quarter, detailing the: DHS component(s) supported; project purpose; desired project outcome; project timeline; number of AI Corps members working on the project; and data on outcome measures (e.g., number of work hours saved; number/value of contracts reduced). [Rationale: OMB requests additional information on programmatic spending for some or all of the apportioned funds.]

### Footnotes for Budgetary Resources

End of File

**OMB Approved this apportionment request using
the web-based apportionment system**



**Mark Affixed By:**     Andrew Abrams
                      Deputy Asso Director for Transportation, Homeland, Justice and Service Programs

**Signed On:**         2024-11-01 05:49 PM
**File Name:**        FY_2025_DHS_MGMT_070_25_0112.xlsx
**Sent By:**           Andrew Abrams
**Sent On:**          2024-11-01 05:49 PM

**TAF(s) Included:**     070-2025-2025-0112 (Operations and Support)

# EXHIBIT C



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

March 29, 2025

The Honorable Susan Collins
Chair
Committee on Appropriations
United States Senate
Washington, D.C. 20510

Dear Chair Collins:

I write to inform you that the Office of Management and Budget will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

I value OMB's longstanding relationship with the Committee and I am committed to working with you to provide information on apportionments that may be of interest to the Committee.

Sincerely,

Russell T. Vought
Director



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

March 29, 2025

The Honorable Rosa DeLauro
Ranking Member
Committee on Appropriations
U.S. House of Representatives
Washington, D.C. 20515

Dear Ranking Member DeLauro:

I write to inform you that the Office of Management and Budget will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

I value OMB's longstanding relationship with the Committee and I am committed to working with you to provide information on apportionments that may be of interest to the Committee.

Sincerely,

Russell T. Vought
Director

**App.88**



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

March 29, 2025

The Honorable Patty Murray
Vice Chair
Committee on Appropriations
United States Senate
Washington, D.C. 20510

Dear Vice Chair Murray:

I write to inform you that the Office of Management and Budget will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

I value OMB's longstanding relationship with the Committee and I am committed to working with you to provide information on apportionments that may be of interest to the Committee.

Sincerely,

Russell T. Vought
Director

**App.89**



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

March 29, 2025

The Honorable Tom Cole
Chairman
Committee on Appropriations
U.S. House of Representatives
Washington, D.C. 20515

Dear Chairman Cole:

I write to inform you that the Office of Management and Budget will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

I value OMB's longstanding relationship with the Committee and I am committed to working with you to provide information on apportionments that may be of interest to the Committee.

Sincerely,

Russell T. Vought
Director

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-01051-EGS |
| OFFICE OF MANAGEMENT AND BUDGET, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION FOR A STAY PENDING APPEAL

## INTRODUCTION

The Court's July 21, 2025, Order vacates and sets aside Defendants' removal of "the Public Apportionments Database and public access to apportionment information," permanently enjoins Defendants from "removing the Public Apportionments Database or otherwise ceasing to post apportionment information on a publicly available website," and requires Defendants' restoration of the apportionment database. ECF No. 32 at 2. In reaching this conclusion, the Court rejected Defendants' argument that the publication requirement unconstitutionally impairs Executive power by requiring the disclosure of pre-decisional and deliberative information. ECF No. 33 at 37–47. Accordingly, absent a stay, Defendants will be forced to disclose privileged information while pursuing its appeal, causing irreparable harm to Executive Branch interests. Because each of the stay factors weigh in favor of allowing the Court of Appeals to assess this central constitutional issue before disclosure occurs, the court should grant the government's motion to stay the July 21, 2025 Order pending appeal.

## ARGUMENT

In considering a stay pending appeal, the Court must examine "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Each of the factors strongly counsels in favor of a prompt stay.

1. **Irreparable Harm**. As has been extensively briefed in this case, Plaintiff's generalized claims regarding the public's interest in Defendants' restoration of the apportionment database do not support a finding of harm to Plaintiff and cannot form the basis for injunctive relief. *See* ECF Nos. 18, 22. Moreover, re-instatement of the apportionment database requires Defendants' automatic disclosure of predecisional and deliberative information within two days—an expedited timeframe that does not afford Defendants a meaningful opportunity to review and redact privileged information. *See id*. This requirement significantly impedes the President's

**App.92**

constitutional authority over the implementation of appropriations and his discretion in executing the laws. The Executive Branch will be irreparably harmed during the pendency of an appeal because the Order gives effect to an unconstitutional statutory provision that requires disclosure of privileged information. *See, e.g.*, *Nat'l Treasury Employees Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025) (granting stay pending appeal where the district court's injunction impeded Executive power). Although Plaintiff claims that the apportionment information is necessary to its core oversight mission, Plaintiff will be able to review and report on the apportionment documents if it prevails on appeal. In contrast, if the Appellate Court agrees with Defendants' arguments, the improper disclosure of information cannot be reversed. *See Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 87 (3d Cir. 2007), *as amended* (Mar. 7, 2007) (noting that "disclosure is a bell that cannot be unrung"). A stay is, therefore, necessary to ensure that Defendants are not required to divulge privileged information pending appellate resolution of an important constitutional issue.

2. **Likelihood of Success on the Merits**. Defendants also have a strong likelihood of success on appeal. Plaintiff failed to establish a concrete and particularized injury stemming from OMB's non-disclosure of apportionment documents. Specifically, Plaintiff's generalized grievances common to all members of the public do not pass muster under Article III. And Plaintiff has not suffered the type of harm Congress sought to prevent by requiring disclosure of apportionment documents. Moreover, the apportionment documents are predecisional and deliberative because they reflect OMB's initial distribution of appropriated funds based on the Executive's discrete assessment of priorities and goals. OMB continually reviews and adjusts its apportionments based on changing circumstances and priorities. Disclosure of apportionment documents not only forces the Executive to disclose its un-settled policy considerations, but also reveals the deliberations between the Executive Office of the President and agency officials regarding the implementation and execution of the law. While Congress and the public may be entitled to information regarding how agency funds are ultimately obligated for expenditure, they are not entitled to predecisional and deliberative information that infringes upon the Executive's

ability to apportion funds as he "considers appropriate."  31 U.S.C. § 1512(b)(2); *see also Bowsher v. Synar*, 478 U.S. 714, 722 (1986) ("The Constitution does not contemplate an active role for Congress in the supervision of officers charged with the execution of the laws it enacts.").

3.  **Balance of the Equities**.  The equitable factors likewise weigh in Defendants' favor, and the public interest and balance of equities factors merge where, as here, an injunction is sought against the government.  *Nken*, 556 U.S. at 435.  This balance squarely tips in Defendants' favor because any injunctive relief in this case would require unconstitutional infringement upon the President's Article II duties and authorities.  *See NAACP v. U.S. Department of Educ.*, No. 25-CV-1120 (DLF), 2025 WL 1196212, at *7 (D.D.C. Apr. 24, 2025) ("[E]nforcement of an unconstitutional law is always contrary to the public interest." (citation omitted)).  An order requiring Defendants to re-instate the apportionment database and disclose predecisional and deliberative information would significantly and improperly impede the President's constitutional authority over the implementation of appropriations and his discretion in executing the laws.

## CONCLUSION

For the foregoing reasons, the Court should enter a stay pending appeal.  At a minimum, the Court should stay the requirement that OMB automatically publish apportionment documents and accompanying footnotes within two days of their approval to afford OMB a reasonable opportunity to review and redact any privileged information from those documents.

Moreover, because the government would be irreparably harmed by the disclosure of predecisional and deliberative apportionment documents, Defendants will concurrently seek an administrative stay from the Appellate Court.  To the extent this Court is inclined to deny the instant Motion, it should extend the current administrative stay by at least one week to afford Defendants the opportunity to seek a stay in the Appellate Court and to give the Appellate Court an opportunity to evaluate that request.

Dated: July 22, 2025

**App.94**

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar #1025003)
CARMEN M. BANERJEE
(D.C. Bar #497678)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorneys for Defendants*

4

**App.95**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY )
AND ETHICS IN WASHINGTON, )
                                                          )
            Plaintiff,                          )
                                                          )
            v.                                     )            Case No. 1:25-cv-01051-EGS
                                                          )
OFFICE OF MANAGEMENT AND )
BUDGET, et al.,                            )
                                                          )
                                                          )
                                                          )
            Defendants.                     )
_____ )

**[PROPOSED] ORDER**

The Court, having fully considered Defendants' Motion for Stay Pending Appeal and the

parties' respective submissions in support thereof and in opposition thereto, HEREBY ORDERS

that the Motion be GRANTED.


 IT IS SO ORDERED, this _____ day of _____, 2025.



                                            _____
                                            Hon. Emmet G. Sullivan
                                            Senior United States District Judge

1

**App.96**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PROTECT DEMOCRACY PROJECT   )
                                     )
        Plaintiff,               )
                                       )
        v.                     )    Case No. 1:25-cv-01111-EGS
                                     )
OFFICE OF MANAGEMENT AND    )
BUDGET, et al.,                  )
                                     )
        Defendants.           )
_____)

**<u>DEFENDANTS' MOTION FOR A STAY PENDING APPEAL</u>**

**App.97**

**INTRODUCTION**

The Court's July 21, 2025, Order vacates and sets aside Defendants' removal of "the Public Apportionments Database and public access to apportionment information," permanently enjoins Defendants from "removing the Public Apportionments Database or otherwise ceasing to post apportionment information on a publicly available website," and requires Defendants' restoration of the apportionment database. ECF No. 33 at 2. In reaching this conclusion, the Court rejected Defendants' argument that the publication requirement unconstitutionally impairs Executive power by requiring the disclosure of pre-decisional and deliberative information. ECF No. 34 at 37–47. Accordingly, absent a stay, Defendants will be forced to disclose privileged information while pursuing its appeal, causing irreparable harm to Executive Branch interests. Because each of the stay factors weigh in favor of allowing the Court of Appeals to assess this central constitutional issue before disclosure occurs, the court should grant the government's motion to stay the July 21, 2025 Order pending appeal.

**ARGUMENT**

In considering a stay pending appeal, the Court must examine "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Each of the factors strongly counsels in favor of a prompt stay.

1. **Irreparable Harm**. As has been extensively briefed in this case, Plaintiff's generalized claims regarding the public's interest in Defendants' restoration of the apportionment database do not support a finding of harm to Plaintiff and cannot form the basis for injunctive relief. *See* ECF Nos. 19, 21. Moreover, re-instatement of the apportionment database requires Defendants' automatic disclosure of predecisional and deliberative information within two days—an expedited timeframe that does not afford Defendants a meaningful opportunity to review and redact privileged information. *See id.* This requirement significantly

1

**App.98**

impedes the President's constitutional authority over the implementation of appropriations and his discretion in executing the laws. The Executive Branch will be irreparably harmed during the pendency of an appeal because the Order gives effect to an unconstitutional statutory provision that requires disclosure of privileged information. *See, e.g.*, *Nat'l Treasury Employees Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025) (granting stay pending appeal where the district court's injunction impeded Executive power). Although Plaintiff claims that the apportionment information is necessary to its core oversight mission, Plaintiff will be able to review and report on the apportionment documents if it prevails on appeal. In contrast, if the Appellate Court agrees with Defendants' arguments, the improper disclosure of information cannot be reversed. *See Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 87 (3d Cir. 2007), *as amended* (Mar. 7, 2007) (noting that "disclosure is a bell that cannot be unrung"). A stay is, therefore, necessary to ensure that Defendants are not required to divulge privileged information pending appellate resolution of an important constitutional issue.

2. **Likelihood of Success on the Merits**. Defendants also have a strong likelihood of success on appeal. Plaintiff failed to establish a concrete and particularized injury stemming from OMB's non-disclosure of apportionment documents. Specifically, Plaintiff's generalized grievances common to all members of the public do not pass muster under Article III. And Plaintiff has not suffered the type of harm Congress sought to prevent by requiring disclosure of apportionment documents. Moreover, the apportionment documents are predecisional and deliberative because they reflect OMB's initial distribution of appropriated funds based on the Executive's discrete assessment of priorities and goals. OMB continually reviews and adjusts its apportionments based on changing circumstances and priorities. Disclosure of apportionment documents not only forces the Executive to disclose its un-settled policy considerations, but also reveals the deliberations between the Executive Office of the President and agency officials regarding the implementation and execution of the law. While Congress and the public may be entitled to information regarding how agency funds are ultimately obligated for expenditure, they are not entitled to predecisional and deliberative information that infringes upon the Executive's

2

**App.99**

ability to apportion funds as he "considers appropriate." 31 U.S.C. § 1512(b)(2); *see also Bowsher v. Synar*, 478 U.S. 714, 722 (1986) ("The Constitution does not contemplate an active role for Congress in the supervision of officers charged with the execution of the laws it enacts.").

3. **Balance of the Equities**. The equitable factors likewise weigh in Defendants' favor, and the public interest and balance of equities factors merge where, as here, an injunction is sought against the government. *Nken*, 556 U.S. at 435. This balance squarely tips in Defendants' favor because any injunctive relief in this case would require unconstitutional infringement upon the President's Article II duties and authorities. *See NAACP v. U.S. Department of Educ.*, No. 25-CV-1120 (DLF), 2025 WL 1196212, at *7 (D.D.C. Apr. 24, 2025) ("[E]nforcement of an unconstitutional law is always contrary to the public interest." (citation omitted)). An order requiring Defendants to re-instate the apportionment database and disclose predecisional and deliberative information would significantly and improperly impede the President's constitutional authority over the implementation of appropriations and his discretion in executing the laws.

## CONCLUSION

For the foregoing reasons, the Court should enter a stay pending appeal. At a minimum, the Court should stay the requirement that OMB automatically publish apportionment documents and accompanying footnotes within two days of their approval to afford OMB a reasonable opportunity to review and redact any privileged information from those documents.

Moreover, because the government would be irreparably harmed by the disclosure of predecisional and deliberative apportionment documents, Defendants will concurrently seek an administrative stay from the Appellate Court. To the extent this Court is inclined to deny the instant Motion, it should extend the current administrative stay by at least one week to afford Defendants the opportunity to seek a stay in the Appellate Court and to give the Appellate Court an opportunity to evaluate that request.

Dated: July 22, 2025

**App.100**

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar #1025003)
CARMEN M. BANERJEE
(D.C. Bar #497678)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorneys for Defendants*

**App.101**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PROTECT DEMOCRACY PROJECT    )
    )
       Plaintiff,     )
    )
       v.      )     Case No. 1:25-cv-01111-EGS
    )
OFFICE OF MANAGEMENT AND    )
BUDGET, et al.,    )
    )
       Defendants.    )
_____)

**[PROPOSED] ORDER**

The Court, having fully considered Defendants' Motion for Stay Pending Appeal and the

parties' respective submissions in support thereof and in opposition thereto, HEREBY ORDERS

that the Motion be GRANTED.


IT IS SO ORDERED, this _____ day of _____, 2025.



_____
Hon. Emmet G. Sullivan
Senior United States District Judge

1
**App.102**

APPEAL,TYPE–E

## U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:25–cv–01051–EGS

CITIZENS FOR RESPONSIBILITY AND ETHICS IN
WASHINGTON v. OFFICE OF MANAGEMENT AND
BUDGET et al
Assigned to: Judge Emmet G. Sullivan
Related Case:  1:25–cv–01111–EGS
Cause: 05:702 Administrative Procedure Act

Date Filed: 04/08/2025
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON**

represented by

**Adina H. Rosenbaum**
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
(202) 588–1000
Fax: (202) 588–7795
Email: arosenbaum@citizen.org
*ATTORNEY TO BE NOTICED*

**Allison Marcy Zieve**
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
(202) 588–1000
Fax: (202) 588–7795
Email: azieve@citizen.org
*ATTORNEY TO BE NOTICED*

**Nikhel Sus**
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
1331 F St NW
Suite 900
Washington, DC 20004
(202) 408–5565
Fax: (202) 588–5020
Email: nsus@citizensforethics.org
*ATTORNEY TO BE NOTICED*

**Yoseph T. Desta**
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
PO Box 14596
Washington, DC 20044
415–416–7967
Email: ydesta@citizensforethics.org
*ATTORNEY TO BE NOTICED*

**Wendy Liu**
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
202–588–1000
Email: wliu@citizen.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**App.103**

**OFFICE OF MANAGEMENT AND
BUDGET**

represented by  **Carmen M. Banerjee**
U.S. DEPARTMENT OF JUSTICE
Tax Division – Civil Trial Section
555 Fourth Street, NW
555 Fourth Street, NW
Suite 6810
Washington, DC 20001
202–353–3850
Email: carmen.m.banerjee@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Heidy L Gonzalez**
DOJ–Civ
1100 L St., N.W.
Ste #3528
Washington, DC 20005
202–598–7409
Email: heidy.gonzalez@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Kenneth Velchik**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202–860–8388
Email: michael.velchik@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**RUSSELL VOUGHT**
*in his official capacity as Director, Office
of Management and Budget*

represented by  **Carmen M. Banerjee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Heidy L Gonzalez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Kenneth Velchik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/08/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC–11597329) filed by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Attachments: # 1 Civil Cover Sheet, # 2 Summons AG, # 3 Summons OMB, # 4 Summons USAO, # 5 Summons Vought)(Liu, Wendy) (Entered: 04/08/2025) |
| 04/08/2025 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON (Liu, Wendy) (Entered: 04/08/2025) |
| 04/08/2025 | 3 | NOTICE of Appearance by Nikhel Sus on behalf of CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON (Sus, Nikhel) (Main Document 3 replaced on 4/8/2025) (znmw). (Entered: 04/08/2025) |

**App.104**

| 04/08/2025 | | Case Assigned to Judge Emmet G. Sullivan. (znmw) (Entered: 04/08/2025) |
|---|---|---|
| 04/08/2025 | 4 | SUMMONS (4) Issued Electronically as to OFFICE OF MANAGEMENT AND BUDGET, RUSSELL T. VOUGHT, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 04/08/2025) |
| 04/15/2025 | 5 | STANDING ORDER: The parties are directed to read the attached Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan in its entirety upon receipt. The parties are hereby ORDERED to comply with the directives in the attached Standing Order. Signed by Judge Emmet G. Sullivan on 04/15/25. (Attachment: # 1 Exhibit 1) (mac) (Entered: 04/15/2025) |
| 04/15/2025 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Yoseph T. Desta, Filing fee $ 100, receipt number ADCDC–11617062. Fee Status: Fee Paid. by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Sus, Nikhel) (Entered: 04/15/2025) |
| 04/15/2025 | | MINUTE ORDER granting 6 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Emmet G. Sullivan on 4/15/2025. (lcegs1) (Entered: 04/15/2025) |
| 04/18/2025 | 7 | NOTICE of Appearance by Yoseph T. Desta on behalf of All Plaintiffs (Desta, Yoseph) (Entered: 04/18/2025) |
| 04/18/2025 | 8 | NOTICE of Appearance by Carmen M. Banerjee on behalf of All Defendants (Banerjee, Carmen) (Entered: 04/18/2025) |
| 04/18/2025 | 9 | MOTION for Preliminary Injunction and *Partial Summary Judgment* by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts as to Which There is No Genuine Issue, # 3 Declaration of Christina L. Wentworth, # 4 Declaration of Samuel Bagenstos, # 5 Declaration of Joseph Carlile, # 6 Declaration of Kenneth Schwartz, # 7 Text of Proposed Order, # 8 Certificate of Service)(Liu, Wendy). Added MOTION for Partial Summary Judgment on 5/1/2025 (mg). (Entered: 04/18/2025) |
| 04/21/2025 | | MINUTE ORDER. Plaintiff is ORDERED TO SHOW CAUSE, by no later than 5:00 pm on April 21, 2025 why Protect Democracy Project, 25–1111 should not be consolidated with this case. Defendant shall respond to the OTSC by no later than 5:00 pm on April 22, 2025, and Plaintiff shall reply by no later than 5:00 pm on April 23, 2025. Signed by Judge Emmet G. Sullivan on 4/21/2025. (lcegs1) (Entered: 04/21/2025) |
| 04/21/2025 | | Set/Reset Deadlines/Hearings: Plaintiff's Show Cause due by 4/21/2025. Defendant's Response to Show Cause due by 4/22/2025. Plaintiff's Reply to Show Cause due by 4/23/2025. Defendant's Response due by 4/30/2025. Plaintiff's Reply due by 5/5/2025. Motion Hearing set for 5/9/2025 at 1:00 PM in Courtroom 24A– In Person before Judge Emmet G. Sullivan. (zalh) (Entered: 04/21/2025) |
| 04/21/2025 | 10 | RESPONSE TO ORDER TO SHOW CAUSE re 4/21/2025 MINUTE ORDER filed by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Liu, Wendy) Modified on 4/23/2025 to add link (mg). (Entered: 04/21/2025) |
| 04/21/2025 | | MINUTE ORDER. In view of 9 Motion for Preliminary Injunction and Partial Summary Judgment, the following deadlines shall govern this matter: (1) Defendant shall file its response by no later than April 30, 2025; (2) Plaintiff shall file its reply by no later than 9:00 am on May 5, 2025; and (3) a Hearing shall take place at 1:00 pm on May 9, 2025 in Courtroom 24A. Signed by Judge Emmet G. Sullivan on 04/21/25. (mac) (Entered: 04/23/2025) |
| 04/22/2025 | 11 | RESPONSE TO ORDER TO SHOW CAUSE re 4/21/2025 MINUTE ORDER filed by OFFICE OF MANAGEMENT AND BUDGET, RUSSELL T. VOUGHT. (Banerjee, Carmen) Modified event and added link on 4/23/2025 (mg). (Entered: 04/22/2025) |
| 04/23/2025 | 12 | REPLY re 11 *to Defendants' Response to Order to Show Cause* filed by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Liu, Wendy) Modified |

| | | |
|---|---|---|
| | | on 4/24/2025 to add link (mg). (Entered: 04/23/2025) |
| 04/24/2025 | | MINUTE ORDER. In view of 10 , 11 and 12 responses to order to show cause, as well as the responses from parties in Protect Democracy Project v. OMB, 25–cv–1111, the Court will not consolidate the cases as related pursuant to Federal Rule of Civil Procedure 42(a) at this time. It is ORDERED that the parties shall coordinate schedules to the extent possible subsequent to the Courts ruling on currently pending motions. Signed by Judge Emmet G. Sullivan on 4/24/2025. (lcegs1) (Entered: 04/24/2025) |
| 04/25/2025 | 13 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 4/8/2025. Answer due for ALL FEDERAL DEFENDANTS by 6/7/2025. (Liu, Wendy) (Entered: 04/25/2025) |
| 04/25/2025 | 14 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 4/16/2025. (Liu, Wendy) (Entered: 04/25/2025) |
| 04/25/2025 | 15 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. OFFICE OF MANAGEMENT AND BUDGET served on 4/23/2025 (Liu, Wendy) (Entered: 04/25/2025) |
| 04/25/2025 | 16 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. RUSSELL T. VOUGHT served on 4/23/2025 (Liu, Wendy) (Entered: 04/25/2025) |
| 04/25/2025 | 17 | NOTICE of Appearance by Heidy L Gonzalez on behalf of All Defendants (Gonzalez, Heidy) (Entered: 04/25/2025) |
| 04/30/2025 | 18 | RESPONSE re 9 MOTION for Preliminary Injunction *and Partial Summary Judgment* filed by OFFICE OF MANAGEMENT AND BUDGET, RUSSELL T. VOUGHT. (Attachments: # 1 Exhibit Declaration of Kelly Kinneen, # 2 Exhibit Defendants' Counter–Statement of Material Facts, # 3 Text of Proposed Order)(Gonzalez, Heidy) (Entered: 04/30/2025) |
| 05/01/2025 | | MINUTE ORDER directing Defendant to file a Sur–Reply addressing any issues raised for the first time in Plaintiff's forthcoming Reply briefing by no later than 9:00 am on May 6, 2025. There will be no further briefings. Signed by Judge Emmet G. Sullivan on 5/1/2025. (lcegs1) (Entered: 05/01/2025) |
| 05/01/2025 | 19 | NOTICE of Appearance by Allison Marcy Zieve on behalf of All Plaintiffs (Zieve, Allison) (Entered: 05/01/2025) |
| 05/01/2025 | 20 | NOTICE of Appearance by Adina H. Rosenbaum on behalf of CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON (Rosenbaum, Adina) (Entered: 05/01/2025) |
| 05/02/2025 | | Set/Reset Deadlines: Plaintiff Sur–Reply due no later than 9:00AM on 5/6/2025. (mac) (Entered: 05/02/2025) |
| 05/04/2025 | 21 | REPLY to opposition to motion re 9 Motion for Preliminary Injunction,,, Motion for Partial Summary Judgment,, filed by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Liu, Wendy) (Entered: 05/04/2025) |
| 05/05/2025 | 22 | SURREPLY re 9 to *Plaintiff's Motion for Preliminary Injunction and Partial Summary Judgment* filed by OFFICE OF MANAGEMENT AND BUDGET, RUSSELL T. VOUGHT. (Gonzalez, Heidy) Modified on 5/6/2025 to add link (mg). (Entered: 05/05/2025) |
| 05/06/2025 | | NOTICE: Members of the public or media who wish to listen to live audio of the hearing scheduled for May 9, 2025 at 1:00PM ET, without physically attending the proceeding, may do so by dialing the Toll Free Number: 833–990–9400, Meeting ID: 712190216. Any use of the public access telephone line requires adherence to the general prohibition against photographing, recording, livestreaming, and rebroadcasting of court proceedings (including those held by telephone or videoconference), as set out in Standing Order No. 24–31 (JEB). **Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings,** |

| | | or other sanctions deemed necessary by the Court. (mac) (Entered: 05/06/2025) |
|---|---|---|
| 05/08/2025 | 23 | NOTICE of Appearance by Michael Kenneth Velchik on behalf of All Defendants (Velchik, Michael) (Entered: 05/08/2025) |
| 05/09/2025 | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Motion Hearing held on 5/9/2025 re 9 Motion for Preliminary Injunction and Partial Summary Judgment and Motion for Partial Summary Judgment filed by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. The Court Had Colloquy With The Parties And Heard Oral Arguments. (Court Reporter SONJA REEVES.) (mac) (Entered: 05/09/2025) |
| 05/13/2025 | 24 | TRANSCRIPT OF MOTION HEARING before Judge Emmet G. Sullivan held on May 9, 2025; Page Numbers: 1–148. Date of Issuance: May 13, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354–3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/3/2025. Redacted Transcript Deadline set for 6/13/2025. Release of Transcript Restriction set for 8/11/2025.(Reeves, Sonja) (Entered: 05/13/2025) |
| 05/30/2025 | 25 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, by OFFICE OF MANAGEMENT AND BUDGET, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Banerjee, Carmen) (Entered: 05/30/2025) |
| 06/02/2025 | | MINUTE ORDER granting 25 Defendants' Unopposed Motion to Extend Deadline to Respond to the Complaint. Defendants shall file their responsive pleading and any identified administrative record by no later than July 9, 2025. Signed by Judge Emmet G. Sullivan on 6/2/2025. (lcegs3) (Entered: 06/02/2025) |
| 06/02/2025 | | Set/Reset Deadlines: Defendants Responsive Pleading And Any Identified Administrative Record due by 7/9/2025. (mac) (Entered: 06/02/2025) |
| 06/02/2025 | | MINUTE ORDER. In view of Plaintiff's request at the oral argument on May 9, 2025 that the Court forego a preliminary injunction analysis and rule on its motion for partial summary judgment, Plaintiff is directed to file, by no later than 5:00 pm on June 4, 2025, supplemental briefing with a revised proposed order. Assuming the Court agrees to consolidate Plaintiff's motion for a preliminary injunction and motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 65(a)(2), Plaintiff's supplemental briefing shall address: (1) why Plaintiff is entitled to the types of relief sought; (2) if plaintiff seeks a permanent injunctive relief, whether the court must perform the balancing test for permanent injunctive relief prior to granting a permanent injunction as part of the final judgment on the merits; and (3) if the Court grants partial summary judgment to Plaintiff, how the Court should proceed on entering a final, appealable judgment given that at this time, Plaintiff has remaining claims before the Court. Defendants shall file their response by no later than 5:00 pm on June 6, 2025; and Plaintiff shall file its reply by no later than 9:00 am on June 9, 2025. Signed by Judge Emmet G. Sullivan on 6/2/2025. (lcegs2) (Entered: 06/02/2025) |
| 06/03/2025 | | Set/Reset Deadlines: Plaintiff Supplemental Briefing With A Revised Proposed Order due no later than 5:00PM on 6/4/2025. Defendants Response due no later than 5:00PM on 6/6/2025. Plaintiffs Reply due no later than 9:00AM on 6/9/2025. (mac) (Entered: 06/03/2025) |

**App.107**

| 06/03/2025 | 26 | Joint MOTION for Extension of Time to File *Supplemental Briefing* by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Rosenbaum, Adina) (Entered: 06/03/2025) |
|---|---|---|
| 06/04/2025 | 27 | NOTICE of Proposed Order by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON re 26 Joint MOTION for Extension of Time to File *Supplemental Briefing* (Attachments: # 1 Text of Proposed Order)(Rosenbaum, Adina) (Entered: 06/04/2025) |
| 06/04/2025 | | MINUTE ORDER granting in part 26 joint motion for extension of time. The following deadlines shall govern the supplemental briefing in this case: (1) Plaintiff's supplemental brief shall be filed by no later than 12:00 pm on June 9, 2025; (2) Defendants' response shall be filed by no later than 12:00 pm on June 16, 2025; and (3) Plaintiff's reply shall be filed by no later than 12:00 pm on June 18, 2025. Signed by Judge Emmet G. Sullivan on 6/4/2025. (lcegs2) (Entered: 06/04/2025) |
| 06/05/2025 | | Set/Reset Deadlines: Plaintiff's Supplemental Brief due no later than 12:00 pm on 6/9/2025. Defendants' Response due no later than 12:00 pm on 6/16/2025. Plaintiff's Reply due no later than 12:00 pm on 6/18/2025. (mac) (Entered: 06/05/2025) |
| 06/09/2025 | 28 | SUPPLEMENTAL MEMORANDUM to *Respond to June 2, 2025 Minute Order* filed by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Attachments: # 1 Text of Proposed Order)(Rosenbaum, Adina) (Entered: 06/09/2025) |
| 06/16/2025 | 29 | RESPONSE *to Plaintiff's Supplemental Memorandum* filed by OFFICE OF MANAGEMENT AND BUDGET, RUSSELL VOUGHT. (Gonzalez, Heidy) (Entered: 06/16/2025) |
| 06/18/2025 | 30 | REPLY *to Defendants' Response to Plaintiff's Supplemental Brief* filed by CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON. (Rosenbaum, Adina) (Entered: 06/18/2025) |
| 07/03/2025 | 31 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, by OFFICE OF MANAGEMENT AND BUDGET, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Gonzalez, Heidy) (Entered: 07/03/2025) |
| 07/03/2025 | | MINUTE ORDER granting 31 unopposed motion to extend the deadline to respond to the complaint. Defendants shall respond to Plaintiff's complaint within 21 days from the Court's order on Plaintiff's Motion for a Preliminary Injunction and Partial Summary Judgment, ECF No. 9. Signed by Judge Emmet G. Sullivan on 7/3/2025. (lcegs1) (Entered: 07/03/2025) |
| 07/21/2025 | 32 | ORDER denying 9 Motion for Preliminary Injunction; granting in part and denying in part 9 Motion for Partial Summary Judgment. Signed by Judge Emmet G. Sullivan on 7/21/2025. (lcegs2) (Entered: 07/21/2025) |
| 07/21/2025 | 33 | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 7/21/2025. (lcegs2) (Entered: 07/21/2025) |
| 07/22/2025 | 34 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 33 Memorandum & Opinion, 32 Order on Motion for Preliminary Injunction, Order on Motion for Partial Summary Judgment by RUSSELL VOUGHT, OFFICE OF MANAGEMENT AND BUDGET. Fee Status: No Fee Paid. Parties have been notified. (Gonzalez, Heidy) (Entered: 07/22/2025) |
| 07/22/2025 | 35 | MOTION to Stay *Pending Appeal* by OFFICE OF MANAGEMENT AND BUDGET, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Gonzalez, Heidy) (Entered: 07/22/2025) |

**App.108**

APPEAL,TYPE–C

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:25–cv–01111–EGS

PROTECT DEMOCRACY PROJECT v. U.S. OFFICE OF
MANAGEMENT AND BUDGET et al
Assigned to: Judge Emmet G. Sullivan
Related Case: 1:25–cv–01051–EGS
Cause: 05:702 Administrative Procedure Act

Date Filed: 04/14/2025
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**PROTECT DEMOCRACY PROJECT**          represented by   **Kyla Marie Snow**
JACOBSON LAWYERS GROUP
1629 K Street NW, Suite 300
Washington, DC 20006
301–823–1148
Email: kyla@jacobsonlawyersgroup.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel F. Jacobson**
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW
Suite 300
Washington, DC 20006
301–823–1148
Email: dan@jacobsonlawyersgroup.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. OFFICE OF MANAGEMENT**          represented by   **Carmen M. Banerjee**
**AND BUDGET**                                          U.S. DEPARTMENT OF JUSTICE
Civil Division
1100 L Street, NW
Washington, DC 20005
202–514–3183
Email: carmen.m.banerjee@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Heidy L Gonzalez**
DOJ–Civ
1100 L St., N.W.
Ste #3528
Washington, DC 20005
202–598–7409
Email: heidy.gonzalez@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Kenneth Velchik**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202–860–8388
Email: michael.velchik@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**App.109**

**Defendant**

**RUSSELL VOUGHT**
*Director of the U.S. Office of Management and Budget*

represented by **Carmen M. Banerjee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Heidy L Gonzalez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Kenneth Velchik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/14/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC–11612244) filed by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Russell T. Vought, # 3 Summons U.S. Office of Management and Budget)(Jacobson, Daniel) (Entered: 04/14/2025) |
| 04/14/2025 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by PROTECT DEMOCRACY PROJECT (Jacobson, Daniel) (Entered: 04/14/2025) |
| 04/14/2025 | 3 | NOTICE OF RELATED CASE by PROTECT DEMOCRACY PROJECT. Case related to Case No. 1:25–cv–1051. (Jacobson, Daniel) (Entered: 04/14/2025) |
| 04/14/2025 | 4 | REQUEST FOR SUMMONS TO ISSUE filed by PROTECT DEMOCRACY PROJECT. Related document: 1 Complaint, filed by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Summons Attorney General)(Jacobson, Daniel) (Entered: 04/14/2025) |
| 04/15/2025 | | Case Assigned to Judge Emmet G. Sullivan. (znmw) (Entered: 04/15/2025) |
| 04/15/2025 | 5 | SUMMONS (4) Issued Electronically as to U.S. OFFICE OF MANAGEMENT AND BUDGET, RUSSELL T. VOUGHT, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 04/15/2025) |
| 04/15/2025 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Kyla M. Snow, Filing fee $ 100, receipt number ADCDC–11616990. Fee Status: Fee Paid. by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of good standing, # 3 Text of Proposed Order)(Jacobson, Daniel) (Entered: 04/15/2025) |
| 04/15/2025 | | MINUTE ORDER granting 6 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Emmet G. Sullivan on 4/15/2025. (lcegs1) (Entered: 04/15/2025) |
| 04/15/2025 | 7 | NOTICE of Appearance by Kyla Marie Snow on behalf of PROTECT DEMOCRACY PROJECT (Snow, Kyla) (Entered: 04/15/2025) |
| 04/16/2025 | 8 | STANDING ORDER: The parties are directed to read the attached Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan in its entirety upon receipt. The parties are hereby ORDERED to comply with the directives in the attached Standing Order. Signed by Judge Emmet G. Sullivan on 04/16/25. (Attachment: # 1 Exhibit 1) (mac) (Entered: 04/16/2025) |
| 04/21/2025 | | MINUTE ORDER. In view of 3 Notice of Related Case, Plaintiff is ORDERED to serve Defendant FORTHWITH. Plaintiff is FURTHER ORDERED TO SHOW CAUSE, by no later than 5:00 pm on April 21, 2025, why this case should not be consolidated with CREW v. OMB, 25–1051. Defendant shall respond to the OTSC within 24 hours of being served, and Plaintiff shall reply within 24 hours of the response. Signed by Judge Emmet G. Sullivan on 4/21/2025. (lcegs1) (Entered: |

| | | |
|---|---|---|
| | | 04/21/2025) |
| 04/21/2025 | | Set/Reset Deadlines: Plaintiff's Response to Show Cause due by 4/21/2025. (zalh) (Entered: 04/21/2025) |
| 04/21/2025 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 4/21/2025. Answer due for ALL FEDERAL DEFENDANTS by 6/20/2025. by PROTECT DEMOCRACY PROJECT (Attachments: # 1 Exhibit 1 – USPS Delivery Confirmation)(Jacobson, Daniel) Modified event on 4/23/2025 (mg). (Entered: 04/21/2025) |
| 04/21/2025 | 10 | RESPONSE TO ORDER TO SHOW CAUSE re Order, filed by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Exhibit 1 – USPS Delivery Confirmation)(Jacobson, Daniel) (Entered: 04/21/2025) |
| 04/21/2025 | 11 | NOTICE of Appearance by Carmen M. Banerjee on behalf of All Defendants (Banerjee, Carmen) (Entered: 04/21/2025) |
| 04/22/2025 | 12 | RESPONSE re 10 filed by U.S. OFFICE OF MANAGEMENT AND BUDGET, RUSSELL T. VOUGHT. (Banerjee, Carmen) Modified on 4/23/2025 to add link (mg). (Entered: 04/22/2025) |
| 04/22/2025 | 13 | WITHDRAWN PURSUANT TO NOTICE FILED 4/27/2025.....MOTION for Summary Judgment *(Expedited), or in the Alternative a Preliminary Injunction or a Writ of Mandamus* by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration Jacobson Decl., # 4 Exhibit 1 – Ford Decl., # 5 Exhibit 2 – Carlile Decl., # 6 Exhibit 3 – Bagenstos Decl., # 7 Exhibit 4 – OMB Circular A–11, # 8 Exhibit 5 – Project 2025, pp 43–45, # 9 Exhibit 6 – GAO, B=331564, # 10 Exhibit 7 – DeLauro Division by Division Summary, # 11 Exhibit 8 – Protect Democracy Press Release, # 12 Exhibit 9 – Using OMB's Apportionment Website, # 13 Exhibit 10 – The Power of the Purse, # 14 Exhibit 11 – OpenOMB homepage, # 15 Exhibit 12 – Ford et al., # 16 Exhibit 13 – Agenda47, # 17 Exhibit 14 – Vought hearing transcript excerpt, # 18 Exhibit 15 – Krawzak, # 19 Exhibit 16 – Vought Letter, # 20 Exhibit 17 – DeLauro & Murray, # 21 Exhibit 18 – GAO Letter to OMB, # 22 Text of Proposed Order)(Jacobson, Daniel). Added MOTION for Preliminary Injunction, MOTION for Writ of Mandamus on 4/23/2025 (mg). Modified on 4/28/2025 (mg). (Entered: 04/22/2025) |
| 04/23/2025 | 14 | REPLY re 12 *to Defendants' Response to Order to Show Cause* filed by PROTECT DEMOCRACY PROJECT. (Jacobson, Daniel) Modified on 4/23/2025 to add link (mg). (Entered: 04/23/2025) |
| 04/23/2025 | | MINUTE ORDER. In view of 13 Motion for Summary Judgment (Expedited), or in the Alternative a Preliminary Injunction or a Writ of Mandamus, the following deadlines shall govern this matter: (1) Defendant shall file its response by no later than May 14, 2025; and (2) Plaintiff shall file its reply by no later than May 21, 2025. Signed by Judge Emmet G. Sullivan on 4/23/2025. (lcegs1) (Entered: 04/23/2025) |
| 04/24/2025 | | Set/Reset Deadlines: Defendant Response due by 5/14/2025. Plaintiff Reply due by 5/21/2025. (mac) (Entered: 04/24/2025) |
| 04/24/2025 | | MINUTE ORDER. In view of 10 , 12 and 14 responses to order to show cause, as well as the responses from parties in CREW v. OMB, 25–cv–1051, the Court will not consolidate the cases as related pursuant to Federal Rule of Civil Procedure 42(a) at this time. It is ORDERED that the parties shall coordinate schedules to the extent possible subsequent to the Court's ruling on currently pending motions. Signed by Judge Emmet G. Sullivan on 4/24/2025. (lcegs1) (Entered: 04/24/2025) |
| 04/25/2025 | 15 | NOTICE of Appearance by Heidy L Gonzalez on behalf of All Defendants (Gonzalez, Heidy) (Entered: 04/25/2025) |
| 04/25/2025 | 16 | Unopposed MOTION for Scheduling Order *to Coordinate Preliminary Injunction Proceedings* by PROTECT DEMOCRACY PROJECT. (Jacobson, Daniel) (Entered: 04/25/2025) |
| 04/26/2025 | | MINUTE ORDER granting 16 Protect Democracy Project's Unopposed Motion to Coordinate Preliminary Injunction Proceedings. The following deadlines shall govern |

| | | |
|---|---|---|
| | | this matter: (1) Plaintiff shall withdraw its pending Motion for Summary Judgment, or in the Alternative a Preliminary Injunction or Writ of Mandamus, and within 24 hours of the posting of this Minute Order will file a new motion seeking relief that is identical to the pending motion in CREW v. OMB, 25–1051. Protect Democracy will not seek other forms of expedited relief in the district court until full resolution, including any appeals, of the forthcoming motion; (2) Defendant shall file its response by no later than May 2, 2025; and (3) Plaintiff shall file its reply by no later than May 5, 2025 at 9:00 am. The parties shall appear for a hearing on May 9, 2025 at 1:00 pm in Courtroom 24A. Counsel is reminded of the obligation to include a proposed order with each motion. See LCvR 7(c) ("Each motion and opposition shall be accompanied by a proposed order."). The scheduling order entered April 23, 2025 is HEREBY VACATED. Signed by Judge Emmet G. Sullivan on 4/26/2025. (lcegs1) (Entered: 04/26/2025) |
| 04/27/2025 | 17 | NOTICE OF WITHDRAWAL OF MOTION by PROTECT DEMOCRACY PROJECT re 13 MOTION for Summary Judgment *(Expedited), or in the Alternative a Preliminary Injunction or a Writ of Mandamus* MOTION for Preliminary Injunction MOTION for Writ of Mandamus (Jacobson, Daniel) (Entered: 04/27/2025) |
| 04/27/2025 | 18 | MOTION for Preliminary Injunction *or in the Alternative Partial Summary Judgment* by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration Jacobson Decl., # 4 Exhibit 1 – Ford Decl., # 5 Exhibit 2 – Carlile Decl., # 6 Exhibit 3 – Bagenstos Decl., # 7 Exhibit 4 – OMB Circular A–11, # 8 Exhibit 5 – Project 2025, pp 43–45, # 9 Exhibit 6 – GAO, B–331564, # 10 Exhibit 7 – DeLauro Division by Division Summary, # 11 Exhibit 8 – Protect Democracy Press Release, # 12 Exhibit 9 – Using OMB's Apportionment Website, # 13 Exhibit 10 – The Power of the Purse, # 14 Exhibit 11 – OpenOMB homepage, # 15 Exhibit 12 – Ford et al., # 16 Exhibit 13 – Agenda47, # 17 Exhibit 14 – Vought hearing transcript excerpt, # 18 Exhibit 15 – Krawzak, # 19 Exhibit 16 – Vought Letter, # 20 Exhibit 17 – DeLauro & Murray, # 21 Exhibit 18 – GAO Letter to OMB, # 22 Text of Proposed Order)(Jacobson, Daniel). Added MOTION for Partial Summary Judgment on 4/28/2025 (mg). (Entered: 04/27/2025) |
| 04/28/2025 | | Set/Reset Deadlines/Hearings: Defendant Response due by 5/2/2025. Plaintiff Reply due no later than 9:00AM on 5/5/2025. Preliminary Injunction Hearing set for 5/9/2025 at 1:00 PM in Courtroom 26A– In Person before Judge Emmet G. Sullivan. (Entered: 04/28/2025) |
| 05/01/2025 | | MINUTE ORDER directing Defendant to file a Sur–Reply addressing any issues raised for the first time in Plaintiff's forthcoming Reply briefing by no later than 9:00 am on May 6, 2025. There will be no further briefings. Signed by Judge Emmet G. Sullivan on 5/1/2025. (lcegs1) (Entered: 05/01/2025) |
| 05/02/2025 | | Set/Reset Deadlines: Plaintiff Sur–Reply due no later than 9:00AM on 5/6/2025. (mac) (Entered: 05/02/2025) |
| 05/02/2025 | 19 | RESPONSE re 18 MOTION for Preliminary Injunction *or in the Alternative Partial Summary Judgment* MOTION for Partial Summary Judgment filed by U.S. OFFICE OF MANAGEMENT AND BUDGET, RUSSELL T. VOUGHT. (Attachments: # 1 Exhibit Kinneen Declaration, # 2 Exhibit Defendants' Counter–Statement, # 3 Text of Proposed Order)(Gonzalez, Heidy) (Entered: 05/02/2025) |
| 05/05/2025 | 20 | REPLY to opposition to motion re 18 Motion for Preliminary Injunction,,,,, Motion for Partial Summary Judgment,,,, filed by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Exhibit A – Supplemental Ford Declaration)(Jacobson, Daniel) (Entered: 05/05/2025) |
| 05/05/2025 | | Set/Reset Hearings: Preliminary Injunction Hearing set for 5/9/2025 at 01:00 PM in Courtroom 24A– In Person before Judge Emmet G. Sullivan. (mac) (Entered: 05/05/2025) |
| 05/05/2025 | 21 | SURREPLY re 18 to *Plaintiff's Motion for Preliminary Injunction or in the Alternative Partial Summary Judgment* filed by U.S. OFFICE OF MANAGEMENT AND BUDGET, RUSSELL T. VOUGHT. (Gonzalez, Heidy) Modified on 5/6/2025 to add link (mg). (Entered: 05/05/2025) |

**App.112**

| | | |
|---|---|---|
| 05/06/2025 | | NOTICE: Members of the public or media who wish to listen to live audio of the hearing scheduled for May 9, 2025 at 1:00PM ET, without physically attending the proceeding, may do so by dialing the Toll Free Number: 833–990–9400, Meeting ID: 712190216. Any use of the public access telephone line requires adherence to the general prohibition against photographing, recording, livestreaming, and rebroadcasting of court proceedings (including those held by telephone or videoconference), as set out in Standing Order No. 24–31 (JEB). **Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or other sanctions deemed necessary by the Court. (mac) (Entered: 05/06/2025)** |
| 05/08/2025 | 22 | NOTICE of Appearance by Michael Kenneth Velchik on behalf of All Defendants (Velchik, Michael) (Entered: 05/08/2025) |
| 05/09/2025 | | Minute Entry for proceedings held before Judge Emmet G. Sullivan: Motion Hearing held on 5/9/2025 re 18 Motion for Preliminary Injunction or in the Alternative Partial Summary Judgment and Motion for Partial Summary Judgment filed by PROTECT DEMOCRACY PROJECT. The Court Had Colloquy With The Parties And Heard Oral Arguments. (Court Reporter SONJA REEVES.) (mac) (Entered: 05/09/2025) |
| 05/13/2025 | 23 | TRANSCRIPT OF MOTION HEARING before Judge Emmet G. Sullivan held on May 9, 2025; Page Numbers: 1–148. Date of Issuance: May 13, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354–3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/3/2025. Redacted Transcript Deadline set for 6/13/2025. Release of Transcript Restriction set for 8/11/2025.(Reeves, Sonja) (Entered: 05/13/2025) |
| 06/02/2025 | | MINUTE ORDER. In view of Plaintiff's request at the oral argument on May 9, 2025 that the Court forego a preliminary injunction analysis and rule on its motion for partial summary judgment, Plaintiff is directed to file, by no later than 5:00 pm on June 4, 2025, supplemental briefing with a revised proposed order. Assuming the Court agrees to consolidate Plaintiff's motion for a preliminary injunction and motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 65(a)(2), Plaintiff's supplemental briefing shall address: (1) why Plaintiff is entitled to the types of relief sought; (2) if plaintiff seeks permanent injunctive relief, whether the court must perform the balancing test for permanent injunctive relief prior to granting a permanent injunction as part of the final judgment on the merits; and (3) if the Court grants partial summary judgment to Plaintiff, how the Court should proceed on entering a final, appealable judgment given that at this time, Plaintiff has remaining claims before the Court. Defendants shall file their response by no later than 5:00 pm on June 6, 2025; and Plaintiff shall file its reply by no later than 9:00 am on June 9, 2025. Signed by Judge Emmet G. Sullivan on 6/2/2025. (lcegs2) (Entered: 06/02/2025) |
| 06/03/2025 | | Set/Reset Deadlines: Plaintiff Supplemental Briefing With A Revised Proposed Order due no later than 5:00PM on 6/4/2025. Defendants Response due no later than 5:00PM on 6/6/2025. Plaintiffs Reply due no later than 9:00AM on 6/9/2025. (mac) (Entered: 06/03/2025) |
| 06/03/2025 | 24 | Joint MOTION for Extension of Time to *File Supplemental Briefing* by PROTECT DEMOCRACY PROJECT. (Jacobson, Daniel) (Entered: 06/03/2025) |

**App.113**

| 06/04/2025 | 25 | NOTICE of Proposed Order by PROTECT DEMOCRACY PROJECT re 24 Joint MOTION for Extension of Time to *File Supplemental Briefing* (Attachments: # 1 Text of Proposed Order)(Jacobson, Daniel) (Entered: 06/04/2025) |
| --- | --- | --- |
| 06/04/2025 | 26 | WITHDRAWN PURSUANT TO NOTICE FILED 6/5/2025.....SUPPLEMENTAL MEMORANDUM to *Respond to June 2, 2025 Minute Order* filed by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Text of Proposed Order)(Jacobson, Daniel) Modified on 6/9/2025 (mg). (Entered: 06/04/2025) |
| 06/04/2025 | | MINUTE ORDER granting in part 24 joint motion for extension of time. The following deadlines shall govern the supplemental briefing in this case: (1) Plaintiff's supplemental brief shall be filed by no later than 12:00 pm on June 9, 2025; (2) Defendants' response shall be filed by no later than 12:00 pm on June 16, 2025; and (3) Plaintiff's reply shall be filed by no later than 12:00 pm on June 18, 2025. Signed by Judge Emmet G. Sullivan on 6/4/2025. (lcegs3) (Entered: 06/04/2025) |
| 06/05/2025 | 27 | NOTICE *of Withdrawal* by PROTECT DEMOCRACY PROJECT re 26 Supplemental Memorandum (Snow, Kyla) (Entered: 06/05/2025) |
| 06/05/2025 | | Set/Reset Deadlines: Plaintiff's Supplemental Brief due no later than 12:00 pm on 6/9/2025. Defendants' Response due no later than 12:00 pm on 6/16/2025. Plaintiff's Reply due no later than 12:00 pm on 6/18/2025. (mac) (Entered: 06/05/2025) |
| 06/09/2025 | | NOTICE OF ERROR regarding 27 Notice (Other). Please note for future filing: signature on document must match PACER login. (mg) (Entered: 06/09/2025) |
| 06/09/2025 | 28 | SUPPLEMENTAL MEMORANDUM to *Respond to June 2, 2025 Minute Order* filed by PROTECT DEMOCRACY PROJECT. (Attachments: # 1 Text of Proposed Order)(Jacobson, Daniel) (Entered: 06/09/2025) |
| 06/16/2025 | 29 | RESPONSE re 28 Supplemental Memorandum, filed by U.S. OFFICE OF MANAGEMENT AND BUDGET, RUSSELL VOUGHT. (Gonzalez, Heidy) Modified on 6/18/2025 to add link (mg). (Entered: 06/16/2025) |
| 06/16/2025 | 30 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, by U.S. OFFICE OF MANAGEMENT AND BUDGET, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Banerjee, Carmen) (Entered: 06/16/2025) |
| 06/17/2025 | | MINUTE ORDER granting 30 Defendants' Unopposed Motion for Extension of Time. Defendants are directed to answer or otherwise respond to the complaint by no later than July 21, 2025. Signed by Judge Emmet G. Sullivan on 6/17/2025. (lcegs2) (Entered: 06/17/2025) |
| 06/17/2025 | | Set/Reset Deadlines: Defendant Answer Or Otherwise Response To The Complaint due by 7/21/2025. (mac) (Entered: 06/17/2025) |
| 06/18/2025 | 31 | REPLY re 28 Supplemental Memorandum, filed by PROTECT DEMOCRACY PROJECT. (Jacobson, Daniel) Modified on 6/18/2025 to add link (mg). (Entered: 06/18/2025) |
| 07/18/2025 | 32 | Unopposed MOTION for Extension of Time to File Answer by U.S. OFFICE OF MANAGEMENT AND BUDGET, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Banerjee, Carmen) (Entered: 07/18/2025) |
| 07/18/2025 | | MINUTE ORDER granting 32 unopposed motion for extension of time. Defendants shall respond to Plaintiff's Complaint within 21 days from the Court's order on Plaintiff's Motion for a Preliminary Injunction or in the Alternative Partial Summary Judgment, ECF No. 18. Signed by Judge Emmet G. Sullivan on 7/18/2025. (lcegs1) (Entered: 07/18/2025) |
| 07/21/2025 | 33 | ORDER denying 18 Motion for Preliminary Injunction; granting 18 Motion for Partial Summary Judgment. Signed by Judge Emmet G. Sullivan on 7/21/2025. (lcegs2) (Entered: 07/21/2025) |
| 07/21/2025 | 34 | MEMORANDUM OPINION. Signed by Judge Emmet G. Sullivan on 7/21/2025. (lcegs2) (Entered: 07/21/2025) |
| 07/22/2025 | 35 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 34 Memorandum & Opinion, 33 Order on Motion for Preliminary Injunction, Order on Motion for Partial Summary |

| | | Judgment by RUSSELL VOUGHT, U.S. OFFICE OF MANAGEMENT AND BUDGET. Fee Status: No Fee Paid. Parties have been notified. (Gonzalez, Heidy) (Entered: 07/22/2025) |
| --- | --- | --- |
| 07/22/2025 | 36 | MOTION to Stay *Pending Appeal* by U.S. OFFICE OF MANAGEMENT AND BUDGET, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Gonzalez, Heidy) (Entered: 07/22/2025) |

**App.115**