NOT YET SCHEDULED FOR ORAL ARGUMENT

Nos. 25-5266 & 25-5267

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
PLAINTIFF-APPELLEE,

v.

OFFICE OF MANAGEMENT AND BUDGET, *et al.*,
DEFENDANTS-APPELLANTS.

PROTECT DEMOCRACY PROJECT,
PLAINTIFF-APPELLEE,

v.

U.S. OFFICE OF MANAGEMENT AND BUDGET, *et al.*,
DEFENDANTS-APPELLANTS.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**AMICI BRIEF OF THE DISTRICT OF COLUMBIA, MARYLAND,
CALIFORNIA, MASSACHUSETTS, COLORADO, CONNECTICUT, HAWAII,
ILLINOIS, MAINE, MICHIGAN, NEVADA, NEW JERSEY, NEW YORK,
NORTH CAROLINA, OREGON, RHODE ISLAND, VERMONT,
WASHINGTON, AND WISCONSIN IN SUPPORT OF APPELLEES'
OPPOSITION TO THE MOTION FOR STAY PENDING APPEAL**

ANTHONY G. BROWN
Attorney General for Maryland

JULIA DOYLE
Solicitor General

ADAM KIRSCHNER
MICHAEL DREZNER
VIRGINIA A. WILLIAMSON
Assistant Attorneys General

200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6424
AKirschner@oag.state.md.us

*Additional counsel listed on next page
and final signature block*

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

EMMA SIMSON
MITCHELL P. REICH
Senior Counsels to the Attorney General

BRYAN J. LEITCH
Assistant Attorney General

400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov

ROB BONTA
Attorney General for California

MICHAEL L. NEWMAN
Senior Assistant Attorney General

IRINA TRASOVAN
Supervising Deputy Attorney General

LEE SHERMAN
Deputy Attorney General

300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6202
Lee.Sherman@doj.ca.gov

ANDREA JOY CAMPBELL
Attorney General for Massachusetts

DAVID KRAVITZ
State Solicitor

ANNA LUMELSKY
Deputy State Solicitor

KATHERINE DIRKS
Chief State Trial Counsel

VANESSA ARSLANIAN
Assistant Attorney General

1 Ashburton Place
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned certifies as follows:

A. *Parties and amici.*—All parties and amici appearing before the district court and in this Court are listed in the Certificates filed by Defendant-Appellant on July 23, 2025, Doc. 2126845 in No. 25-5266 and Doc. 2126846 in No. 25-5267, with the exception of the Amici States: the District of Columbia, California, Colorado, Connecticut, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, and Wisconsin, as well as potential other amici.

B. *Rulings under review.*—References to the rulings under review appear in the Certificates filed by Defendant-Appellant on July 23, 2025, Doc. 2126845 in No. 25-5266 and Doc. 2126846 in No. 25-5267

C. *Related cases.*—Related cases are listed in the Certificates filed by Defendant-Appellant on July 23, 2025, Doc. 2126845 in No. 25-5266 and Doc. 2126846 in No. 25-5267.

/s/ Mitchell P. Reich
MITCHELL P. REICH
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF AMICI'S INTEREST ........................1

ARGUMENT ........................................................................................................3

    I.     OMB's Refusal To Make Apportionment Decisions Public Has Impaired The States' Ability To Assert Their Legal Rights And Prevent Harm.......................................................................................3

    II.    OMB's Refusal To Provide Timely Apportionment Information Would Make It Difficult For States To Identify And Prevent Unlawful "Pocket Rescissions" In The Coming Weeks .....................10

CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

*Cases*

*Colorado v. U.S. Dep't of Health & Human Servs.*,
   --- F. Supp. 3d ---, 2025 WL 1426226 (D.R.I. May 16, 2025)............................3

*CREW v. OMB*,
   --- F. Supp. 3d ---, 2025 WL 2025114 (D.D.C. July 21, 2025).........................12

*Maine v. USDA*,
   --- F. Supp. 3d ---, 2025 WL 1088946 (D. Me. Apr. 11, 2025) ..........................3

*Maryland v. Corp. for Nat'l & Cmty. Serv.*,
   --- F. Supp. 3d ---, 2025 WL 1585051 (D. Md. June 5, 2025)........................5, 6

*New York v. Trump*,
   769 F. Supp. 3d 119 (D.R.I. 2025) .......................................................................3

*Rhode Island v. Trump*,
   --- F. Supp. 3d ---, 2025 WL 1303868 (D.R.I. May 6, 2025)......................3, 8, 9

*Washington v. U.S. Dep't of Transp.*,
   No. 2:25-cv-00848, 2025 WL 1742893 (W.D. Wash. June 24, 2025)................3

*Statutes, Rules, and Regulations*

2 U.S.C. § 681 ....................................................................................................10

2 U.S.C. § 683 ....................................................................................................11

31 U.S.C. § 1513 note ...........................................................................................1

Consolidated Appropriations Act, 2022,
   Pub. L. No. 117-103, 136 Stat. 49 ......................................................................1

Consolidated Appropriations Act, 2023,
   Pub. L. No. 117-328, 136 Stat. 4459 ..................................................................1

*Other*

*California v. McMahon*,
    No. 25-cv-00329 (D.R.I.) ...................................................................4

Continuing the Reduction of the Federal Bureaucracy,
    Exec. Order No. 14238, 90 Fed. Reg. 13043 (Mar. 20, 2025) ...........8

GAO, *Institute of Museum and Library Services—Applicability of the
    Impoundment Control Act to Reduction of Agency Functions*,
    B-337375 (June 16, 2025) ................................................................10

Jennifer Scholtes, *White House Floats New Funding Trick – And GOP
    Lawmakers Grimace*, POLITICO (June 20, 2025) ..............................10

Letter from Mark Paoletta, Gen. Counsel, OMB, to Tom Armstrong, Gen.
    Counsel, GAO (Nov. 16, 2018) ..................................................10, 11

Letter from Thomas H. Armstrong, Gen. Counsel, GAO, to Steve Womack,
    Chair, H. Comm. on the Budget, & John Yarmuth, Ranking Member, H.
    Comm. on the Budget, *Impoundment Control Act—Withholding of Funds
    through Their Date of Expiration*, B-330330 (Dec. 10, 2018)....................11, 12

*Maryland v. Corp. for Nat'l & Cmty. Serv.*,
    No. 25-cv-1363 (D. Md.) ................................................................6, 7

*Rhode Island v. Trump*,
    No. 25-cv-00128 (D.R.I.) ...............................................................8, 9

# GLOSSARY

| | |
|---|---|
| Amici States | Amici Curiae the District of Columbia, Maryland, California, Massachusetts, Colorado, Connecticut, Hawaii, Illinois, Maine, Michigan, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, Wisconsin |
| CREW | Appellee in No. 25-5266, Citizens for Responsibility and Ethics in Washington |
| GAO | Government Accountability Office |
| IMLS | Institute of Museum and Library Services |
| OMB | Appellant, Office of Management and Budget |

## INTRODUCTION AND STATEMENT OF AMICI'S INTEREST

In 2022, Congress enacted a statute directing the Office of Management and Budget (OMB) to make its apportionment decisions public in a timely manner so that affected entities and organizations could identify—and, where necessary, put a stop to—the Executive's failures to comply with the appropriations laws. Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, div. E, tit. II, § 204(b), 136 Stat. 49, 257; *see* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, div. E, tit. II, § 204(1), 136 Stat. 4459, 4667 (Dec. 29, 2022) (codified at 31 U.S.C. § 1513 note).  Over the last several months, the Trump Administration has done just what Congress sought to prevent.  It has repeatedly and unlawfully withheld appropriated funds.  And it has often done so in secret: in some cases, failing to announce that it is withholding appropriated funds at all; in others, delaying the announcement until the withholding causes a crisis; and in still other cases, refusing to reveal, even when its efforts to withhold funds are discovered, whether it is OMB or the administering agency that is responsible for the withholding.

Amici States have experienced this problem first-hand.  Since January, the Administration has illegally withheld billions of dollars that Congress appropriated to the States.  Among many other examples, the Administration delayed over $6 billion in education funds that it was required by law to make available to the States by July 1; it withheld tens of millions of dollars intended for state AmeriCorps

programs; and it withheld millions more in critical grant funding for public libraries. In each instance, OMB's refusal to make its apportionment decisions public has hindered the States' ability to protect their interests and prevent real-world harm. And the States have every reason to expect that similar harms will recur if the Administration continues to flout the transparency law that Congress enacted to prevent precisely this problem.

This problem will only grow in the coming weeks if the district court's order is stayed. The Administration has indicated that, beginning on approximately August 15, it will begin a campaign of unlawful "pocket rescissions" of federal funds. Without knowing which funds OMB is failing to apportion, Amici States will not easily be able to identify when pocket rescissions occur, much less take action to halt them before the end of the federal fiscal year.

For these reasons, in addition to those set forth in Plaintiffs-Appellees' oppositions, the equities strongly favor the denial of OMB's request for a stay pending appeal. The Executive Branch has no valid interest in shielding from public scrutiny its final, legally binding decisions about whether and how to apportion federal funds. And Amici States and the public will suffer serious harm if OMB continues to withhold information critical to identifying whether, when, and how the Executive Branch is withholding appropriated funds in violation of the law.

# ARGUMENT

**I.     OMB's Refusal To Make Apportionment Decisions Public Has Impaired The States' Ability To Assert Their Legal Rights And Prevent Harm.**

Over the past six months, the Administration has repeatedly and unlawfully withheld appropriated funds from the States.  *See, e.g.*, *Washington v. U.S. Dep't of Transp.*, No. 25-cv-00848, 2025 WL 1742893, at *31 (W.D. Wash. June 24, 2025); *Colorado v. U.S. Dep't of Health & Human Servs.*, --- F. Supp. 3d ---, 2025 WL 1426226, at *24 (D.R.I. May 16, 2025); *Rhode Island v. Trump*, --- F. Supp. 3d ---, 2025 WL 1303868, at *18 (D.R.I. May 6, 2025); *Maine v. USDA*, --- F. Supp. 3d ---, 2025 WL 1088946, at *31 (D. Me. Apr. 11, 2025); *New York v. Trump*, 769 F. Supp. 3d 119, 146 (D.R.I. 2025), *appeal docketed*, No. 25-1236 (1st Cir. Mar. 10, 2025).  The States' efforts to apprehend whether and in what way appropriated funds were being withheld, and to take timely actions to halt those withholdings, have been made appreciably more difficult by OMB's unlawful refusal to disclose its apportionment decisions.   And the real-world costs of the Administration's withholdings have likewise been made substantially greater by OMB's defiance.  Three recent episodes illustrate the significant problems the States have faced.

***Delay in Education Funding***.  On the afternoon of June 30, the Department of Education confirmed for the first time that it planned to delay the distribution of more than $6 billion in funds that, by law, must be made available to the States by

July 1. Compl. ¶ 1, *California v. McMahon*, No. 25-cv-00329 (D.R.I. July 14, 2025), ECF No. 1 These funds are designed to support critical K-12 and adult-education services in every State, including programs to assist English learners and migratory workers, programs that promote and enhance effective classroom instruction, and programs to establish and expand community learning centers. *Id.* ¶¶ 1-2. School districts plan their educational budgets months in advance in reliance on these funds, and they make key staffing and programming decisions in the expectation that they will receive them by July 1. *Id.* ¶¶4-5, 14.

Accordingly, when the States learned that these critical education funds would be withheld just hours before they were due to receive them, they needed to take drastic steps. School districts canceled essential summer school and afterschool programs, ended teacher training efforts, and halted services designed to make school more accessible for children with special learning needs. *Id.* ¶ 14. Amici States quickly filed suit and sought a preliminary injunction to halt the Administration's unlawful withholding of funding. *Id.* ¶¶ 1-8.

None of this chaos was necessary. The Administration appears to have made the decision to unlawfully withhold the education funds months earlier: OMB was required to apportion the funds within 30 days of the enactment of the underlying appropriation—that is, on April 15, 2025—and yet it evidently failed to do so. *See id.* ¶¶ 7, 146-49, 241-50. Had the States known of OMB's failure to apportion funds

at the time—as they would have, if OMB had complied with its statutory obligation to post apportionment decisions within two days—school districts would have had months to prepare for the possible withholding of funding, rather than confronting a crisis hours before the funding was expected to arrive. And the States would have had time to take steps to protect their legal interests and potentially prevent the unlawful withholding long before it caused harm.

*Termination of AmeriCorps Funding*. The States have faced a similar issue in their efforts to preserve funding needed for vital public-service programs. In April 2025, the Administration initiated a campaign to dismantle AmeriCorps, the federal agency for national service and volunteerism. *See Maryland v. Corp. for Nat'l & Cmty. Serv.*, --- F. Supp. 3d ---, 2025 WL 1585051, at *1 (D. Md. June 5, 2025). As part of that effort, AmeriCorps informed State Service Commissions that it was immediately terminating nearly $400 million in funding for AmeriCorps programs. *Id.* at *9, 31. These programs support volunteers who "help some of the most vulnerable populations in the country, such as veterans returning from combat, homebound seniors, children with learning disabilities, and people struggling with substance abuse." *Id.* at *1.

Amici States sued, arguing that the Administration's sweeping funding cuts violated several legal restrictions. *Id.* The District Court for the District of Maryland agreed that the cuts were likely unlawful and entered a preliminary injunction

ordering AmeriCorps to reinstate the terminated funding in plaintiff States, and to make no significant changes in service delivery without proceeding through notice-and-comment rulemaking, as required in binding appropriations law.  *See Maryland*, 2025 WL 1585051, at *40-41.

But the dismantling of AmeriCorps did not stop.  Although AmeriCorps reinstated the terminated funding, the States soon discovered that other AmeriCorps funding streams were suddenly being cut off without notice or explanation.  This funding included tens of millions of dollars intended for AmeriCorps programs and operations in Plaintiff states, including Senior Companion Programs, Foster Grandparent Programs, programs funded with competitive AmeriCorps grants, and State Service Commissions grants.  *See* Am. Compl. ¶¶ 10, 203-30, *Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. 25-cv-1363 (D. Md. July 24, 2025), ECF No. 171.  AmeriCorps represented through counsel that *it* had no intention of withholding any funds.  But the Department of Justice refused to acknowledge who was responsible for withholding the relevant funds.

After weeks of conferrals and motions practice, the court held a status conference at which it asked point-blank whether OMB was blocking disbursal of the funding.  The Department of Justice declined to answer on the ground that "OMB deliberations on appropriations are privileged," and even asserted that the mere fact of whether AmeriCorps had received funding from OMB was itself privileged

information.  Status Conf. Tr. 7, 13-14, *Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. 25-cv-1363, ECF No. 168 (D. Md. July 22, 2025); *see* Addendum at 1-5.

In fact, the States ultimately determined through other sources that OMB is likely the entity responsible for withholding the funds.  *See* Am. Compl. ¶¶ 202-07. Accordingly, on July 24, the States filed an amended complaint adding OMB as a defendant and seeking an order directing it to apportion the withheld funds.  *Id.* ¶¶ 271-313.

Had OMB honored its statutory obligation to publish apportionment decisions, the States would have known of OMB's failure to apportion funds far sooner.  That would have enabled them to quickly seek relief against OMB, rather than undergo a Kafkaesque, weekslong effort to determine who was crippling AmeriCorps' service programs, when AmeriCorps itself was under a court order to make no significant changes in service delivery without conducting rulemaking. And it would have prevented significant harm to vital AmeriCorps programs, many of which have seen their funding cut throughout this unnecessary period of delay, all because of the Administration's continued defiance of the law.

***Partial Distributions of IMLS Grants***.  A third example comes from the Administration's attempted dismantling of the Institute of Museum and Library Services (IMLS).  IMLS is the federal agency charged with "advanc[ing], support[ing], and empower[ing] America's museums, libraries and related

organizations through grantmaking, research, and policy development." *Rhode Island*, 2025 WL 1303868, at *1. States depend on IMLS grants to pay library employees' salaries and to fund important services at libraries and museums, including literacy development, job training, research, and lifelong learning. Compl. ¶¶ 72-86, *Rhode Island v. Trump*, No. 25-cv-00128 (Apr. 4, 2025), ECF No. 1.

In March 2025, the President issued an Executive Order decreeing that IMLS and several other agencies be eliminated to the "maximum extent consistent with applicable law," and that OMB "reject funding requests for [IMLS] to the extent they are inconsistent with this order." Continuing the Reduction of the Federal Bureaucracy, Exec. Order No. 14238, § 2(a), (c), 90 Fed. Reg. 13043 (Mar. 20, 2025). IMLS followed that order by, among other things, placing the vast majority of its staff on administrative leave and terminating well over 1,000 grants, many of which had been awarded to States. *Rhode Island*, 2025 WL 1303868, at *3. In addition, IMLS issued only partial payments of formula grant awards to some state libraries, explaining at the time and in a subsequent declaration that these payments were partial "because IMLS ha[d] not yet received its FY25 apportionment from the Office of Management and Budget." Decl. of Keith E. Sonderling ¶ 9, *Rhode Island v. Trump*, No. 25-cv-00128 (May 19, 2025), ECF No. 63-1.

Because the States lacked any information about OMB's apportionment decisions, they could not determine whether OMB was failing to apportion funds for

8

appropriate budgetary reasons, or because it was carrying out the President's directive to eliminate the agency.  As a result, state libraries could not assess whether the remaining, critically important formula funds were likely ever to be issued—hampering their ability to budget, plan, and spend accordingly.  *See, e.g.*, *Rhode Island*, 2025 WL 1303868, at *15 (describing one state's explanation that "a delay in funding from IMLS will cause" it to "immediately . . . halt services and implement a hiring freeze" (internal quotation marks omitted)).

The District Court for the District of Rhode Island subsequently mitigated that uncertainty by issuing a preliminary injunction that barred the dismantling of IMLS and directed the restoration of agency staffing and of grant funding in plaintiff States. *See* Prelim. Inj., ECF No. 60 (May 13, 2025).  But IMLS's response to this injunction produced a new source of apportionment-related uncertainty.  The Acting Director of IMLS stated in a declaration that the agency would "require additional funding" from OMB to comply with the preliminary injunction because its "apportionment request" had been "based on compliance with" Executive Order 14238 and a "minimal staffing posture that ensured that . . . all statutorily required programs were serviced at a level compliant with the President's direction."  Sonderling Decl. ¶ 14. This declaration created a dilemma: the dismantled agency has indicated that it requires cooperation from OMB to provide the full relief the plaintiff States have been awarded.  OMB is statutorily required to apportion the necessary funds.  *See*

9

GAO, *Institute of Museum and Library Services—Applicability of the Impoundment Control Act to Reduction of Agency Functions* 11-12 (Digest B-337375, June 16, 2025), https://tinyurl.com/2anhvt2j (explaining that these funds "are not eligible for deferral or rescission" and so "may not be withheld from obligation and expenditure").  But without timely apportionment data, the States cannot know whether or to what degree OMB is apportioning the necessary funds, thus impairing the States' ability to ensure compliance and to structure their own spending and programming in expectation of receiving the withheld funds.

## II.    OMB's Refusal To Provide Timely Apportionment Information Will Make It Difficult For States To Identify And Prevent Unlawful "Pocket Rescissions" In The Coming Weeks.

Amici States expect these problems to worsen in the coming weeks.  OMB has publicly taken the position that the Impoundment Control Act of 1974, 2 U.S.C. § 681 *et seq.*, allows for "pocket rescissions" of appropriated funds.  *See* Letter from Mark Paoletta, Gen. Counsel, OMB, to Tom Armstrong, Gen. Counsel, GAO (Nov. 16, 2018) (OMB Pocket Rescission Letter), https://tinyurl.com/3e93pcvh.[1]  Under this theory, the President could send a special message to Congress within the last

---

[1]     *See also* Jennifer Scholtes, *White House Floats New Funding Trick – And GOP Lawmakers Grimace*, Politico (June 20, 2025), https://tinyurl.com/5awfzb7h (OMB Director Russell Vought: "The very Impoundment Control Act itself allows for a procedure called pocket rescissions, later in the year, to be able to bank some of these savings, without the bill actually being passed . . . .  It's a provision that has been rarely used.  But it is there.  And we intend to use all of these tools.").

45 days of the fiscal year—that is, beginning on approximately August 15—proposing the rescission of federal funds.  *See id.* at 1.  In OMB's view, a rescission request allows the President to defer expenditures for 45 days, 2 U.S.C. § 683(b), and so a request sent in the *last* 45 days of the fiscal year would permit him to withhold funds for the remainder of the fiscal year, at which point the appropriation would expire and effectively be rescinded, even if Congress failed to act on the rescission request.  *See* OMB Pocket Rescission Letter at 1-2, 4.

This "pocket rescission" scheme is unlawful.  *See* Letter from Thomas H. Armstrong, Gen. Counsel, GAO, to Steve Womack, Chair, H. Comm. on the Budget, & John Yarmuth, Ranking Member, H. Comm. on the Budget, *Impoundment Control Act—Withholding of Funds through Their Date of Expiration*, B-330330, at 1  (Dec.  10,  2018),  https://tinyurl.com/mrxswut5  (recognizing  that  the Impoundment Control Act "does not permit the withholding of funds through their date of expiration").  But if the district court's order here is stayed, the Administration is likely to use its refusal to publicize timely apportionment data as a means of furthering this unlawful plan.  If the Administration sends a rescission request within the last 45 days of the year, OMB's failure to apportion the funds near the end of the fiscal year would make crystal clear that the Administration is carrying out a pocket rescission by refusing to spend the funds for the rest of the fiscal year.  *See id.* at 6 (explaining that the Impoundment Control Act "requires that budget

authority be made available in sufficient time to be prudently obligated" before the end of the fiscal year).  But by withholding timely apportionment information, the Administration may attempt to make it more difficult for States or other affected entities to identify cases in which an Administration means to pocket rescind funds before the fiscal year ends.

More broadly, the Administration will likely make other efforts to withhold appropriated funds from the States in the coming months.  The Administration has not been hesitant to disregard Congress's instructions in the past.  And the OMB Director has asserted a meritless but sweeping view of the Executive's unilateral authority to impound appropriated funds.  *See supra*, note 1.  As Amici States' experience confirms, timely apportionment information will be critical in enabling affected entities to determine whether the Executive is "abiding by the laws governing the allocation of public funds" and to "hold the Executive Branch accountable if there is a misuse of"—or a wholesale refusal to apportion— "appropriated funds."  *CREW v. OMB*, --- F. Supp. 3d ---, 2025 WL 2025114, at *18 (D.D.C. July 21, 2025).  That information will also enable States and other affected entities to learn of the Administration's unlawful withholdings before, rather than after, such actions have begun to inflict serious harm on the States and their most vulnerable residents.  The public interest therefore favors the denial of OMB's requested stay and the restoration of the disclosure website Congress mandated.

## CONCLUSION

This Court should deny the motion for a stay pending appeal.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General for Maryland

/s/ Julia Doyle
JULIA DOYLE
Solicitor General

ADAM KIRSCHNER
MICHAEL DREZNER
VIRGINIA A. WILLIAMSON
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6424
AKirschner@oag.state.md.us

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

/s/ Mitchell P. Reich
EMMA SIMSON
MITCHELL P. REICH
D.C. Bar Number 1044671
Senior Counsels to the Attorney General

BRYAN J. LEITCH
Assistant Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 279-1261 (office)
(202) 741-0649 (fax)
mitchell.reich@dc.gov

ROB BONTA
Attorney General for California

MICHAEL L. NEWMAN
Senior Assistant Attorney General

IRINA TRASOVAN
Supervising Deputy Attorney General

ANDREA JOY CAMPBELL
Attorney General for Massachusetts

DAVID KRAVITZ
State Solicitor

ANNA LUMELSKY
Deputy State Solicitor

13

/s/ Lee Sherman
LEE SHERMAN
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6202
Lee.Sherman@doj.ca.gov


July 2025

/s/ Katherine Dirks
KATHERINE DIRKS
Chief State Trial Counsel

VANESSA ARSLANIAN
Assistant Attorney General
1 Ashburton Place
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov


FOR THE STATE OF COLORADO

PHILIP J. WEISER
Attorney General for Colorado
1300 Broadway 10th Floor
Denver, CO 80203

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
Attorney General for Connecticut
165 Capitol Avenue
Hartford, CT  06106

FOR THE STATE OF HAWAII

ANNE E. LOPEZ
Attorney General for Hawai'i
425 Queen Street
Honolulu, HI 96813

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General for Illinois
115 LaSalle Street
Chicago, IL 60603

FOR THE STATE OF MAINE

AARON M. FREY
Attorney General for Maine
6 State House Station
Augusta, ME 04333-0006

FOR THE STATE OF MICHIGAN

DANA NESSEL
Attorney General for Michigan
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909

FOR THE STATE OF NEVADA

AARON D. FORD
Attorney General for Nevada
100 North Carson Street
Carson City, NV 89701

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
Attorney General for New Jersey
25 Market St.
Trenton, NJ 08611

14

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General for New York
28 Liberty Street
New York, NY 10005

FOR THE STATE OF OREGON

DAN RAYFIELD
Attorney General for Oregon
1162 Court Street NE
Salem, OR 97301-4096

FOR THE STATE OF VERMONT

CHARITY R. CLARK
Attorney General for Vermont
109 State Street
Montpelier, VT 05609

FOR THE STATE OF WISCONSIN

JOSHUA L. KAUL
Attorney General for Wisconsin
17 West Main Street
Madison, WI 53703

FOR THE STATE OF NORTH
CAROLINA

JEFF JACKSON
Attorney General for North Carolina
114 W. Edenton Street
Raleigh, NC 27603

FOR THE STATE OF RHODE
ISLAND

PETER F. NERONHA
Attorney General for Rhode Island
150 South Main Street
Providence, RI 02903

FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
Attorney General for Washington
P.O. Box 40100
Olympia, WA 98504

## CERTIFICATE OF SERVICE

I certify that on July 25, 2025, this brief was electronically filed with the Clerk of the Court using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished using the CM/ECF system.

/s/ Mitchell P. Reich
MITCHELL P. REICH

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a)(5) for an amici brief because it contains 2,939 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Mitchell P. Reich
MITCHELL P. REICH

# ADDENDUM

Excerpts of Transcript from July 22 Status Conference, *Maryland v. Corp. for Nat'l & Comm'y Serv.*, No. 25-cv-1363 (D. Md.)..................................Add. 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF MARYLAND

 3                       SOUTHERN DIVISION

 4   STATE OF MARYLAND ET AL.,      ) CIVIL ACTION
                                    ) NO. DLB-25-1363
 5           Plaintiffs,            )
                                    )
 6   v.                            )
                                    )
 7   CORPORATION FOR NATIONAL AND   )
     COMMUNITY SERVICE ET AL.,      )
 8                                  )
             Defendants.            )
 9
              TRANSCRIPT OF TELEPHONIC STATUS PROCEEDINGS
10          BEFORE THE HONORABLE DEBORAH L. BOARDMAN
                  UNITED STATES DISTRICT JUDGE
11            TUESDAY, JULY 22, 2025; 11:12 A.M.
                       GREENBELT, MARYLAND
12
     APPEARANCES:
13
     FOR THE PLAINTIFF MARYLAND:
14
                 OFFICE OF THE ATTORNEY GENERAL - STATE OF MARYLAND
15               BY:  KEITH M. JAMIESON, ESQUIRE
                 BY:  VIRGINIA A. WILLIAMSON, ESQUIRE
16               200 St. Paul Place
                 Baltimore, Maryland  21202
17               (410) 576-6960

18   FOR THE PLAINTIFF DELAWARE:

19               DELAWARE DEPARTMENT OF JUSTICE
                 BY:  IAN R. LISTON, ESQUIRE
20               820 N. French Street,
                 Wilmington, Delaware  19801
21               (302) 683-8875

22   Also Present: Joseph Borson, Esquire, DOJ

23           Renee A. Ewing, RMR, CRR - (301) 344-3227
                   Federal Official Court Reporter
24            6500 Cherrywood Lane, Suite 200
                    Greenbelt, Maryland  20770
25
         ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
```

Add. 1

```
 1   APPEARANCES (Continued):

 2   FOR THE DEFENDANTS:

 3            U.S. DEPARTMENT OF JUSTICE - CIVIL DIVISION
              BY:  PIERCE ANON, ESQUIRE
 4            1100 L Street NW
              Washington, DC  20005
 5            (202) 305-7573

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1   Your Honor, because it is at the tendering of these notice of

2   grant awards, a legal term of art, that a legally binding

3   obligation occurs.

4        So, although plaintiffs argue that it is a breach of

5   service delivery, that, you know, these funds have not been

6   transmitted to Commission Investment Fund programs, at the

7   bottom, Your Honor, there is no contract or award yet.  There

8   is no legal obligation to actually promulgate the funds for

9   these Commission Investment Fund grants.  And that would

10  similarly be the case for the contested programs that have

11  expired and plaintiffs argue that we have some legal obligation

12  to continue funding even though there is a complete absence of

13  such an obligation, Your Honor.

14       THE COURT:  I think I follow most of that.  What's

15  going on with OMB?  Are they not disbursing the funds?

16       MR. ANON:  Your Honor, I understand your question.

17  To the extent that plaintiffs are concerned with another

18  entity's actions, such as OMB, it is the Executive Branch's

19  position that OMB deliberations on appropriations are

20  privileged.  Indeed, Your Honor, there are pending cases in DDC

21  outlining the severity issue right now -- I think there is two

22  such cases -- and we think it would be inappropriate to discuss

23  at this juncture because of that privilege.  And also not to

24  mention --

25       THE COURT:  Privilege?
```

1  responsibility that we have been able to glean from public

2  recording from the defendant's responses so far.

3         THE COURT:  Anything else?

4         MR. JAMIESON:  One -- the one other thing I would

5  note, Your Honor, in response to this privilege issue, I do

6  know, from -- from looking at this with respect to other cases,

7  that the -- the request from Congress that they are alluding to

8  is actually a statute in OMB's Appropriations Act that requires

9  OMB to post apportionment decisions on a public website.

10      OMB has taken the position since March that apportionment

11 decisions, although they are legally binding on agencies, are

12 somehow predecisional, and, therefore, are protected by

13 privilege.  The government accountability office sent a letter

14 to OMB shortly afterward in the beginning of April, which we'd

15 be happy to provide as supplemental authority if the Court is

16 interested, that takes the position that the assertion of

17 privilege is -- is not warranted and this information is not

18 protected, and that, of course, is the issue in these two cases

19 in DDC that are currently pending.

20         THE COURT:  All right.  Mr. Anon, let me ask you

21 this:  Does AmeriCorps have the fiscal year 2025 funds to

22 distribute?

23         MR. ANON:  I can say two things, and the answer may

24 be frustrating, and I recognize that, is that, again,

25 AmeriCorps has requested full funding.  You know that.  And --

1   and the other points that I believe may intersect with OMB, I

2   am afraid I can't answer that because that would arise under

3   the privilege defense that we are raising here.  And I

4   understand it's frustrating, it's a different version of the

5   answer that I have given already, but it's the position the

6   Justice Department is taking in this case and cases like it.

7        And I would briefly say to Mr. Jamieson's point about,

8   you know, knowledge that maybe appeared to AmeriCorps and that

9   OMB transferred over and that would, you know, perhaps not be

10  under the privilege, well, I talked about this specifically

11  with the agencies, and it's OMB's position that any

12  deliberative, back-and-forth discussions regarding

13  appropriations between our client and OMB would also

14  necessarily fall under the asserted privilege defense.  So,

15  understanding it's maybe not the most satisfying answer, I'd

16  have to keep leaning back on that, Your Honor.

17        THE COURT:  Okay.  Mr. Jamieson, where does this

18  leave us as far as three weeks that the plaintiffs are

19  requesting?  I have essentially granted your motion for a

20  status report or a conference.  I believe the questions that

21  you wanted answered have been answered, maybe not to your

22  satisfaction, but I think they have been answered, and I think

23  the -- this privilege that's been asserted for the first time

24  on the record.  So, Mr. Jamieson, what other relief are you

25  requesting from the Court right now?  I am disinclined to do